

Wu & Associates, Inc.
597 Deer Road
Cherry Hill, NJ 08034
Tel: 856-857-1639
Fax: 856-857-1729
Email: info@wuassociates.com

PROJECT NO:  0102

SUBCONTRACT NO:  0102-17

## SUBCONTRACT

This subcontract is made this 27th day of March 2002 by and between Wu & Associates, Inc., 597 Deer Road, Cherry Hill, NJ, 08034 ("Contractor") and Brendan Ward Masonry, Inc., 345 Oak Terrace, Radnor, PA 19087, P.O.C. Brendan Ward, Tel: 610-293-7661; Fax: 610-971-2131, ("Subcontractor"). Contractor and Subcontractor agree that the date above shall be used to calculate all deadlines stated below. This contract must signed and returned by Subcontractor to Contractor within seven (7) calendar days of the date stated above; otherwise, Contractor, in its sole discretion, may void this agreement.

1.  **PARTIES**

    a.   The Contractor.  Wu and Associates, Inc., 597 Deer Road, Cherry Hill, NJ 08034

    b.   The Subcontractor. Brendan Ward Masonry, Inc., 345 Oak Terrace, Radnor, PA 19087

    c.   The Owner.  US Department of Labor, 200 Constitution Avenue, NW, Room S-4203, Washington DC, 20210

2.  **DEFINITIONS.**

    a.   The term "Contract" as used herein refers to the Contract between the Owner and the Contractor for construction of the Project.

    b.   The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, together with all plans, drawings, specifications, including the General Conditions, Supplemental General Conditions, and Special Conditions, change orders, bulletins, modifications, Addenda, Amendments, and/or instruments of like effect issued by or on behalf of the Owner; together with any and all other documents or instruments referred to in the aforesaid "Contract" and "Contract Documents" and/or as identified by the Owner's Authorized Agent.

    c.   The term "Subcontract" as used herein refers to this Subcontract together with any exhibits, attachments, or addenda incorporated herewith and referred to herein; and in addition any Supplemental Agreements made and entered into by the parties hereto subsequent to the date of execution of this Subcontract.

    d.   The term "Subcontract Documents" as used herein refers jointly and/or severally to the aforesaid "Contract," Contract Documents" and "Subcontract"; together with any and all alternate proposals which may be exercised or incorporated in this Subcontract, all Contract change orders issued by the Owner subsequent to the bidding and identified specifically in this Subcontract; and all written instructions, notices, directives, job schedules, instruments, provided that such written documents are specifically referred to in this Subcontract.

    e.   The Subcontract Documents shall not include any bids, proposals, correspondence or agreements dated, made or alleged to have been made between the Contractor and the Subcontractor prior to the date of this Subcontract unless specifically identified and incorporated in writing herein.

    f.   In the event of a conflict between this Subcontract and the other Subcontract Documents, this Subcontract shall govern.

3.  CONSIDERATION. For and in consideration of the sum of
    **$950,000.00 (NINE HUNDRED FIFTY THOUSAND DOLLARS AND NO CENTS)**
    which represents the total contract price, subject to additions and deductions for changes agreed upon in writing by both parties to this subcontract, and all sales and other taxes which are included in this subcontract, Subcontractor agrees to furnish all labor, materials, equipment and/or services necessary to perform its scope of work as set forth in the paragraphs below for the construction of

    **Wilmington Job Corps Center**
    **Wilmington, DE, ("Project")**

    being performed for

    **US Department of Labor**
    **Washington DC 20210 ("Owner").**
    **CONTRACT NO. AE11793-01-29 (hereinafter the "Project"),**
    and Contractor agrees to pay the consideration stated above to the Subcontractor provided all conditions of this subcontract have been satisfied.

4.  INDEPENDENT CONTRACTOR. The Contractor subcontracts with the Subcontractor as an "independent contractor" to provide everything necessary to complete the work described herein. Pursuant to this Subcontract, Subcontractor is required to provide all labor, materials, equipment, services, management, supervision, storage facilities, tools, and testing required to perform its scope of work as stated below. Subcontractor agrees to defend Contractor against any claim or assertion of an employer-employee relationship between Contractor and Subcontractor's workmen, and to indemnify and hold Contractor harmless against any expense or liability imposed upon Contractor by reason of a finding of such an employer-employee relationship.

5.  ACKNOWLEDGMENTS. Subcontractor acknowledges receipt as of the date of this contract of each document described below, and agrees to be bound by the terms of this subcontract as stated as follows:

a.  Subcontractor agrees to perform the work in accordance with the contract between Contractor and Owner, including all contract documents and specifications as provided to the Subcontractor and as directed by the site Superintendent and Certified Quality Control Manager, and in accordance with the contract plans and specifications, including but not limited to the specifications attached hereto (hereinafter the "Work").

b.  Subcontractor shall be bound to Contractor by the Terms of the Subcontract and the Contract Documents, and shall be bound to Contractor to assume the same obligations which Contractor must assume to Owner. The Contract Documents are incorporated herein by reference. Subcontractor undertakes to perform all the duties of the Contractor under the Contract Documents, insofar as said duties are related, directly or indirectly, to the work described in this Subcontract. Subcontractor will not do, or fail to do, any act, if by reason of such act or failure to act, Contractor would be in breach of the Contract.

c.  Even if specific work set forth in the Contract Documents relating to Subcontractor's Work is not described in this Subcontract and/or every item necessary to perform Subcontractor's work may not be mentioned in the Contract Documents, Subcontractor shall still perform all work necessary to finish its scope of work, including all work normally construed to come within the scope of its activities as required of Contractor in the Contract Documents.

d.  Subcontractor expressly acknowledges receipt of the enclosed "Certified Payroll Form" and "Subcontractor's Pay Estimate Form." Such must be submitted weekly to Contractor for each week Subcontractor provides work or services. If Subcontractor fails to use the Certified Payroll Form or Subcontractor's Pay Estimate Form, contractor is not obligated to make any payment under this subcontract.

e.  Subcontractor agrees to provide a complete and Owner approved written description (i.e. submittals) of the process it will follow (as required below) to perform the work and comply with the specification sections referenced above, if requested by Owner and in conformance with the format required by the Owner. Failure to provide such within (10) calendar days of the contract date above shall constitute a breach of contract, and in its discretion, Contractor may void this agreement.

f.  Subcontractor expressly acknowledges receipt of the enclosed "Form 1413 Statement & Acknowledgment." Subcontractor agrees to sign and return such to Contractor within ten (10) calendar days of the contract date listed above. Failure to provide such shall constitute a breach of contract, and in its discretion, Contractor may void this agreement.

g.    Subcontractor expressly acknowledges receipt of the enclosed "Wage Affidavit Form." Subcontractor agrees that it will arrange for all its employees who will perform work on the project contemplated by this subcontract to sign and return this form within ten (10) calendar days of the contract date listed above. Failure to provide such shall constitute a breach of contract, and in its discretion, Contractor may void this agreement.

h.    Subcontractor expressly acknowledges receipt of the enclosed "sample insurance certificate." Subcontractor expressly acknowledges that this sample MUST BE FOLLOWED EXACTLY and must be provided by Subcontractor to the Contractor within ten (10) calendar days of the contract date listed above. Failure to provide such shall constitute a breach of contract, and in its discretion, Contractor may void this agreement. An insurance certificate must be provided before Subcontractor is permitted access to the job site.

i.    Subcontractor expressly acknowledges receipt of the enclosed Contract Labor Standards Requirements.

j.    Subcontractor agrees to submit to Contractor its proposed production and installation times for its work contained in this subcontract within ten (10) calendar days of the contract date listed above. Failure to provide such shall constitute a breach of contract, and in its discretion, Contractor may void this agreement.

k.    Subcontractor expressly acknowledges receipt of the enclosed Progress Schedule. On occasion, Contractor may revise such Progress Schedule to reflect and/or accommodate delays caused by the Property Conditions, Owner of the Premises, Contractor, Subcontractor, or other parties. Such revision shall not constitute an extension of time for completion of the project by Subcontractor. All extensions of time must be made in writing by the Contractor in its sole discretion.

5.    PERFORMANCE. All Work performed by the Subcontractor shall be in strict accordance with the Contract Documents applicable to its portion of the Work, and each document referred to above, as well as all applicable federal/state/local codes, laws, ordinances, jurisdictional requirements and prevailing wage rates.

If, in the sole judgment of Contractor the Subcontractor fails to comply, or becomes unable to comply, or with reasonable probability (as determined solely by Contractor) will become unable to comply, with any of the provisions of this Subcontract; or in the event Subcontractor fails at any time to supply a sufficient number of properly skilled workmen or sufficient supplies, materials, machines, equipment or plant of proper quality, or fails in any respect to prosecute the work with promptness and diligence; or causes by any action or omission a stoppage of, delay in, or interference with the work of the Contractor or other Subcontractors of Contractor, or in the event Subcontractor abandons his work, or any part thereof; and such failure, inability, or deficiency (as determined solely by Contractor), is not corrected within three (3) calendar days after written demand by the Contractor to the Subcontractor; the Contractor may, in addition to and without prejudice to any other right or remedy, take over and complete the performance of this Subcontract, at the expense of the Subcontractor; or the Contractor may, without taking over the work, immediately and without notice to Subcontractor, furnish the necessary materials and labor, through itself or others, to remedy the situation, all at the expense of the Subcontractor. Any Subcontractor that breaches this provision, in the sole discretion of the Contractor, on more than one (1) occasion may be subject to Contractor's election to complete the work by other means or supply materials without written notice.

The parties hereto further agree that any of the following shall, at the option of the Contractor, constitute inability to comply with the provisions of this Subcontract for purposes of this Paragraph: (a) The filing of a petition in bankruptcy or a petition for the appointment of a receiver by or against the Subcontractor; or (b) The insolvency of the Subcontractor or his inability to meet his debts as they mature; or (c) The establishment of a receivership or any committee of creditors involving Subcontractor's business or assets, or the making of an assignment for the benefit of Subcontractor's creditors; or (d) The failure or refusal of Subcontractor to respond, by written reply, to or by satisfactory compliance with, any written order or notice duly issued by the Contractor.

The Contractor is entitled to act under the terms of this Paragraph as if Subcontractor is unable to comply with this Subcontract if such inability, either for the stated reasons or others, is reasonably to be inferred from the acts or omissions of the Subcontractor, or other facts and/or circumstances; and Subcontractor hereby waives any and all defenses, claims or causes of action against Contractor based in whole or in part on the contention that Subcontractor was not unable to comply and would have been able to comply with this Subcontract were it not for the action of the Contractor pursuant to this Paragraph. It is further agreed that the Contractor shall have access to and may take possession of the Subcontractor's materials, supplies, machines, tools, equipment, and plant which may be located at the site of the work or en route to the site, as may be necessary to prosecute the work hereunder to completion, all without liability on the part of the Contractor for any damage, wear or tear, depreciation, theft, action of the elements, acts of God, fire, flood, vandalism or for any other injury or damage to such materials, tools and equipment. Upon any action by the Contractor pursuant to this Paragraph, the Subcontractor shall not be entitled to further payment on this Subcontract until the work has been completed and accepted by the Owner and payment therefor has been received by the Contractor from the

Owner. In the event that the unpaid balance due exceeds the expense incurred by the Contractor, the difference shall be paid to the Subcontractor; but if such expense exceeds the balance due, the Subcontractor agrees to promptly pay the difference to the Contractor, as hereinafter provided, and the Contractor shall have a lien upon all materials, tools, equipment and appliances taken possession of, as aforesaid, to secure the payment thereof. With respect to expenses incurred by the Contractor pursuant to this Paragraph, it is hereby agreed that the costs and expenses charges the Subcontractor as hereinbefore provided shall include, without restriction thereto, the cost of materials, labor, subcontracts, purchase orders, transportation, equipment and expense thereon, supplies, services, insurance, taxes, appliances, tools, utilities, power used or consumed, supervision, administration, job overhead, office overhead, travel, attorney's fees, legal and accounting fees and expenses.

Contractor's general overhead as allocated to the work and other costs and expenses incurred or sustained by the Contractor, plus 10% of the actual costs of the work performed as set forth in statements duly rendered, as well as the amount of claims against the Subcontractor paid by Contractor or for which it deems itself liable, less any amounts still owing hereunder, and Subcontractor agrees to pay the Contractor the full amount of such excess, if any, together with interest thereon at the rate of the highest prime rate of interest reported by the Wall Street Journal on the date the payment is due, plus 4%, until paid and in case of any default on the part of the Subcontractor, the Contractor may exercise any other right or remedy available to it. If the Wall Street Journal is not published, or does not publish the prime rate, the Contractor may designate a substitute source of the prime rate. In no instance will any action whatsoever taken by the Contractor pursuant to this Subcontract relieve or mitigate Subcontractor's full and absolute responsibility for any and all of Subcontractor's obligations with respect to the character and time of performance, discharge of claims, guarantees, warranties and all other obligations under this Subcontract.

6.    PROGRESS PAYMENTS. Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor, and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make partial payments to the Subcontractor upon submission to Contractor of the Subcontractor's Pay Estimate form as follows: ninety percent (90%) of all labor, materials, equipment and/or services shall be paid as completed and/or placed in position by said Subcontractor. Such sum shall be paid in or about the first week of the following second month after placement, except the final payment (ten (10%) percent) shall be paid to the said Subcontractor within 30 calendar days after the Subcontractor has completed all of his work to the full satisfaction of the Contractor and Owner, and final payment is released by the owner, and subject to the limitations states below. All such progress payments are subject to provisions below permitting Contractor to retain monies and the requisition provisions below. All such progress payments shall be paid by Contractor to Subcontractor only if Contractor has received payment from Owner for the same period in which Subcontractor provided services or performed work. Contractor's RECEIPT OF PAYMENT FROM OWNER IS A CONDITION PRECEDENT TO ITS OBLIGATION TO PAY Subcontractor's MONTHLY REQUISITION.

Within ten (10) calendar days of the contract date listed above, the Subcontractor shall submit to the Contractor a complete and accurate schedule of values of the various parts of the work, aggregating the total sum of this Subcontract, itemized and detailed as required by the Contractor and supported by such evidence as to its correctness as the Contractor may direct. This schedule, when approved by the Contractor, shall be used as the basis for making payments, unless it be found to be in error or in conflict with the procedures or determinations of the Owner or his representative regarding partial payments to the Contractor. Should Subcontractor fail to provide such a schedule within the time allotted above, the determination shall be made in the sole discretion of the Contractor.

If the terms of this Subcontract provide for the payment of work performed on a unit price basis, the unit of measurement for payment shall be one for which certified verification of weights or quantities can be furnished at the time of delivery or readily agreed upon. In the event the parties fail to agree on the actual quantities performed, Contractor shall have the right to measure the quantity of work in place and make final settlement on the basis of such measurement.

Subcontractor shall present invoices conforming to the schedule of values or unit prices and representing a true and accurate estimate of the work completed during the immediately preceding month on the Subcontractor's Pay Estimate Form (which is enclosed herein) no later than the twenty-fifth (25th) day of each month covering all work performed and/or installed by Subcontractor up to but not including the twenty-fifth (25th) day of the preceding month. Such application shall include an accurate inventory of materials suitably stored at the job site and certified by a representative of the Owner and/or the Contractor. Partial payments will be made only upon application submitted on a form furnished or approved by the Contractor and properly certified by an officer or representative of the Subcontractor in a manner acceptable to the Contractor. Each application shall be accompanied by such additional data, invoices, vouchers, waivers, certifications and affidavits as may be required by the Owner and/or as the Contractor may, in his sole determination, require for proper processing of payments and adequate protection of the premises from potential claims of third parties. It shall be the Subcontractor's sole responsibility to submit each application for payment hereunder

in the time and in the manner prescribed herein and on the form provided or approved by Contractor for such purpose, and in no instance shall Contractor be liable for the time or sufficiency of payment pursuant to any application or request not complying herewith. The Subcontractor agrees that applications for payment not complying herewith may, at the option of the Contractor, be held over for processing at the beginning of the month or other designated period next following correction, resubmission or late submission of such application, with or without notice of Subcontractor.

Each month, Subcontractor must submit a partial release of liens with its invoices on a form provided by Contractor certifying that it has used its prior payments to pay all suppliers, Subcontractors and tax obligations for the Project. Contractor shall pay Subcontractor within ten (10) calendar days of receipt of payment from Owner subject to the conditions described above. Contractor's RECEIPT OF PAYMENT BY OWNER FOR THE SAME WORK PERIOD IS A CONDITION PRECEDENT TO ITS OBLIGATION TO PAY Subcontractor's MONTHLY REQUISITION.

Final payment will be made within thirty (30) calendar days after the work called for hereunder has been completed by the Subcontractor to the satisfaction of the Owner and the Contractor, and the Contractor has received from the Owner written acceptance thereof together with payment in full for this portion of the work. Final payment is further subject to Contractor's determination that all of the terms, conditions, requirements and covenants of the Subcontract Documents have been well and truly met and discharged by Subcontractor. Contractor's RECEIPT OF FINAL PAYMENT FROM OWNER FOR THE SAME WORK PERIOD IS A CONDITION PRECEDENT TO ITS OBLIGATION TO ISSUE FINAL PAYMENT TO Subcontractor.

The Subcontractor, when required by the Contractor as a condition precedent to the making of final payment hereunder or at any other time, shall furnish to the Contractor a full and complete release and discharge, in a form satisfactory to the contractor, of all liens, claims, and demands arising out of or relating to the Subcontract Work and any and all materials furnished, work done and equipment used in connection therewith. Furthermore, if, prior to any partial or final payment, the Owner or any party providing financing for the Project request a release of liens from the Subcontractor, the Subcontractor shall execute and deliver such release of lien in a form satisfactory to the Owner or such other party.

No partial payment, or certificate therefor, shall constitute acceptance or approval by the Contractor of the work or material for which the partial payment is made. No partial payment shall constitute a waiver by the Contractor of any right to require fulfillment of all the terms of this Subcontract. Neither the final payment nor any partial payment, nor any certificate for either, shall constitute acceptance by the Contractor of defective work or improper materials or of any element of Subcontractor's performance determined to be at variance with the Subcontract documents. Each partial payment and the final payment made hereunder, and the total thereof, will be subject to final audit and adjustment, and the Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses, including attorney fees, the Contractor may incur in securing recovery thereof.

Notwithstanding the amounts and times of payments set forth above, the Contractor at any time may make advance payments to the Subcontractor if, in the Contractor's sole discretion, such advances will aid the Subcontractor in the performance of this Subcontract.

Contractor reserves the right to make any payment to Subcontractor, including payments due hereunder, through the medium of a check made payable to the joint order of Subcontractor and such of Subcontractor's workmen, material-men, suppliers or Subcontractors, or any of Subcontractor's creditors having potential lien rights against the work or any of them, whose claims against the Subcontractor shall, in Contractor's sole determination, be in jeopardy of non-payment. Should Subcontractor and its suppliers and material men request Contractor to issue joint checks, Contractor shall only be responsible to adhere to this Agreement if suppliers and material men present invoices to Contractor each month. In any event, Subcontractor agrees to assume full responsibility for the payments mistakenly addressed to Subcontractor, and its officers, shareholders and/or partners will individually hold Contractor harmless for all damages incurred by material-men and suppliers.

The Contractor may deduct from amounts due or to become due to the Subcontractor pursuant to this Subcontract, any sums due or to become due to the Contractor from the Subcontractor whether or not said sums are in any way related to this Subcontract or project. Contractor may apply such deducted funds to any account, related or unrelated to the Subcontract or project, wherein the obligations of the Subcontractor have not been discharged as determined by the Contractor and wherein the Contractor's interests are directly or indirectly involved.

In the event Subcontractor is in default of, or breaches or fails to comply with any provision, covenant or requirement of this Subcontract or the Subcontract Documents; or in the event that any person asserts, or indicates that he will assert, any lien, claim, demand, or charge against the project or land or improvements or funds related to the project, or against the Owner, the Contractor or any surety, arising from Subcontractor's performance of this Subcontract, the Contractor may, at his option, withhold out of any payments due or to become due to the Subcontractor such amounts as the Contractor, in its sole discretion, may deem sufficient to

completely protect and indemnify the Contractor and the Owner from any and all loss, damage and/or expense therefrom including attorney's fees and litigation costs, until the condition requiring such measures has been remedied by the Subcontractor to the satisfaction of the Contractor. If the offending condition is not remedied by the Subcontractor within a reasonable period of time, the Contractor may, at his option, proceed to make application of the withheld funds in whatever manner the Contractor may, in his sole discretion, determine as being in the best interest of himself and/or the Owner. If the Contractor is compelled to expend monies in defending, discharging or otherwise disposing of any claim or lien or other demand in excess of retained or withheld sums, the Subcontractor shall, upon demand, reimburse the Contractor for the excess amount so expended, including reasonable attorney fees and costs incurred by Contractor incident to such defense, discharge or disposition, and/or incident to Contractor's collection from Subcontractor of such excess.

Notwithstanding anything to the contrary contained in or applicable to this Subcontract, and without any limitation as to time Contractor shall not be obligated to make payments to Subcontractor under this Subcontract (a) When such payments will leave a balance due Subcontractor which is less than the retained percentage plus an amount adequate to satisfy all obligations of the Subcontractor for labor, materials, supplies, tools, machines, plant, equipment, services, etc. furnished or to be furnished by Subcontractor in performance of the work required under this Subcontract; (b) When Subcontractor is or with reasonable probability (as determined by the Contractor) may become unable to comply with or completely perform this Subcontract; (c) Whenever the Contractor, in his sole discretion, shall determine that the project is being delayed or is in danger of being delayed by the work of the Subcontractor or by any failure of the Subcontractor to effect timely compliance with any of the technical, administrative or operational requirements of the Subcontract Documents, including subsequent instructions, and schedules; (d) Pending satisfactory corrections, repair, replacement and/or restoration of faulty or deficient work, materials, supplies, machines, equipment or plant, or of any work rejected as not conforming with this Subcontract or the Subcontract Documents.

The Subcontractor hereby expressly waives any rights, claims, demands, damages or causes of action against the Contractor by reason of any payments made or monies advanced, withheld or deducted pursuant hereto and further agrees that none of the Contractor's rights or remedies otherwise provided for, including Contractor's rights as to the Subcontractor's sureties, assigns and/or creditors, shall be altered, waived, voided or rescinded thereby; nor by virtue of Contractor's failure to provide notification thereof to the Subcontractor's sureties, assigns and/or creditors or to obtain consent therefore.

The Subcontractor agrees that money received for the performance of this Subcontract shall be used solely for the benefit of persons and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services exclusively for this project in connection with this Subcontract and having the right to assert liens or other claims against the land, improvements or funds involved in this Project or against any bond or other security posted by Contractor or Owner; that any money paid to the Subcontractor pursuant to this Subcontract shall immediately become and constitute a trust fund for the benefit of said persons and firms, and shall not in any instance be diverted by Subcontractor to any other purpose until all obligations arising hereunder have been fully discharged and all claims arising hereunder have been fully paid. The Subcontractor agrees, as a condition precedent to payment hereunder, to furnish the Contractor with such partial and/or final releases and/or waivers of lien as the Contractor may from time to time request.

If at any time the Contractor in his sole discretion shall determine that the Subcontractor's financial condition has become impaired, unstable or unsatisfactory, the Subcontractor shall furnish additional security satisfactory to the Contractor within three calendar days after written demand thereof is mailed or delivered to Subcontractor and in default of furnishing said additional security the Contractor shall have the option to cancel this Subcontract or to initiate such other action as the Contractor may in his sole discretion, deem necessary for the protection or preservation of his interest and/or the prevention of delay in the efficient and orderly progress of work on the Project, including but not limited to that portion of the work to be performed by Subcontractor hereunder. In the event of such cancellation, the rights of the Contractor shall be the same as if the Subcontractor had willfully refused to further perform this Subcontract.

The Subcontractor and Contractor agree as follows with respect to the assignment of such payments as may be due or as may become due under this Subcontract: (a) The Subcontractor will make no assignment of the proceeds hereof without the prior written consent of the Contractor, which consent shall not be unreasonably withheld; (b) in no instance shall the Contractor be obligated to any assignee of the Subcontractor on account of payments at any time made in good faith under any assignment and/or erroneously or inadvertently made to the assignor; (c) The Contractor shall in no instance be liable to any assignee of the Subcontractor for any amount in excess of the net sums owing Subcontractor hereunder after first deducting any amounts for which Subcontractor may otherwise be obligated or indebted to Contractor; (d) By making an assignment of the proceeds hereof the Subcontractor waives any claim against Contractor resulting from Contractor's continued payment to the assignees or former assignees, notwithstanding notification to Contractor of termination of any such assignment; (e) By making an assignment of the proceeds hereof the Subcontractor agrees to assume full liability for the conveyance of assignees of any payments mistakenly, inadvertently, or otherwise made or addressed to Subcontractor, and Subcontractor agrees to defend and hold harmless the Contractor from claim or action of any assignee related to this Subcontract.

7.    RESPONSIBILITIES OF SUBCONTRACTOR.  It is agreed th...
a part of the work being performed on this project for the Owne...
Subcontractor therefore agrees to perform the work called for in...
damage any other work performed by the Contractor or any oth...

(a)    To furnish continuous and effective protection at all times for h...
this Subcontract, and to bear and be solely liable for all loss and...
and materials at any time prior to the final completion and acc...
by the negligence of the Contractor and is subject to recovery u...

(b)    To furnish continuous and effective measures as may be require...
the Owner, the Contractor and other Subcontractors from dama...
arising from his operations hereunder;

(c)    To report promptly to Contractor, in writing, any damage to his...
circumstances fully, and including, wherever available, an estim...
responsible party or parties;

(d)    Subcontractor must pay or reimburse the Contractor on account...
Owner, the Contractor and other Subcontractors caused by its o...
parties related to the Subcontractor resulting from the execution...
suitably protect, at all times, any and all fixtures, materials and...
performance under this subcontract.

(e)    That unresolved claims resulting from glass breakage, damage t...
such other related occurrences wherein the identity of the respon...
insurance settlement may be had, the Contractor may, upon com...
fairly and equitably pro-rated for assessment to the Contractor's...
in the sole determination of the Contractor, were engaged on the...
contributory involvement may reasonably be inferred; and the S...
determination in such pro-ration shall be final and conclusive.

8.    DOCUMENTATION.  The Subcontractor agrees that the cost of...
mock-ups required  hereunder, together with field measuring, sa...
any of the foregoing, is included in the amount of this Subcontra...
upon request when same may be obtained in less than two hours...
project at the time of the request. The Subcontractor agrees that...
manufactured or fabricated items not conforming to approved da...
Subcontractor.

9.    COSTS OF SUBCONTRACTOR.  It is hereby agreed by Subcon...
installation or erection of materials  furnished by Contractor, tha...
fully recovered by Contractor from Subcontractor: (a) The full co...
Subcontractor through faulty workmanship or negligence, or dam...
The full cost of materials wasted by Subcontractor; (c) The full c...
promptly removed by Subcontractor, together with the cost of rem...
necessitated by such rejection; (d) The full cost of reworking, refi...
by the Owner's Authorized Agent; (e) Costs resulting from dama...
other damages provided for in this Subcontract.

10.    COORDINATION OF CRAFTS.  This Subcontractor shall obtai...
blocking necessary to complete this work hereunder, and such w...
match any other work performed pursuant to the Contract Docum...
crafts having jurisdiction over any work which must be cut and p...
to obtain acceptable results or maintain harmonious labor relatio...
cooperate with the Contractor and other Subcontractors whose wo...

prepare sketches and drawings as directed, and/or participate in the preparation of coordinated drawings in areas of congestion, specifically noting and advising the Contractor of any such interference.

In order to avoid labor disputes, Subcontractor shall only employ such labor or classes of labor that will work in cooperation and harmony with the labor employed by Contractor and by other contract and other Subcontractors working on this Project. In the event of a strike or other disruption Contractor to eliminate or minimize consequences of the breach shall be borne by Subcontractor, including all counsel fees and administrative costs incurred.

11.  **TIME IS OF THE ESSENCE.**  Time is of the essence and the Subcontractor agrees to keep thoroughly informed as to the overall progress of the project; to commence and to prosecute the work undertaken hereunder in a prompt and diligent manner whenever such work, or any part of it, becomes available, or at such time or times as the Contractor may direct, so as to promote the general progress of the entire construction project; and Subcontractor shall not by delay or otherwise, interfere with or hinder the work or progress of the Contractor or any other Subcontractor. Any materials, services, supplies, tools, machines, equipment or plant to be furnished or used by Subcontractor hereunder shall be furnished in sufficient time to enable the Subcontractor and/or any other party requiring same, to perform and complete his or their work within the time or times established as herein provided.

Subcontractor must submit to Contractor its proposed production and installation times for its work contained in this subcontract within ten (10) calendar days of the contract date listed above. Based on this information, the Contractor shall prepare a schedule for performance of the Subcontract Work. The Subcontractor shall be bound by this Progress Schedule which may from time to time be revised and updated in the discretion of the Contractor and subject to the limitations described above.

Except as otherwise provided in this Subcontract, the Subcontractor agrees to notify the Contractor of his objection to, or inability to comply with, any directive, notification, order, schedule or revision thereof dealing with the time or times of his performance hereof, and to do so within three calendar days of Contractor's issuance thereof. In absence of such notice within three calendar days the Subcontractor agrees to accept for incorporation herein any and all orders, notices, directives, schedules or revisions thereof which may herewith and/or hereafter be issued from time to time by the Contractor to Subcontractor, and in the event of any conflict between the requirements of any of the foregoing, it is agreed that the time or times of performance shall be governed by the communication bearing the most recent date. Specific requirements as to time of performance in the Contract Documents, in this Subcontract, in the Subcontract Documents or subsequent additions thereto, or in directives, orders, schedules or schedule revisions issued by Contractor shall take precedence over the more general requirements of this Paragraph.

In the event of any failure of Subcontractor to complete his work within the required time or upon the dates established as provided herein above, the Subcontractor hereby agrees to reimburse the Contractor for any and all liquidated damages, if any, that may be assessed against and collected from the Contractor by the Owner, which are directly or indirectly attributable to or caused by the Subcontractor's failure to comply fully with the foregoing provisions; and further, whether or not liquidated damages are so assessed, Subcontractor hereby agrees to pay to the Contractor such other or additional damages as the Contractor may sustain by reason of any such delay directly or indirectly attributable to or caused by the Subcontractor, including, but not limited to, recovery of Contractor's overhead and expense related to managing and supervising the prime contract work during or equal to any period of time resulting from such delay of Subcontractor and office overhead; and Subcontractor further agrees that neither the payment of such damages nor any liability incurred for the payment of such damages shall release the Subcontractor from his obligation to otherwise fully perform this Subcontract.

In the event Subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner Contractor or other Subcontractors, he may submit to the Contractor a written request for an extension of time for the performance of same.

No allowance for an extension of time, for any cause whatever, shall be claimed by the Subcontractor or be made to him, unless the Subcontractor shall have made written request upon the Contractor for such extension within three calendar days after the cause for such extension first occurred, and unless the Contractor and Subcontractor have agreed in writing upon the allowance of additional time to be made. No extension of time granted Contractor by Owner shall inure to the benefit of Subcontractor unless such extension of time is directly related to Subcontractor's work hereunder and Contractor specifically agrees in writing to an extension of time to Subcontract therefor.

In no event shall an extension of time or allowance for extra time be granted to Subcontractor for delays attributable in any way to untimely or incorrect preparations and/or submission of drawings samples, product data, or any other submittal information required by the Contract Documents; or when priorities or procedures available to the Subcontractor have not been pursued diligently and correctly or when orders have not been placed with manufacturers or suppliers in a timely manner; or for delays resulting from

Subcontractor's substitution, or attempt to make substitution, of materials, equipment or methods of construction or manufacture in lieu of those specified or previously approved; or for any delay resulting from or attributable to Subcontractor's failure to comply with any of the provisions of this Subcontract; or when Subcontractor, by the exercise of reasonable diligence and judgment could have anticipated and avoided the delay.

12.    <u>OBLIGATIONS</u>.  The Subcontractor shall provide at his own expense whatever tools, machines, equipment, plant, utilities, service, storage sheds, workshops, offices, other temporary structures, and any other facilities he may deem necessary for the complete performance of all work required under this Subcontract, and shall remove any such installations and thoroughly clean and restore the site and premises during and at the completion of the work.  If the Subcontractor has occasion to utilize any of the facilities of the Contractor, when and if available, Subcontractor shall pay an equitable portion of the cost thereof; provided, however, that Contractor shall bear no responsibility for any loss or damage from any cause whatsoever arising from Subcontractor's use of such facilities.

The Subcontractor agrees to accept full responsibility for expediting and securing timely delivery of his materials, supplies, tools, machines, equipment and plant to the site of the work.

Subcontractor acknowledges that any recapitulation above of the work to be performed shall be for the exclusive purpose of clarifying the status of those items which are specifically mentioned as being included in, or excluded from, the scope of this Subcontract. Where a division of the Contract specifications is referred to in describing the work to be performed under this Subcontract, the Subcontractor shall, unless otherwise specified, perform all of the work required by such division, plus all additional related work of a similar nature generally performed by the trades or crafts employed or engaged by the Subcontractor in executing the principal work under this Subcontract, whether or not such additional work of a similar nature is specifically called for in the plans, in other divisions of the specifications, or in any other of the Contract Documents.

The Subcontractor shall not place on the work site any machines, equipment, or plant of which he is not sole owner without prior written notification to the Contractor setting forth the full name and address of the owner thereof.

The Subcontractor shall not employ any persons in the performance of this Subcontract whose employment might be reasonably objected to by the Contractor or Owner. In the interest of harmonious relations and to facilitate the orderly and efficient progress of the work on this project, the Subcontractor hereby agrees to promptly remove from the project any supervisor, employee, workman or further Subcontractor to whom the Contractor reasonably objects or to whom the Owner or the Owner's Authorized Agent objects, and such person or party shall not again be employed on any portion of the work covered by this Subcontract.

The parties hereto stipulate that for purposes of interpreting and applying this Paragraph, the term "substitution" shall be deemed to include any substitution for, modification of, or deviation from the requirements of the original plans and specifications with respect to the materials, equipment and methods of construction or manufacturing applicable to the Subcontractor's work hereunder.

The Subcontractor agrees that he has thoroughly familiarized himself with all of the various sections, divisions and sub-divisions of the Contract Documents and the Subcontract Documents, including in particular those areas in which his work hereunder may in any way affect or be affected by the work of the Contractor or other Subcontractors. The Subcontractor shall make no substitution, as defined herein, for which prior written approval of both the Owner and the Contractor has not been obtained. Such approval will not be granted by the Contractor unless applied for in writing by the Subcontractor setting forth a full disclosure of the effect of the proposed substitution upon the work of the Contractor or any other Subcontractor. In making or seeking to make any substitution, the Subcontractor hereby agrees to pay or reimburse the Contractor for any increase whatever in the cost of the work undertaken by the Contractor or by any other Subcontractor as a result of any substitution made upon initiation of the Subcontractor, approval thereof notwithstanding.  Subcontractor shall receive no extension of time to complete the work due to any delay in obtaining substitution approval.

The Subcontractor agrees, at the time of entering this Subcontract, that no substitution was contemplated in arriving at the amount of this Subcontract.

Subcontractor acknowledges that it was his responsibility, prior to entering this Subcontract, to investigate and familiarize himself with all laws, codes, prevailing wage scales, union benefits, existing labor conditions, climatological site and subsurface conditions, ordinances, regulations applicable to his work under this Subcontract and any other factors which may affect its Work; with the availability and adequacy of personnel, workmen, material, supplies, equipment, power utilities, fuel, etc. and, with respect to each of the foregoing, the cost and suitability thereof; with the prevailing wage scales, union scales, benefits and working conditions, craft jurisdictions, craft area practices, existing labor agreements including those signed by or on behalf of the Contractor; with the

character and content of all other contracts related to the project, including such separate prime contracts as may have been awarded by the Owner; the character and content of purchase orders and arrangements for supplies and material to be furnished by the Contractor for the use of Subcontractor; with all options, site considerations and restrictions, lease agreements, royalties, underground conditions, prevailing weather and climatological conditions and history; and any other factor or factors which may affect Subcontractor's work under this Subcontract. The Subcontractor hereby agrees that he has investigated all such matters and familiarized himself therewith to the extent that he, in his sole discretion, deems necessary. Subcontractor further agrees that Contractor shall not be liable to Subcontractor on any claim for additional payment or additional time or any claim whatsoever if such claim directly or indirectly results from Subcontractor's failure to investigate and familiarize itself sufficiently with the conditions under which this Subcontract is to be performed, including the foregoing but without restriction thereto, or from any misunderstanding thereof on the part of the Subcontractor.

Prior to performing any portion of the Subcontract Work, the Subcontractor shall conduct a visual inspection of the project site to become generally familiar with the local conditions and to correlate site observations with the Subcontract Documents. If the Subcontractor discovers any discrepancies between its site observations and the Subcontract Documents, such discrepancies must be promptly reported to the Contractor.

13.     WARRANTIES.  Subcontractor further warrants that it has received and reviewed all plans and specifications relating to its work. Subcontractor also agrees to give proper governmental authorities requisite notice of work to be done and shall obtain at its own cost and expense all permits and licenses required.  Subcontractor shall obtain and pay for all permits, licenses and official inspections made necessary by his work and shall comply with all laws, ordinances and regulations bearing on the work required under this Subcontract and the conduct thereof.

The Subcontractor guarantees the work and materials which he performs or furnishes under this Subcontract and agrees to make good, at his own expense, any defect in materials or workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner therefore as required by the Contract Documents. The Subcontractor further agrees to adopt and assume, as a direct obligation to the Contractor and/or the Owner, any guarantees or warranties which would otherwise be the responsibility of the Contractor or other Subcontractors, when such guarantees or warrants have been voided, waived, withdrawn or canceled as a result of the Subcontractor's operations hereunder, or on account of any act or omission of the Subcontractor in performance of this Subcontract.

14.     SATISFACTION AND GUARANTEE OF WORK.  Subcontractor's Work shall be performed to the complete satisfaction of Contractor and Owner.  All Work and materials provided by Subcontractor shall be guaranteed by Subcontractor for a period of one (1) year from acceptance of the Project by Owner unless the specifications refer to another period of guarantee unless the period for such guarantee is longer under the Contract Documents. If the Owner or Contractor rejects the subcontract work, or if the subcontract work is not in conformance with the subcontract documents, the subcontractor shall promptly correct the subcontract work whether it has been fabricated, installed, or completed.  Defective work and/or materials shall be replaced at the Subcontractor's sole expense, and Subcontractor shall be responsible for additional testing, inspections, and compensation for services and expenses of the Contractor made necessary by the defective subcontract work.  The Subcontractor, upon two (2) calendar days written notice, shall repair and/or correct work rejected by either the Owner or Contractor for failing to conform to the requirements of the contract documents whether said work is rejected before or after final completion. If Subcontractor fails to repair and/or correct work within two (2) calendar days of the written notice, Contractor shall have the right to perform the work and charge Subcontractor for all related costs, including but not limited to attorneys fees and costs.  Under this subcontract, the Subcontractor shall always bear all costs of correcting rejected work and/or materials, including costs of all other affected parties.

15.     LIENS.  Subcontractor stipulates that there shall be no lien or right to lien the Project or any part thereof for the labor performed or materials furnished in the performance of its work.  Furthermore, no such lien or claim shall be filed or attempted to be enforced by or on behalf of any Subcontractor or material suppliers of Subcontractor.  Subcontractor agrees to advise all of its material suppliers of this provision, and shall condition any agreement with its material suppliers on acceptance of this provision.  Subcontractor agrees to execute a waiver of right to file a Mechanic's Lien which may be filed on record in a format acceptable to Contractor.

The Subcontractor and any person or persons acting through or under the Subcontractor shall not file or maintain any mechanics' claims or liens against the Project, or the buildings thereof, or the lot of ground appurtenant thereto, for or on account of any work done or materials furnished by the Subcontractor and any such person or persons as aforesaid for the Subcontract Work under this Subcontract, or otherwise, for, toward, in and about the construction and erection of said Project or the buildings thereof. The Subcontractor, for and on behalf of the Subcontractor and all other person or persons as aforesaid, hereby expressly waives and

relinquishes the right to have, file or maintain any mechanics' claim or lien against the said Project, the buildings thereof and the lot of ground appurtenant thereto, or any of them, which waiver shall be and hereby is made an independent covenant and shall operate and be effective also with respect to work and labor done and materials furnished under any supplemental agreement between the Contractor and the Subcontractor, or any agreement for extra work done, performed, furnished or supplied in and about the said Project, although not therein referred to as work and labor performed and materials furnished under this Subcontract.

If at any time, there shall be evidence of a lien, stop notice or claim related to the Subcontractor or its work performed for the project, for which Owner, Contractor or its surety may become liable due to Subcontractor's failure to make timely payment, Contractor may satisfy the indebtedness and hold the Subcontractor responsible for reimbursement. Notwithstanding the foregoing, if any lien or claim is filed against Contractor, or the monies due by Owner to Contractor arising out of by reason of any breach by Subcontractor, Subcontractor shall bear all costs and expenses, including counsel fees, to defend and satisfy these claims and shall, at Contractor's request, obtain at its own expense the necessary surety bonds to discharge the lien.

16.  **LIABILITY OF SUBCONTRACTOR.** Subcontractor assumes entire responsibility and liability for any and all claims and/or damages of any nature whatsoever caused by Subcontractor, for which Contractor shall be liable under the Contract Documents or by operation of law with respect to the scope of the work covered by this Subcontract and agrees to indemnify and hold harmless Contractor, its surety, and/or Owner from any loss, liability, expense, including attorney's fees, damages or injuries caused directly in connection herewith.

17.  **INSURANCE.** Subcontractor acknowledges receipt of the attached Insurance Requirements and shall procure and maintain at its own expense the insurance required thereby. Subcontractor agrees that before commencing its Work, it shall furnish a certificate to Contractor establishing that all the insurance coverage required hereunder is in force and that it will not be canceled with less than thirty (30) calendar days prior written notice thereof by CERTIFIED MAIL to Contractor and Owner. Failure to provide such shall constitute a breach of contract, and in its discretion, Contractor may void this agreement. Such insurance shall contain no "Exclusions" or "Deductibles", except as approved in writing by Contractor. Failure of Contractor to require the production of such certificates of insurance shall not absolve Subcontractor of its obligation in respect thereto. Should Subcontractor fail to procure and maintain such insurance, Contractor shall have the right to procure and maintain same for and in the name of Subcontractor and charge the cost thereof to Subcontractor. Contractor shall be named as an additional insured.

All insurance required hereunder shall be maintained in full force and effect in a company or companies satisfactory to Contractor, at Subcontractor's expense, and until performance in full hereof has been accomplished and final payment has been issued in evidence thereof.

No payment shall be considered due and owing hereunder until certificates of insurance satisfactory to the Contractor have been received in his office.

18.  **LIABILITY FOR TAXES, ETC.** The Subcontractor agrees to and does hereby accept full and exclusive liability for the payment of any and all contributions, taxes or insurance of any description whatever, now or hereafter imposed by any authority, which are measured by the wages, salaries or other remunerations paid to persons employed by Subcontractor on work performed pursuant to the terms of this Subcontract. Further, Subcontractor agrees to and does hereby accept full and exclusive liability for the payment of any and all personal property taxes, inventory taxes, sales taxes, use taxes, excise taxes, fuel taxes, transportation taxes, franchise taxes, and all other taxes and/or tax assessments in any manner whatsoever relating to the materials, supplies, tools, machinery, equipment and plant which may be purchased, acquired, rented or used by Subcontractor relating to all work performed under this Subcontract as is or may be imposed or assessed by any Federal, State, Local or other political subdivision or agency. Subcontractor accepts and assumes exclusive liability for, and shall save Contractor harmless against the payment of all contributions, taxes or premiums which may be payable under the Unemployment Insurance Law of any State or under the Federal Social Security Act, measured upon the payroll of employees by whomsoever employed, engaged in the performance of the work included in this Subcontract, and all sales, use or other taxes levied or assessed against Owner, Contractor or Subcontractor, arising out of the Work, including but not limited to, taxes on any kind of materials, articles or equipment. Contractor may, at its sole discretion, request production of evidence satisfactory to it by Subcontractor that all obligations contained in the within paragraph have been paid in full as a condition precedent to Contractor making any payment whether final or otherwise hereunder.

19.  **INDEMNIFICATION.** The Subcontractor agrees to indemnify and save the Contractor and Owner harmless from any and all claims, suits, losses, damages or expenses on account of injuries to or the death of any and all persons whomsoever, and any and all property damages arising or growing out of or in any manner connected with the work performed by or for the

Subcontractor's account under this agreement, or caused or occasioned in whole or in part by reason of the presence of the person or property for the benefit of the Subcontractor, its employees, agents or suppliers, except when such claims or suits shall arise out of the sole negligence of the Contractor. The Subcontractor shall defend at its own expense, in the name of or on behalf of the Contractor and Owner all claims or suits for injury to persons or damage to property arising or growing out of the work carried on under this agreement except where such claims or suits arise out of the sole negligence of the Contractor. The Subcontractor shall indemnify and save the Contractor and Owner harmless from any and all claims, suits, losses, damages or expenses incurred by employees of the Subcontractor or employees of vendors or agents of the Subcontractor when such claims, suits, losses, damages or expenses shall have been incurred or alleged to have incurred from an unsafe place to work or such similar types of complaint unless the contractor shall have been given written notice of the unsafe condition prior to any accident caused or alleged to have been caused by such unsafe place to work.

The Subcontractor shall pay all the expenses and costs of attorney's fees incurred by the Contractor and Owner in the enforcement of the conditions and obligations of this agreement, of any bond furnished in connection herewith, for the performance or non-performance of the work hereunder, and for any unsafe place to work or similar type of claim. Such expenses and costs of attorney's fees shall be recovered for the investigation, defense or the bringing of any such action by the Contractor and Owner hereunder whether such claims or allegations are valid or not.

20.    CLEAN UP AND DEBRIS.  Subcontractor agrees to keep the premises clean at all times and to remove from the site all rubbish, debris, packing materials, scrap and waste materials resulting from his work under this Subcontract. The Subcontractor is responsible to perform and complete all clean up of their debris daily and prior to the end of the working day.  Subcontractor further agrees to clean and remove to the satisfaction of the Contractor, all dirt, grease, marks, stains, etc., from all finished work and property throughout the Project resulting from the execution of the work required under this Subcontract. The Subcontractor shall properly cover and protect the work of others from damage or soiling due to the performance of the work required under this Subcontract, and Subcontractor shall promptly clean, restore, or pay for the replacement of any such work damaged or soiled in the performance of his own work. If the Subcontractor refuses or fails, in the manner and time aforesaid, to promptly perform such cleaning and/or repair as directed by the Contractor, the Contractor reserves the right to clean up Subcontractor's debris, and clean, remove, or repair damage caused by Subcontractor without any notification. The Contractor shall have the right to proceed with such cleaning and/or repair, and Subcontractor, on demand therefor, shall repay to the Contractor the actual cost of such work plus a reasonable percentage to cover Contractor's supervision, insurance, tax and overhead; or at the option of the Contractor, the aforesaid charges may be accumulated and deducted from monies otherwise due the Subcontractor under this Subcontract.

21.    EQUIPMENT AND TOOLS.  Contractor will not provide Subcontractor with any equipment (including but not limited to any hoist or elevator service for lifting materials or personnel) unless otherwise specified herein.  Contractor shall also not be responsible for the safety of Subcontractor's tools and materials. Subcontractor shall not be relieved of any liability or responsibility for failure to perform hereunder by reason of Contractor's failure to provide site security (including but not limited to providing a watchman), even such security measures are required by the Contract Documents between Contractor and Owner.

22.    PRINCIPAL REPRESENTATIVE.  Subcontractor is required to have a principal representative present at weekly job and safety meetings unless excused by Contractor.  Subcontractor is required to have a principal representative present at all Certified Quality Control meetings as directed by the Certified Quality Control manager.  Subcontractor shall at all times, maintain a qualified superintendent or foreman at site who is legally authorized to represent and act for Subcontractor with respect to all matters in connection with its work.

23.    ALTERATIONS TO SCOPE OF WORK.  Subcontractor shall coordinate and compare his work with all project drawings (all of which are included herein).  If discrepancies between project drawings are discovered, Subcontractor shall be responsible to immediately notify Contractor in writing and request a clarification.  If notification is not given, Subcontractor shall be responsible for the required correction. Moreover, if Subcontractor encounters any condition upon which it may base a claim for extra compensation or time, it shall be its duty to give written notice to Contractor prior to commencing work involving these items.  If no notice is given, Subcontractor shall be fully liable for any and all expense related to correction and/or repair of the condition, or any damage caused and/or resulting from this condition.  No alterations shall be made in Subcontractor's Work except upon written direction by Contractor.  Contractor may, at any time, by written work order and without notice to Subcontractor's surety, make changes in the Work contracted for, upon agreement of the parties hereto of the price for the adjustment.  If the change cause an increase or decrease in the cost or time for performance, an equitable adjustment shall be requested in writing by Subcontractor.  Nothing hereon shall excuse Subcontractor from proceeding with the prosecution of work as changed. Subcontractor is required, however, to submit a

list of pending change orders with its monthly invoice. Failure to comply with this requirement will relieve Contractor of its obligation to adjust the contract sum or time for performance. No charges for premium time or overtime or change orders will be honored by Contractor unless signed authorization has been obtained from Contractor by Subcontractor prior to performance thereof.

24.    CHANGE ORDERS.    The Subcontractor agrees to make any claims to the Contractor for damages or additional compensation based on alleged extra work, changed conditions or any other grounds in the same manner as provided in the Contract Documents for like claims of the Contractor upon the Owner, and in such times as will enable the Contractor to present such claims to the Owner for payment or recognition; and the Contractor will not be liable to the Subcontractor on account of any claim not timely or properly presented, nor unless and until it is allowed by the Owner.

No interruption, cessation, postponement or delay in the commencement of the work or in the progress thereof from any cause whatsoever, including disputes, shall relieve the Subcontractor of its duty to perform or give rise to any right to damages or additional compensation from the Contractor except to the extent that reimbursement is received from the Owner by the Contractor therefor with respect to the work to be performed by Subcontractor hereunder, and the Subcontractor hereby expressly waives and releases any other or further right to damages or additional compensation.

If the Subcontractor encounters surfaces or work which he considers unsatisfactory and which affect the work under this Subcontract, or if the Subcontractor encounters any other condition whatsoever upon which he may base a claim for extra compensation, extra time, or any other type of claim, it shall be his duty to give written notice to the Contractor prior to commencing any work involving said conditions in order to allow the Contractor to inspect said conditions and to make such arrangements and take such steps as Contractor deems necessary. In the absence of such notice to the Contractor, Subcontractor shall be fully and solely responsible and liable for any and all expense, loss, or damage resulting from said condition and Contractor shall be relieved of all liability in connection therewith.

If a change order requires an adjustment in the subcontract amount, the adjustment shall be established by one if the following methods: (a) mutual acceptance of an itemized lump sum; (b) unit prices as indicated in the subcontract documents or as subsequently agreed upon by the parties; (c) cost determined in a manner acceptable to the parties and a mutually acceptable fixed or percentage fee; or (d) another method provided in the subcontract documents.

If the Subcontractor does not respond promptly to contractors inquiries to make a subcontract amount adjustment or otherwise fails to cooperate in forming a method of adjustment, the adjustment may be determined by the contractor on the basis of reasonable expenditures and savings of those performing the work. The Subcontractor shall maintain for the purposes of determining the adjustment the following items: (a) labor costs, including all Social Security, health, welfare, retirement, worker's compensation, and other fringe benefits expenses; (b) costs of materials, supplies, and equipment; (c) costs of renting machinery and equipment; (d) costs of bonds and insurance premiums; (e) costs of additional supervision and field overhead. Should the Subcontractor fail to maintain records of such expenses in a format reasonable accepted, Subcontractor shall have no basis to dispute contractors method of determining the adjustment.

ANY PAYMENT OF ADDITIONAL MONIES UNDER THIS PROVISION FROM CONTRACTOR TO SUBCONTRACTOR ARE CONTINGENT UPON PAYMENT FROM OWNER TO CONTRACTOR. Subcontractor hereby expressly waives any other right to damages or additional compensation should the claim be denied by the Owner, or should Owner delay approval or disapproval of Subcontractor's claim. Subcontractor shall also make no claim for delays or damage which it claims was caused by other Subcontractors on this Project.

25.    CHANGES IN THE SUBCONTRACT WORK.    When the Contractor orders in writing, the Subcontractor, without nullifying this agreement, shall make any and all changes in the Subcontract Work which are within the general scope of this Agreement. Any adjustment in the Subcontract Amount or Subcontract Time shall be authorized as per the Change Order provisions stated above. No adjustments shall be made for any changes performed by the Subcontractor that have not been approved by the Contractor.

No interruption, cessation, postponement or delay in the commencement of the work or in the progress shall be permitted due to a change to the Subcontract Work hereunder. Subcontractor shall not be permitted to refuse to perform Subcontract Work changes because of the denial of a change order as to the Subcontract Amount or Subcontract Time.

26.    TERMINATION OF SUBCONTRACT.    In the event of the termination of the Principal Contract between Owner and Contractor, this Subcontract shall also be terminated, upon written notice of Contractor to Subcontractor, and Contractor

shall only be liable for labor, materials, articles and equipment furnished, and/or materials, articles, and equipment ordered for the project up to the date of receipt by Subcontractor of such written notice of termination, but only to the extent Subcontractor is liable for same; provided, however, that Contractor shall not be liable for anticipated profits or overhead.

27.  REDUCTION OF WORK.  In the event of elimination or reduction of the work to be performed under this Subcontract by reason of termination or modification of the Contract or Contract Documents or a change in the work to be done thereunder, either in accordance with the terms of the Contract or the Contract Documents or by default by the Owner, Subcontractor shall in no case be entitled to recover from Contractor more than his fair and equitable portion of any sums received by Contractor for work done and material supplied by this Subcontractor on this Subcontract. The rights and claims of the Contractor, other Subcontractors and third parties shall be taken into consideration in determining Subcontractor's fair and equitable share.

28.  DISPUTE RESOLUTION AND ARBITRATION.  In the event of any dispute or claim between the Contractor and the owner which directly or indirectly involves the work required to be performed by Subcontractor under this Subcontract, or in the event of any dispute or claim between Contractor and Subcontractor which directly or indirectly involves a claim against the Owner for either additional compensation and/or an extension of time under the Contract Documents, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor to the same extent that Contractor is bound to the Owner by the terms of the Contract Documents and by any and all decisions, findings or determinations made thereunder by the person so authorized in the Contract Documents, or by an administrative agency or court of competent jurisdiction, whether or not Subcontractor is a party to the proceedings before said person, agency or court.

If any dispute or claim is prosecuted or defended by Contractor, and Subcontractor is not directly a party or litigant, Subcontractor agrees to cooperate fully with Contractor and to furnish all documents, statements, witnesses and other information required by Contractor for such purpose and shall pay or reimburse Contractor for all expenses and costs, including reasonable attorney's fees, incurred in connection therewith to the extent of the Subcontractor's interest in such claim or dispute. It is expressly agreed in connection with the determination of such claims or disputes, that as to any and all work done and agreed to be done by the Subcontractor, and as to any and all materials or services furnished or agreed to be furnished by the Subcontractor, and as to any and all damage, if any, incurred by Subcontractor in connection with this project, Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor.

In the event of any claim or dispute between the Contractor and the Subcontractor, other than those claims or disputes referred to in the immediately proceeding paragraph, regardless of the venue of the Project, all claims or disputes arising out of this Subcontract shall be submitted to binding arbitration, upon the written demand of either party, to the American Arbitration Association in New Jersey.  Once an award is rendered, the parties agree to stipulate to the entry of Judgment in the Court of Common Pleas of Delaware County or the State and County in which Subcontractor is located and/or does business within 30 calendar days after expiration of the right to appeal.

In the event of any claim or dispute between Contractor and Subcontractor, as referred to in either or both of the preceding paragraphs, or otherwise, it is further specifically agreed by the parties hereto that no claim, dispute or controversy shall interfere with the progress and performance of work required to be performed under this Subcontract and that Subcontractor shall proceed as directed by Contractor in all instances with his work under this Subcontract, and that any failure of Subcontractor to comply herewith and to proceed with his work shall automatically be deemed a material breach of this Subcontract entitling Contractor to all remedies available in the event of breach and, further, shall automatically disqualify said Subcontractor from the right to arbitrate or continue in arbitration of any claim or dispute for which arbitration is commenced.

29.  CONTROLLING LAW.  Regardless of the venue of the Project, this agreement shall be construed and enforced in accordance with the laws of the State of New Jersey.  If not to be determined by arbitration for any reason, any dispute between the parties related to this contract shall be determined exclusively by the courts of the State of New Jersey. The Subcontractor hereby consents to personal jurisdiction of the State of New Jersey over it and agrees to accept service of process issuing from the courts of the State.

30.  NOTICES.  Any notice given under this Subcontract shall be in writing and sent by REGISTERED MAIL, TELEGRAM, FAX, OR HAND DELIVERED to Contractor at Wu and Associates, Inc., 597 Deer Road, Cherry Hill, NJ 08034 and to Subcontractor at the address stated in Paragraph 1 above.

When mail is used, delivery is complete on the date first occurring among the following: (a) On the day the communication is

received by Subcontractor as evidenced by a return receipt furnished by the United States Post Office Department or by any recognized messenger or delivery service, (b) On the third day after the notice is deposited in the U.S. mail addressed to the Subcontractor at the project or at the address appearing on this Subcontract. Telegraphic and mail communication may be addressed to the Subcontractor at the address shown on this Subcontract or at his last known address.

31.    **FORBEARANCE IS NOT A WAIVER.** It is expressly agreed that the waiver by Contractor of any breach or default of this Subcontract by Subcontractor shall not be construed as a waiver of any other breach or default of the same or any other terms, conditions, provisions or covenants of this or any other Subcontract between the parties hereto. Forbearance from demanding strict compliance with any term or provision of this Subcontract or any other Subcontract between the parties hereto shall not operate as a waiver and shall not prevent Contractor from subsequently demanding strict compliance therewith.

32.    **PAYROLL REQUIREMENTS.** Subcontractor shall comply with all requirements of the Contract Documents and Subcontract Documents pertaining to payroll reports, payroll affidavits, payment of prevailing wages, benefits and contributions; anti-kickback clauses, fair labor practices, nondiscrimination clauses, equal opportunity employment laws, orders and directives, etc. insofar as such matters pertain to his work under the Subcontract. Failure of Subcontractor to observe any of the aforesaid requirements, including the prompt submission of the Contractor or required reports and affidavits, shall constitute cause for withholding progress payments until such requirements are met. It shall be the responsibility of the Subcontractor to determine his own status under the various regulatory acts relating to employment, and nothing in this Subcontract shall serve to make the Contractor liable for any errors or acts of omission or commission by Subcontractor with respect thereto. The Subcontractor agrees to consult with the Contractor in all matters pertaining to craft work assignments wherein such assignments might reasonably result in controversy or craft jurisdictional disputes.

Subcontractor hereby agrees that if any portion of his work under this Subcontract is further subcontracted, subject to provisions of this agreement, such further Subcontractor shall comply with, observe and be bound by the terms and provisions of this paragraph , and Subcontractor further agrees to incorporate the terms and provisions of this paragraph in any further subcontract.

33.    BONDING.  Unless specifically waived herein by Contractor, Subcontractor shall furnish, without expense to the Contractor and within ten (10) calendar days of the date hereof, a performance bond and payment bond, each for the full amount of this Subcontract as set forth above. The two bonds shall be drawn in favor of the Contractor and shall be executed by a surety company acceptable to the Contractor (in its sole discretion) and on forms furnished by the Contractor or approved by the Contractor's home office. No payment whatsoever shall be due the Subcontractor until the provisions of this Paragraph have been met to the Contractor's satisfaction.

No change, alteration or modification in the terms and conditions of this Subcontract, or in the terms or manner of payment shall in any way exonerate or release, in whole or in part, any surety on any bond furnished by or on behalf of the Subcontractor. If required to do so by the Contractor, prior to commencement of any work required hereunder, Subcontractor shall obtain, and furnish to Contractor, a copy or counterpart of this Subcontract which shall have been endorsed in writing by an authorized representative of the surety company, specifically approving this Subcontract.

4.    **CONTACTS WITH OWNER.**  The Subcontractor's exclusive responsibility for the performance of this Subcontract is to the Contractor and it is agreed that all of Subcontractor's dealings with the Owner's Authorized Agent, the Owner, or any other parties named in the Contract Documents shall be through the Contractor.  No claim of any nature will be recognized, nor shall Contractor be liable on account thereof, unless all matters pertaining to such claim have been directed through Contractor's office. The Subcontractor further agrees that neither he, nor his representatives on the project, shall make any agreement, written or oral, with the Owner's Authorized Agent or with the Owner, or with representatives of either, pertaining to any phase of the performance of this Subcontract.

**BAR OF DISCRIMINATION.**  The Subcontractor, in performing the work required by this Subcontract, shall not discriminate against any employee or applicant for employment because of sex, age, race, creed, color or national origin. The Subcontractor agrees that the preceding paragraph will be inserted verbatim in all of its further subcontracts which shall be made pursuant to the provisions herein.

**USE OF SUBCONTRACTORS.**  When requested to do so by the Contractor, Subcontractor agrees to submit a list of any proposed sub-Subcontractors, and Subcontractor shall not delegate, sublet, or further subcontract to others in performance of any of his obligations or work required or contemplated by this subcontract without prior written consent of the Contractor which shall not be unreasonably withheld.  For the purpose of interpreting this Paragraph, a "subcontract" is defined as any

contract entered into by the Subcontractor with any individual, partnership, association, corporation, estate or trust, or other business enterprise or other legal entity, for a specific part of the work to be performed or materials to be produced or services to be rendered at the site of the project which is the subject of this Subcontract.

37.   EFFECTIVE DATE.  The effective date of this Subcontract is intended by both parties to be the date indicated at the beginning of this Subcontract.  The dates appearing by the signatures at the end of this document merely indicate the dates that the signatures were affixed.  Contractor and Subcontractor agree that the date above shall be used to calculate all deadlines stated below.

38.   OCCUPATION.  Whenever it may be useful or necessary to the Contractor to do so, the Contractor shall be permitted to occupy and/or use any portion of the work which has been either partially or fully completed by the Subcontractor before final inspection and acceptance thereof by the Owner, but such use and/or occupation shall not relieve the Subcontractor of his guarantee of said work and materials nor of his obligation to make good at his own expense any defect in materials and workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner, provided, however, the Subcontractor shall not be responsible for the maintenance of such portion of work as may be used and/or occupied by the Contractor, nor for any damage thereto that is due to or caused by the sole negligence of the Contractor during such period of use.

39.   SOLE AGREEMENT.  This Subcontract constitutes the entire agreement between the parties and contains all of the covenants, stipulations, and provisions agreed upon by the parties. This Subcontract supersedes and takes precedence over all proposals, correspondence, and oral agreements between the Subcontractor, and Contractor if any, made prior to and including the date hereof, and not specifically identified and incorporated in writing in this Subcontract.

This Subcontract includes all alternates, changes, addenda, amendments, corrigenda, or any other instruments of like effect made, issued, or exercised by the Owner or the Owner's Authorized Agent through the date hereof. No agent or representative of either party hereto has authority to make, and the parties shall not be bound by, or liable for, any statement, representation, promise, or agreement not specifically set forth in this Subcontract. Except as otherwise provided for herein, no changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by the parties hereto. Words used in this Subcontract in the masculine gender include the feminine and neuter; the singular number includes the plural, and the plural singular.

To the best of knowledge and belief of the parties, this Subcontract now contains no provision that is contrary to Federal or State law, or to any ruling or regulation of a State or Federal agency. Should, however, any provision of this Subcontract at any time during its effective term be in conflict with any such law, ruling or regulation, then such provision shall continue in effect only to the extent permitted. In the event any provision of this Subcontract is thus held inoperative, the remaining provisions of this Subcontract shall nevertheless remain in full force and effect to the extent permitted by law. Each and every provision of law and clause required by law to be inserted in this Subcontract shall be deemed to be inserted herein and this Subcontract shall be read and enforced as though it were included herein, and if through mistake or otherwise any such provision is not inserted, or is not correctly inserted, then upon the application of either party this Subcontract shall forthwith be physically amended to make such insertion or correction.

IN WITNESS WHEREOF, the parties hereto intending to be legally bound hereby set their hands and seals as of the dates stated below.

(ORIGINAL SIGNATURES)


WU AND ASSOCIATES, INC. _____          DATE _____

                    BY: ___Raymond Wu, P.E._____     (print name)     TITLE: ___President_____


BRENDAN WARD MASONRY, INC. _____          DATE _____

                    BY: _____     (print name)     TITLE: _____

Wu & Associates, Inc.
597 Deer Road
Cherry Hill, NJ 08034
Tel: 856-857-1639
Fax: 856-857-1729
Email: info@wuassociates.com

PROJECT NO: __0102__

SUBCONTRACT NO: __0102-17__

# SCOPE OF WORK – EXHIBIT A

1.  Except as specifically noted, Subcontractor shall provide and pay for:

    (A)   All labor, materials, and equipment;
    (B)   Tools, construction equipment and machinery;
    (C)   Supervision, other facilities, and services;
    (D)   Insurance; and
    (E)   100% Payment Bond and 100% Performance Bond.

2.  The Subcontractor shall have full responsibility for the following specifications:  Section 04200 - Unit Masonry, Section 04200  Cast Stone (setting and supply anchors only) and all sections applicable for completion of this contract.

3.  This subcontract includes, but is not limited to the following, which shall be considered as part of this Subcontract:
    (i) Addendum No. 1, dated 7/25/01;
    (ii) Addendum No. 2, dated 8/6/01 w/ drawings E2.03, E2.04;
    (iii) Contract Specifications Volume 1 and 2 dated 6/28/01 by Tevebaugh Associates;
    (iv) All contract drawings sheet CS01 to sheet E4.03 dated 6/28/01;
    Subcontractor expressly acknowledges receipt of each document referred to above, and agrees to be bound to the terms thereof, as if made a party thereto.

4.  In addition to the performance of the work listed in the specifications attached hereto or the specification section identified above, Subcontractor agrees to perform the following: all interior and exterior masonry work including but not limited to platform, piers, CMU wall @ transformer, wall @ vehicular entrance with stone, the garden wall, supply and install rigid foam insulation, bond beam, S&I reinforcing steel, S&I thru-wall flashing, washing down, scaffold, 4" glazed blocks @ floor level, smooth face blocks, split face blocks, daily cleaning, removal of debris to dumpster, cold weather protection, all CMU foundations must be completed by May 15, 2002.

5.  Exclusions.  The following items(s) is (are) excluded from this subcontract:  bond, dumpsters, setting door frames, pre-cast stone material, testing, permit, brick pavers, excavation and grading.

6.  Subcontractor acknowledges the receipt of the following attachments:

    a)   Affirmative Action Policy.
    b)   Insurance Requirements for Subcontractors.
    c)   Drawings, and specifications as noted above.
    d)   Prevailing Wage Affidavit Form - all employees who will work on this project must sign and return this form.
    e)   Sample insurance certificate (THIS SAMPLE MUST BE FOLLOWED EXACTLY WITH REGARD TO THE CANCELLATION CLAUSE AND DESCRIPTION OF OPERATIONS SECTIONS BEFORE YOU CAN OBTAIN ACCESS).  Insurance certificate must be submitted prior to start of work.
    f)   Certified Payroll form.
    g)   Subcontractor's Pay Estimate form, Wu PM-009, must be used when submitting invoices for payment processing. THE WU PM-009 MUST BE FILLED OUT AND RETURNED WITH THIS CONTRACT BEFORE WE CAN EXECUTE SAME.

h)  Prevailing Wage Rates.
i)  W-9.
j)  Progress Schedule.
k)  Wu Bond Forms.

## END OF SCOPE OF WORK – EXIBIT "A"

IN WITNESS WHEREOF, the parties hereto intending to be legally bound hereby set their hands and seals as of the dates stated below.

## (ORIGINAL SIGNATURES)

_____        _____
WU AND ASSOCIATES, INC.          DATE

        BY: __Raymond Wu, P.E._____    (print name)    TITLE: ___President_____


_____        _____
BRENDAN WARD MASONRY             DATE

        BY: _____    (print name)    TITLE: _____

1

**PETER NEELY MILLIGAN, ESQ.**
1960 Route 70 East
Cherry Hill, NJ 08003
(856) 983-0003
Attorney for Wu & Associates, Inc.

## TOLLING AGREEMENT

This tolling agreement is made and entered into between WU & ASSOCIATES, INC. and BRENDAN WARD MASONRY INC. by their respective undersigned counsel;

WHEREAS, Wu & Associates, Inc. has or will shortly submit all claims made and their supporting documentation of Brendan Ward Masonry, Inc. in the current pending case under Case No. 2003-BCA-1;

WHEREAS, Brendan Ward Masonry, Inc. has expressed dissatisfaction with the arbitrator appointed by AAA;

WHEREAS, Wu & Associates, Inc. has expressed its position that it does not believe that this matter is ripe for arbitration, that is, until the pending Department of Labor litigation is closed; and

WHEREAS, both parties agree that duplicative expenses in the Department of Labor litigation and an arbitration are unnecessary;

NOW THEREFORE, in consideration of the mutual agreements hereinafter set forth, each party intending to be legally bound hereby, the parties covenant and agree as follows:

1. As used herein, the following terms shall have the following meanings:

    a. "CLAIMS" shall mean any and all claims and causes of

2

action, known or unknown, which the parties have against each other in any capacity regarding the construction project with the Department of Labor in Wilmington, DE.

b.  "EXPIRATION PERIOD" shall mean thirty (30) days after written notice to the undersigned from Sean T. O'Meara, Esq. of the final resolution, without possibility of appeal, of the matter pending under Case No. 2003-BCA-1, or 366 days (whichever comes first).

c.  "TOLLING PERIOD" shall mean the period from and including the date this agreement is executed to and including the expiration date.

d.  The tolling agreement embodied herein shall be for the mutual benefit of the parties.

2.  The parties agree to dismiss and withdraw the pending AAA arbitration pending under 14Y1100101004;

3.  The parties stipulate, covenant, and agree to the suspension during the tolling period of the running of all statutes of limitation, laches periods, or similar defenses based upon a lapse of a period of time that may otherwise be asserted by it as a full or partial defenses against any claims;

4.  The parties hereby agree to arbitrate any claims that exist after the expiration period, and agree to initiate such claims by the conclusion of the Expiration Period.

5.  Prior to the Expiration Period, the parties shall negotiate in good faith to select a mutually acceptable arbitrator.

PETER N. MILLIGAN, ESQ.
─────ATTORNEY AT LAW─────

3

If unable, the parties will appoint their own arbitrators, and be responsible for their own arbitrator's costs. The two (2) appointed arbitrators will then select a neutral arbitrator. The expenses of the neutral arbitrator will be equally shared by the parties.

6.  Except to the extent set forth above with the respect to the time related defenses, this tolling agreement shall not affect any other defenses or claims that the parties may have.

7.  This tolling agreement constitutes the full and complete agreement between the parties. This tolling agreement may not be modified except in writing.

8.  This tolling agreement may be executed in any number of originals or telecopied counterparts.

9.  The parties agree that this tolling agreement nor any acts or statements related to it shall constitute any admission of liability, and that this tolling agreement may not be introduced or received into evidence.

Peter Neely Milligan, Esq.
Attorney for WU & ASSOCIATES, INC.

By: _____
        Peter Neely Milligan, Esq.

Dated: December 16, 2004

Paul A. Bucco, Esq.,
Attorney for BRENDAN WARD MASONRY
INC.

By: _____
        Paul A. Bucco, Esq.

Dated:

PETER N. MILLIGAN, ESQ.
————ATTORNEY AT LAW————

≋JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Brendan Ward Masonry, Inc. | Wu & Associates, Inc. |

| (b) County of Residence of First Listed Plaintiff   Delaware County, PA | County of Residence of First Listed Defendant   Camden County, NJ |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

| (c) Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| Perry Goldlust, Esquire -SEE ATTACHED | |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question (U.S. Government Not a Party)

☒ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **PERSONAL INJURY** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 362 Personal Injury - | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | Med. Malpractice | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 365 Personal Injury - | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Product Liability | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 368 Asbestos Personal | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | Injury Product | | | Under Equal Access |
| | Liability | | | to Justice |
| | **PERSONAL PROPERTY** | | | ☐ 950 Constitutionality of |
| | ☐ 370 Other Fraud | | | State Statutes |
| | ☐ 371 Truth in Lending | | | |
| | ☐ 380 Other Personal | | | |
| | Property Damage | | | |
| | ☐ 385 Property Damage | | | |
| | Product Liability | | | |
| **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | |
| ☐ 441 Voting | ☐ 510 Motions to Vacate | | | |
| ☐ 442 Employment | Sentence | | | |
| ☐ 443 Housing/ | **Habeas Corpus:** | | | |
| Accommodations | ☐ 530 General | | | |
| ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | |
| Employment | ☐ 550 Civil Rights | | | |
| ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | |
| Other | | | | |
| ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332

Brief description of cause:
Breach of Construction Contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 225,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Attorneys of Record for Plaintiff:

PERRY F. GOLDLUST, ESQUIRE (DSB #770)
ABER, GOLDLUST, BAKER & OVER
702 King Street, Ste. 600
P.O. Box 1675
Wilmington, DE 19899-1675
(302) 472-4900; (302) 472-4920 (FAX)
pgoldlust@gablawde.com

Of Counsel:

JOHN E. HILSER, ESQUIRE
DEVLIEGER HILSER, P.C.
1518 Walnut Street, 16th Floor
Philadelphia, PA 19102
(215) 735-9181; (215) 735-9186 (FAX)
jhilser@dvhlaw.com

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

- 0 7 - 7 5 1 -

Civil Action No. _____

FILED
CLERK, U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2007 NOV 21  PM 12: 20

## ACKNOWLEDGMENT
## OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____2_____ COPIES OF AO FORM 85.

_____11-21-07_____
(Date forms issued)

_____Shane Handlin_____
(Signature of Party or their Representative)

_____Shane Handlin_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **BRENDAN WARD MASONRY, INC.** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| | : | **BREACH OF CONTRACT** |
| | : | |
| **v.** | : | |
| | : | |
| **WU & ASSOCIATES, INC.** | : | **JURY TRAIL DEMANDED** |
| | : | |
| **Defendant** | : | **CIVIL NO.** |
| | : | |

## COMPLAINT

Plaintiff, Brendan Ward Masonry, Inc., by and through its attorneys, DeVlieger Hilser P.C., brings this complaint against Defendant, WU & Associates, Inc., and avers as follows:

## PARTIES

1.    Plaintiff, Brendan Ward Masonry, Inc. (hereinafter "Ward") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, was formerly licensed as a contractor/subcontractor with the City of Wilmington, Delaware, with its principal place of business at 345 Oak Terrace, Radnor, PA 19087.

2.    Defendant, Wu & Associates, Inc. (hereinafter "Wu") is a corporation organized under the laws of the State of New Jersey with its principal place of business at 597 Deer Road, Cherry Hill, New Jersey 08034.

## JURISDICTION

3.    Jurisdiction exists in this case because there is complete diversity of citizenship between the parties as required by 28 U.S.C. § 1332 and the amount in controversy, exclusive of costs and interests, exceeds $150,000.00.

1

**VENUE**

4.      Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts or omissions giving rise to the claim occurred in this District. Furthermore, a substantial part of the property that is the subject of the contract for the project involved in this action is located in this District.

**BACKGROUND AND GENERAL ALLEGATIONS**

5.      On or about August 2001, Wu entered into a written contract with the Department of Labor for the United States of America as the general contractor for work to be performed for a federal construction project, number 0102, at the Wilmington Job Corps Center, 9 Vandever Avenue, Wilmington, Delaware 19802.

6.      On or about April 2002, Ward entered into a Subcontractor Agreement with Wu to furnish labor, equipment, materials and perform masonry work for the aforementioned federal project. A true and correct copy of which is attached hereto and incorporated herein as Exhibit "A."

7.      The Subcontractor Agreement provided for a guaranteed maxim contract price of $950,000.00 and further provided that this price would be increased in the event that certain conditions or modifications were instituted pursuant to Change Orders. See Exhibit A.

8.      Ward substantially performed all of its obligations under the Subcontractor Agreement.

9.      Wu has failed to perform its obligations under the Subcontractor Agreement.

10.      Wu has failed to fully pay Ward pursuant to the Subcontractor Agreement.

11.      Wu's failure to perform its obligations under the Subcontractor Agreement has caused Ward to suffer damages in excess of $200,000.00.

2

12.     On December 16, 2004, for the substantial consideration of agreeing to withdraw and dismiss its claims against both Ward and the Surety, Ward entered into a Tolling Agreement with Wu suspending any and all "statutes of limitations, laches periods, or similar defenses" pursuant to the scheduling of a future arbitration. See Exhibit "B," a true and correct copy of which is attached hereto and incorporated herein.

13.     Wu refused to arbitrate Ward's claims pursuant to the Tolling Agreement, forcing Ward to file this litigation.

14.     Wu's failure to arbitrate Ward's claims under the Tolling Agreement has caused Ward to suffer the aforementioned damages in addition to increased costs and attorney's fees.

## COUNT I
## (Breach of the Contractual Obligation)

15.     Plaintiff, Ward, hereby incorporates paragraphs 1 through 14 as though same were fully set forth at length herein.

16.     The original Subcontractor Agreement between Wu and Ward for the aforementioned federal project provided for a maximum contract price of $950,000.00.

17.     This amount was to be supplemented and modified by various "Change Orders."

18.     Ward substantially performed its obligation under the Subcontractor Agreement.

19.     Wu has failed and refused to perform its duties under the Subcontractor Agreement causing Ward to suffer substantial losses.

20.     As the direct result and proximate result of the Wu's failure to perform its duties under the Subcontractor Agreement, Ward suffered extended overhead, loss of production, lost profits, additional production costs, additional operating costs, substantial wage increases and substantial cash shortages in excess of $200,000.00.

3

**WHEREFORE**, Brendan Ward Masonry, Inc. demands judgment in its favor and against Defendant, Wu & Associates, Inc., in excess of $200,000.00 together with interest and costs, attorney's fees, delay damages, consequential damages and punitive damages where appropriate.

<u>**COUNT II**</u>
<u>**(Breach of the Contractual Obligation- Cardinal Change Doctrine)**</u>

21.     Plaintiff, Ward, hereby incorporates paragraphs 1 through 20 as though same were fully set forth at length herein.

22.     The original Subcontractor Agreement between Wu and Ward for the aforementioned federal project provided for a maximum contract price of $950,000.00.

23.     This amount was to be supplemented and modified by various "Change Orders."

24.     Wu breached the Subcontractor Agreement by effectuating monumental changes in the required work that forced Ward to perform duties substantially different in scope than the originally contemplated Subcontractor Agreement. These changes included, but are not limited to:

      a.      Wu's substantial and indefinite delays which caused Ward to "stand by," effectively preventing him from obtaining other work;

      b.      Wu's inefficiency in scheduling which caused substantial and indefinite delays that directly effected Ward's ability to work on the project;

      c.      Wu's inefficiency in its construction methods and procedures which caused substantial and indefinite delays that directly effected Ward's ability to work on the project;

      d.      Wu's inability to coordinate other workers whose performance was a prerequisite to Ward's own performance which caused substantial and indefinite delays that directly effected Ward's ability to work on the project.

e.   Wu's inability to pay Ward on a timely basis pursuant to the Subcontractor Agreement which caused Ward to borrow substantial funds in order fulfill his obligations to its workers and suppliers.

25.   The aforementioned changes were completely within the manipulation of Wu and were so significant that they were not covered under the Change Order clause of the Subcontractor Agreement causing Ward to suffer substantial losses.

26.   As the direct result and proximate result of the above, Ward suffered extended overhead, loss of production, lost profits, additional production costs, additional operating costs, substantial wage increases and substantial cash shortages in excess of $200,000.00.

**WHEREFORE**, Brendan Ward Masonry, Inc. demands judgment in its favor and against Defendant, Wu & Associates, Inc., in excess of $200,000.00 together with interest and costs, attorney's fees, delay damages, consequential damages and punitive damages where appropriate.

<u>COUNT III</u>
<u>(Breach of the Contractual Obligation- Tolling Subcontractor Agreement</u>

27.   Plaintiff, Ward, hereby incorporates paragraphs 1 through 26 as though same were fully set forth at length herein.

28.   In reliance on the Tolling Agreement, Ward withdrew and dismissed its claims against Wu's Surety pending in the United States Federal Court for the District of Delaware.

29.   Pursuant to the Tolling Agreement, Wu agreed to the suspension of all "statutes of limitations, laches periods, or similar defenses" and agreed to arbitrate Ward's claims at a later date. See Exhibit B.

30.   Wu has refused to arbitrate Ward's claims pursuant to the Tolling Agreement.

31.     Wu's refusal to abide by the Tolling Agreement has caused Ward to suffer damages in excess of $200,000.00 in addition to increased costs and attorney's fees.

**WHEREFORE**, Brendan Ward Masonry, Inc. demands judgment in its favor and against Defendant, Wu & Associates, Inc., in excess of $200,000.00 together with interest and costs, attorney's fees, delay damages, consequential damages and punitive damages where appropriate.

## COUNT IV
### (Bad Faith)

32.     Plaintiff, Ward, hereby incorporates paragraphs 1 through 31 as though same were fully set forth at length herein.

33.     As subcontractor to Wu on the aforementioned project, Ward was unjustly prevented from performing its obligations under the contract in an efficient and productive manner.

34.     After contracting with Ward for $950,000.00 in the Subcontractor Agreement, Wu, after the scheduled start date, unjustly and without explanation, submitted various change orders removing previously agreed to items from the Subcontractor Agreement, including, but not limited to, various stone piers and walls.

35.     These changes reduced the Subcontractor Agreement to $834,354.91.

36.     Wu's inexplicit changes were willful and malicious, done in bad faith for the purpose of punishing Ward and to create an unjust economic windfall for Wu.

37.     Pursuant to the Subcontractor Agreement, Ward was also supposed to start on the project in June 2002.

38.     Wu knew or should have known that he would not be ready for Ward to begin work on the project in June 2002.

39.     Wu willfully, intentionally, maliciously and in bad faith, misled Ward in order to avoid the added cost of finding another subcontractor for the later start date.

40.     Additionally, Wu repeatedly thwarted Ward from performing his duties under the Subcontractor Agreement.

41.     Wu repeatedly throughout the course of the project, also, refused to provide proper drawings and clarifications so Ward could complete its obligation under the Subcontractor Agreement.

42.     Wu repeatedly throughout the course of the project, also, failed to provide adequate water supply, essential for Ward to perform its obligations under the Subcontractor Agreement.

43.     Wu, also, repeatedly prevented Ward from starting and completing various duties under the Subcontractor Agreement because other work within the dominion and control of  Wu was incomplete, unfinished and/or improperly scheduled by Wu.

44.     Wu, also, repeatedly refused to attend meetings with Ward and various masonry material providers concerning masonry issues and concerns.

45.     The above foregoing conduct by Wu was willful, malicious, done in bad faith and designed to coerce Ward to surrender his legal rights, with the intent to wrongfully terminate Ward from the project.

46.     As a direct and proximate result of the above actions, Ward has suffered damages in excess of $200,000.00.

**WHEREFORE**, Brendan Ward Masonry, Inc. demands judgment in its favor and against Defendant, Wu & Associates, Inc., in excess of $200,000.00 together with interest and costs, attorney's fees, delay damages, consequential damages and punitive damages where appropriate.

**COUNT V**
**(Unjust Enrichment)**

47.     Plaintiff, Ward, hereby incorporates paragraphs 1 through 46 as though same were fully set forth at length herein.

48.     As subcontractor to Wu on the aforementioned project, Ward suffered considerable losses as a result of Wu's substantial and indefinite delays and Wu's inability to perform its obligations under the Subcontractor Agreement.

49.     As general contractor to the written contract with the Department of Labor for the United States of America on the aforementioned Wilmington Job Corp Center project, has received substantial amounts of money from the United States Government pursuant to the contract and various claims against said contract.

50.     Upon information and belief, Ward as subcontractor to Wu on the project, is not entitled to pursue administrative claims before the United States Court of Claims.

51.     Any and all compensation received by Wu as a result of any final payments or claims adjudicated pursuant to the contract, which are directly or indirectly related to the services performed by Ward pursuant to the Subcontractor Agreement between Wu and Ward, has unjustly enriched Wu to Ward's detriment.

**WHEREFORE**, Brendan Ward Masonry, Inc. demands judgment in its favor and against Defendant, Wu & Associates, Inc., in excess of $200,000.00 together with interest and costs, attorney's fees, delay damages, consequential damages and punitive damages where appropriate.

**COUNT VI**
**(Quantum Meruit)**

52.     Plaintiff, Ward, hereby incorporates paragraphs 1 through 51 as though same were fully set forth at length herein.

8

53.    The original Subcontractor Agreement between Wu and Ward for the aforementioned federal project provided for a maximum contract price of $950,000.00.

54.    This amount was to be supplemented and modified by various "Change Orders."

55.    Ward performed various services at the request of Wu for the aforementioned federal project which were above and beyond the scope of those services specifically enumerated in the Subcontractor Agreement.

56.    Ward performed these services with the explicit understanding that Wu would pay for said services by way of various Change Orders.

57.    Wu has refused to pay for these additional services causing Ward to sustain damages in excess of $200,000.000.

**WHEREFORE**, Brendan Ward Masonry, Inc. demands judgment in its favor and against Defendant, Wu & Associates, Inc., in excess of $200,000.00 together with interest and costs, attorney's fees, delay damages, consequential damages and punitive damages where appropriate.


ABER, GOLDLUST, BAKER & OVER


_____/s/ Perry F. Goldlust_____
PERRY F. GOLDLUST, ESQUIRE (DSB #770)
702 King Street, Ste. 600
P.O. Box 1675
Wilmington, DE 19899-1675
(302) 472-4900; (302) 472-4920 (FAX)
pgoldlust@gablawde.com
*Attorney for Plaintiff Brendan Ward Masonry, Inc*

DATED: November 21, 2007

**<u>Of Counsel:</u>**

JOHN E. HILSER, ESQUIRE
DEVLIEGER HILSER, P.C.
1518 Walnut Street, 16th Floor
Philadelphia, PA 19102
(215) 735-9181; (215) 735-9186 (FAX)
jhilser@dvhlaw.com

P:/Client/Hilser Esq/Fed Complaint.doc