**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

_____

| | | |
|---|---|---|
| **BRENDAN WARD MASONRY, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **BREACH OF CONTRACT** |
| | : | |
| **v.** | : | |
| | : | |
| **WU & ASSOCIATES, INC.,** | : | **JURY TRAIL DEMANDED** |
| | : | |
| **Defendant.** | : | **CIVIL NO. 07-cv-00751** |
| | : | |

_____

<u>**AMENDED COMPLAINT**</u>

Plaintiff, Brendan Ward Masonry, Inc., by and through its attorneys, brings this complaint against Defendant, WU & Associates, Inc., and avers as follows:

<u>**PARTIES**</u>

1.     Plaintiff, Brendan Ward Masonry, Inc. (hereinafter "Ward") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, was formerly licensed as a contractor/subcontractor with the City of Wilmington, Delaware, with its principal place of business at 345 Oak Terrace, Radnor, PA 19087.

2.     Defendant, Wu & Associates, Inc. (hereinafter "Wu") is a corporation organized under the laws of the State of New Jersey with its principal place of business at 597 Deer Road, Cherry Hill, New Jersey 08034.

<u>**JURISDICTION**</u>

3.     Jurisdiction exists in this case because there is complete diversity of citizenship between the parties as required by 28 U.S.C. § 1332 and the amount in controversy, exclusive of costs and interests, exceeds $150,000.00.

## VENUE

4.      Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts or omissions giving rise to the claim occurred in this District. Furthermore, a substantial part of the property that is the subject of the contract for the project involved in this action is located in this District.

## BACKGROUND AND GENERAL ALLEGATIONS

5.      On or about August 2001, Wu entered into a written contract with the Department of Labor for the United States of America as the general contractor for work to be performed for a federal construction project, number 0102, at the Wilmington Job Corps Center, 9 Vandever Avenue, Wilmington, Delaware 19802.

6.      On or about April 5 2002, Ward entered into a Subcontractor Agreement with Wu to furnish labor, equipment, materials and perform masonry work for the aforementioned federal project. A true and correct copy of which is attached hereto and incorporated herein as Exhibit "A."

7.      The Subcontractor Agreement provided for a guaranteed maxim contract price of $950,000.00 and further provided that this price would be increased in the event that certain conditions or modifications were instituted pursuant to Change Orders. See Exhibit A.

8.      Ward substantially performed all of its obligation under the Subcontractor Agreement.

9.      Wu has failed to perform its obligations under the Subcontractor Agreement.

10.      Wu has failed to fully pay Ward pursuant to the Subcontractor Agreement.

11.      Wu's failure to perform its obligations under the Subcontractor Agreement has caused Ward to suffer damages in excess of $200,000.00.

12.     On December 16, 2004, for the substantial consideration of agreeing to withdraw and dismiss its claims against both Ward and the Surety, Ward entered into a Tolling Agreement with Wu suspending any and all "statutes of limitations, laches periods, or similar defenses" pursuant to the scheduling of a future arbitration. See Exhibit "B," a true and correct copy of which is attached hereto and incorporated herein.

13.     Wu refused to arbitrate Ward's claims pursuant to the Tolling Agreement, forcing

Ward to file this litigation.

14.     Wu's failure to arbitrate Ward's claims under the Tolling Agreement has caused Ward to suffer the aforementioned damages in addition to increased costs and attorney's fees.

## COUNT I
## (Breach of the Contractual Obligation)

15.     Plaintiff, Ward, hereby incorporates paragraphs 1 through 14 as though same were fully set forth at length herein.

16.     The original Subcontractor Agreement between Wu and Ward for the aforementioned federal project provided for a maximum contract price of $950,000.00.

17.     This amount was to be supplemented and modified by various "Change Orders."

18.     Ward substantially performed its obligation under the Subcontractor Agreement.

19.     Wu has failed and refused to perform its duties under the Subcontractor Agreement causing Ward to suffer substantial losses.

20.     As the direct result and proximate result of the Wu's failure to perform its duties under the Subcontractor Agreement, Ward suffered extended overhead, loss of production, lost profits, additional production costs, additional operating costs, substantial wage increases and substantial cash shortages in excess of $200,000.00.

**WHEREFORE**, Brendan Ward Masonry, Inc. demands judgment in its favor and against Defendant, Wu & Associates, Inc., in excess of $200,000.00 together with interest and costs, attorney's fees, delay damages, consequential damages and punitive damages where appropriate.

<u>COUNT II</u>
<u>(Breach of the Contractual Obligation- Cardinal Change Doctrine)</u>

21.     Plaintiff, Ward, hereby incorporates paragraphs 1 through 20 as though same were fully set forth at length herein.

22.     The original Subcontractor Agreement between Wu and Ward for the aforementioned federal project provided for a maximum contract price of $950,000.00.

23.     This amount was to be supplemented and modified by various "Change Orders."

24.     Wu breeched the Subcontractor Agreement by effectuating monumental changes in the required work that forced Ward to perform duties substantially different in scope than the originally contemplated Subcontractor Agreement. These changes included, but are not limited to:

a.     Wu's substantial and indefinite delays which caused Ward to "stand by," effectively preventing him from obtaining other work;

b.     Wu's inefficiency in scheduling which caused substantial and indefinite delays that directly effected Ward's ability to work on the project;

c.     Wu's inefficiency in its construction methods and procedures which caused substantial and indefinite delays that directly effected Ward's ability to work on the project;

d.     Wu's inability to coordinate other workers whose performance was a prerequisite to Ward's own performance which caused substantial and indefinite delays that directly effected Ward's ability to work on the project.

e.     Wu's inability to pay Ward on a timely basis pursuant to the Subcontractor Agreement which caused Ward to borrow

substantial funds in order fulfill his obligations to its
workers and suppliers.

25.     The aforementioned changes were completely within the manipulation of Wu
and were so significant that they were not covered under the Change Order clause of the
Subcontractor Agreement causing Ward to suffer substantial losses.

26.     As the direct result and proximate result of the above, Ward suffered extended
overhead, loss of production, lost profits, additional production costs, additional operating costs,
substantial wage increases and substantial cash shortages in excess of $200,000.00.

**WHEREFORE**, Brendan Ward Masonry, Inc. demands judgment in its favor and against
Defendant, Wu & Associates, Inc., in excess of $200,000.00 together with interest and costs,
attorney's fees, delay damages, consequential damages and punitive damages where appropriate.

## COUNT III
### (Breach of the Contractual Obligation- Tolling Subcontractor Agreement

27.     Plaintiff, Ward, hereby incorporates paragraphs 1 through 26 as though same
were fully set forth at length herein.

28.     In reliance on the Tolling Agreement, Ward withdrew and dismissed
its claims against Wu's Surety pending in the United States Federal Court for the District of
Delaware.

29.     Pursuant to the Tolling Agreement, Wu agreed to the suspension of all "statutes
of limitations, laches periods, or similar defenses" and agreed to arbitrate Ward's claims at a
later date. See Exhibit B.

30.     Wu has refused to arbitrate Ward's claims pursuant to the Tolling Agreement.

31.     Wu's refusal to abide by the Tolling Agreement has caused Ward to suffer
damages in excess of $200,000.00 in addition to increased costs and attorney's fees.

**WHEREFORE**, Brendan Ward Masonry, Inc. demands judgment in its favor and against Defendant, Wu & Associates, Inc., in excess of $200,000.00 together with interest and costs, attorney's fees, delay damages, consequential damages and punitive damages where appropriate.

## COUNT IV
### (Bad Faith)

32.     Plaintiff, Ward, hereby incorporates paragraphs 1 through 31 as though same were fully set forth at length herein.

33.     As subcontractor to Wu on the aforementioned project, Ward was unjustly prevented from performing its obligations under the contract in an efficient and productive manner.

34.     After contracting with Ward for $950,000.00 in the Subcontractor Agreement, Wu, after the scheduled start date, unjustly and without explanation, submitted various change orders removing previously agreed to items from the Subcontractor Agreement, including, but not limited to, various stone piers and walls.

35.     These changes reduced the Subcontractor Agreement to $834,354.91.

36.     Wu's inexplicit changes were willful and malicious, done in bad faith for the purpose of punishing Ward and to create an unjust economic windfall for Wu.

37.     Pursuant to the Subcontractor Agreement, Ward was also supposed to start on the project in June 2002.

38.     Wu knew or should have known that he would not be ready for Ward to begin work on the project in June 2002.

39.     Wu willfully, intentionally, maliciously and in bad faith, misled Ward in order to avoid the added cost of finding another subcontractor for the later start date.

40.     Additionally, Wu repeatedly thwarted Ward from performing his duties under the Subcontractor Agreement.

41.    Wu repeatedly throughout the course of the project, also, refused to provide proper drawings and clarifications so Ward could complete its obligation under the Subcontractor Agreement.

42.    Wu repeatedly throughout the course of the project, also, failed to provide adequate water supply, essential for Ward to perform its obligations under the Subcontractor Agreement.

43.    Wu, also, repeatedly prevented Ward from starting and completing various duties under the Subcontractor Agreement because other work within the dominion and control of Wu was incomplete, unfinished and/or improperly scheduled by Wu.

44.    Wu, also, repeatedly refused to attend meetings with Ward and various masonry material providers concerning masonry issues and concerns.

45.    The above foregoing conduct by Wu was willful, malicious, done in bad faith and designed to coerce Ward to surrender his legal rights, with the intent to wrongfully terminate Ward from the project.

46.    As a direct and proximate result of the above actions, Ward has suffered damages in excess of $200,000.00.

**WHEREFORE**, Brendan Ward Masonry, Inc. demands judgment in its favor and against Defendant, Wu & Associates, Inc., in excess of $200,000.00 together with interest and costs, attorney's fees, delay damages, consequential damages and punitive damages where appropriate.

## COUNT V
### (Unjust Enrichment)

47.    Plaintiff, Ward, hereby incorporates paragraphs 1 through 46 as though same were fully set forth at length herein.

48.    As subcontractor to Wu on the aforementioned project, Ward suffered considerable losses as a result of Wu's substantial and indefinite delays and Wu's inability to

perform its obligations under the Subcontractor Agreement.

49.    As general contractor to the written contract with the Department of Labor for the United States of America on the aforementioned Wilmington Job Corp Center project, has received substantial amounts of money from the United States Government pursuant to the contract and various claims against said contract.

50.    Upon information and belief, Ward as subcontractor to Wu on the project, is not entitled to pursue administrative claims before the United States Court of Claims.

51.    Any and all compensation received by Wu as a result of any final payments or claims adjudicated pursuant to the contract, which are directly or indirectly related to the services performed by Ward pursuant to the Subcontractor Agreement between Wu and Ward, has unjustly enriched Wu to Ward's detriment.

**WHEREFORE**, Brendan Ward Masonry, Inc. demands judgment in its favor and against Defendant, Wu & Associates, Inc., in excess of $200,000.00 together with interest and costs, attorney's fees, delay damages, consequential damages and punitive damages where appropriate.

<u>**COUNT VI**</u>
<u>**(Quantum Meruit)**</u>

52.    Plaintiff, Ward, hereby incorporates paragraphs 1 through 51 as though same were fully set forth at length herein.

53.    The original Subcontractor Agreement between Wu and Ward for the aforementioned federal project provided for a maximum contract price of $950,000.00.

54.    This amount was to be supplemented and modified by various "Change Orders."

55.    Ward performed various services at the request of Wu for the aforementioned federal project which were above and beyond the scope of those services specifically enumerated in the Subcontractor Agreement.

56.     Ward performed these services with the explicit understanding that Wu would pay for said services by way of various Change Orders.

57.     Wu has refused to pay for these additional services causing Ward to sustain damages in excess of $200,000.000.

**WHEREFORE**, Brendan Ward Masonry, Inc. demands judgment in its favor and against Defendant, Wu & Associates, Inc., in excess of $200,000.00 together with interest and costs, attorney's fees, delay damages, consequential damages and punitive damages where appropriate.

**ABER, GOLDLUST, BAKER & OVER**

**/s/ Perry F. Goldlust**
**PERRY F. GOLDLUST, ESQUIRE (DSB #770)**
702 King Street, Ste. 600
P.O. Box 1675
Wilmington, DE 19899-1675
(302) 472-4900; (302) 472-4920 (FAX)
pgoldlust@gablawde.com
*Attorney for Plaintiff Brendan Ward Masonry, Inc.*

**DATED: December 13, 2007**

**Of Counsel:**

JOHN E. HILSER, ESQUIRE
DEVLIEGER HILSER, P.C.
1518 Walnut Street, 16th Floor
Philadelphia, PA 19102
(215) 735-9181; (215) 735-9186 (FAX)
jhilser@dvhlaw.com

F:\Brendan Ward.110\Willimington Job.001\plds\USDC Delaware\Amended complaint.wpd

# EXHIBIT A



1 /7 EDITION

# AIA DOCUMENT A401-1997

*Standard Form of Agreement Between Contractor and Subcontractor*

Subcontract 0102-25

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.

**AGREEMENT** made as of the   5th (fifth)         day of April
in the year 2002 (Two Thousand Two).
*(In words, indicate day, month and year)*

**BETWEEN** the Contractor:   Wu & Associates, Inc.
*(Name, address and other information)*   597 Deer Road
Cherry Hill, NJ 08034

and the Subcontractor:          Brendan Ward Masonry, Inc.
*(Name, address and other information)*   345 Oak Terrace
Radnor, PA 19087
P.O.C. Brendan Ward
Tel: 610-293-7661   Fax: 610-971-2181

The Contractor has made a contract for construction dated
September 28, 2001

With the Owner:                 U.S. Department of Labor
*(Name, address and other information)*   Division of Contract Services
200 Constitution Avenue, N.W.
Room S - 4203
Washington, DC 20210

For the following Project:
*(Include detailed description of Project, location and address)*

Wilmington Job Corps Center
9 Vandever Avenue
Wilmington, DE 19802

which Contract is hereinafter referred to as the Prime Contract and which provides for the furnishing of labor, materials, equipment and services in connection with the construction of the Project. A copy of the Prime Contract, consisting of the Agreement Between Owner and Contractor (from which compensation amounts may be deleted) and the other Contract Documents enumerated therein has been made available to the Subcontractor.

The Architect for the Project is:     Tevebaugh Associates
*(Name, address and other information)*   2 Mill Road, Suite 210
Wilmington, DE 19806



© 1997  AIA®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

The Contractor and the Subcontractor agree as follows

Copyright 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1976, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 1   THE SUBCONTRACT DOCUMENTS

1.1     The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein; (3) Modifications issued subsequent to the execution of the Agreement between the Owner and Contractor, whether before or after the execution of this Agreement; (4) other documents listed in Article 16 of this Agreement; and (5) Modifications to this Subcontract issued after execution of this Agreement. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Subcontract Documents, other than Modifications issued subsequent to the execution of this Agreement, appears in Article 16.

1.2     Except to the extent of a conflict with a specific term or condition contained in the Subcontract Documents, the General Conditions governing this Subcontract shall be the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

1.3     The Subcontract may be amended or modified only by a Modification. The Subcontract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and the Subcontractor, (2) between the Owner and the Subcontractor, or (3) between any persons or entities other than the Contractor and Subcontractor.

1.4     The Subcontractor shall be furnished copies of the Subcontract Documents upon request, but the Contractor may charge the Subcontractor for the reasonable cost of reproduction.

## ARTICLE 2   MUTUAL RIGHTS AND RESPONSIBILITIES

2.1     The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that the provisions of the edition of AIA Document A201 current as of the date of this Agreement apply to this Agreement pursuant to Paragraph 1.2 and provisions of the Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and responsibilities that the Owner, under such documents, assumes toward the Contractor, and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under such documents, assumes toward the Owner and the Architect. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applicable to this Subcontract. Where a provision of such documents is inconsistent with a provision of this Agreement, this Agreement shall govern.

2.2     The Contractor may require the Subcontractor to enter into agreements with Sub-subcontractors performing portions of the Work of this Subcontract by which the Subcontractor and the Sub-subcontractor are mutually bound, to the extent of the Work to be performed by the Sub-subcontractor, assuming toward each other all obligations and responsibilities which the Contractor and Subcontractor assume toward each other and having the benefit of all rights, remedies and redress each against the other which the Contractor and Subcontractor have by virtue of the provisions of this Agreement.



© 1997   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292



WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 3  CONTRACTOR

### 3.1  SERVICES PROVIDED BY THE CONTRACTOR

**3.1.1**  The Contractor shall cooperate with the Subcontractor in scheduling and performing the Contractor's Work to avoid conflicts or interference in the Subcontractor's Work and shall expedite written responses to submittals made by the Subcontractor in accordance with Paragraph 4.1 and Article 5. As soon as practicable after execution of this Agreement, the Contractor shall provide the Subcontractor copies of the Contractor's construction schedule and schedule of submittals, together with such additional scheduling details as will enable the Subcontractor to plan and perform the Subcontractor's Work properly. The Subcontractor shall be notified promptly of subsequent changes in the construction and submittal schedules and additional scheduling details.

**3.1.2**  The Contractor shall provide suitable areas for storage of the Subcontractor's materials and equipment during the course of the Work. Additional costs to the Subcontractor resulting from relocation of such facilities at the direction of the Contractor, except as previously agreed upon, shall be reimbursed by the Contractor.

**3.1.3**  Except as provided in Article 14, the Contractor's equipment will be available to the Subcontractor only at the Contractor's discretion and on mutually satisfactory terms.

### 3.2  COMMUNICATIONS

**3.2.1**  The Contractor shall promptly make available to the Subcontractor information, including information received from the Owner, which affects this Subcontract and which becomes available to the Contractor subsequent to execution of this Subcontract.

**3.2.2**  The Contractor shall not give instructions or orders directly to the Subcontractor's employees or to the Subcontractor's Sub-subcontractors or material suppliers unless such persons are designated as authorized representatives of the Subcontractor.

**3.2.3**  The Contractor shall permit the Subcontractor to request directly from the Architect information regarding the percentages of completion and the amount certified on account of Work done by the Subcontractor.

**3.2.4**  If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Contractor, a subcontractor or anyone directly or indirectly employed by them (other than the Subcontractor), the Contractor shall, prior to harmful exposure of the Subcontractor's employees to such substance, give written notice of the chemical composition thereof to the Subcontractor in sufficient detail and time to permit the Subcontractor's compliance with such laws.

**3.2.5**  The Contractor shall furnish to the Subcontractor within 30 days after receipt of a written request, or earlier if so required by law, information necessary and relevant for the Subcontractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property, usually referred to as the site, on which the Project is located and the Owner's interest therein.

**3.2.6**  If the Contractor asserts or defends a claim against the Owner which relates to the Work of the Subcontractor, the Contractor shall make available to the Subcontractor information relating to that portion of the claim which relates to the Work of the Subcontractor.

### 3.3  CLAIMS BY THE CONTRACTOR

**3.3.1**  Liquidated damages for delay, if provided for in Paragraph 9.3 of this Agreement, shall be assessed against the Subcontractor only to the extent caused by the Subcontractor or any person or entity for whose acts the Subcontractor may be liable, and in no case for delays or causes arising outside the scope of this Subcontract.



©1997   A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington D.C. 20006-5292



WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

3.3.2 The Contractor's claims for services or materials provided the Subcontractor shall require:
  .1 seven days' prior written notice except in an emergency;
  .2 written compilations to the Subcontractor of services and materials provided and charges for such services and materials no later than the fifteenth day of the following month.

**3.4 CONTRACTOR'S REMEDIES**
3.4.1 If the Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within three working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after three days following receipt by the Subcontractor of an additional written notice, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor.

## ARTICLE 4 SUBCONTRACTOR
**4.1 EXECUTION AND PROGRESS OF THE WORK**
4.1.1 The Subcontractor shall supervise and direct the Subcontractor's Work, and shall cooperate with the Contractor in scheduling and performing the Subcontractor's Work to avoid conflict, delay in or interference with the Work of the Contractor, other subcontractors or Owner's own forces.

4.1.2 The Subcontractor shall promptly submit Shop Drawings, Product Data, Samples and similar submittals required by the Subcontract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Contractor or other subcontractors.

4.1.3 The Subcontractor shall submit to the Contractor a schedule of values allocated to the various parts of the Work of this Subcontract, aggregating the Subcontract Sum, made out in such detail as the Contractor and Subcontractor may agree upon or as required by the Owner, and supported by such evidence as the Contractor may require. In applying for payment, the Subcontractor shall submit statements based upon this schedule.

4.1.4 The Subcontractor shall furnish to the Contractor periodic progress reports on the Work of this Subcontract as mutually agreed, including information on the status of materials and equipment which may be in the course of preparation, manufacture or transit.

4.1.5 The Subcontractor agrees that the Contractor and the Architect will each have the authority to reject Work of the Subcontractor which does not conform to the Prime Contract. The Architect's decisions on matters relating to aesthetic effect shall be final and binding on the Subcontractor if consistent with the intent expressed in the Prime Contract.

4.1.6 The Subcontractor shall pay for all materials, equipment and labor used in connection with the performance of this Subcontract through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.

4.1.7 The Subcontractor shall take necessary precautions to protect properly the Work of other subcontractors from damage caused by operations under this Subcontract.

4.1.8 The Subcontractor shall cooperate with the Contractor, other subcontractors and the Owner's own forces whose Work might interfere with the Subcontractor's Work. The



© 1997   AIA ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Subcontractor shall participate in the preparation of coordinated drawings in areas of congestion, if required by the Prime Contract, specifically noting and advising the Contractor of potential conflicts between the Work of the Subcontractor and that of the Contractor, other subcontractors or the Owner's own forces.

**4.2    LAWS, PERMITS, FEES AND NOTICES**

4.2.1    The Subcontractor shall give notices and comply with laws, ordinances, rules, regulations and orders of public authorities bearing on performance of the Work of this Subcontract. The Subcontractor shall secure and pay for permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Subcontractor's Work, the furnishing of which is required of the Contractor by the Prime Contract.

4.2.2    The Subcontractor shall comply with Federal, state and local tax laws, social security acts, unemployment compensation acts and workers' compensation acts insofar as applicable to the performance of this Subcontract.

**4.3    SAFETY PRECAUTIONS AND PROCEDURES**

4.3.1    The Subcontractor shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by the Contractor and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract. The Subcontractor shall report to the Contractor within three days an injury to an employee or agent of the Subcontractor which occurred at the site.

4.3.2    If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Subcontractor, the Subcontractor's Sub-subcontractors or anyone directly or indirectly employed by them, the Subcontractor shall, prior to harmful exposure of any employees on the site to such substance, give written notice of the chemical composition thereof to the Contractor in sufficient detail and time to permit compliance with such laws by the Contractor, other subcontractors and other employers on the site.

4.3.3    If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Subcontractor, the Subcontractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Contractor in writing. When the material or substance has been rendered harmless, the Subcontractor's Work in the affected area shall resume upon written agreement of the Contractor and Subcontractor. The Subcontract Time shall be extended appropriately and the Subcontract Sum shall be increased in the amount of the Subcontractor's reasonable additional costs of demobilization, delay and remobilization, which adjustments shall be accomplished as provided in Article 5 of this Agreement.

4.3.4    To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Subcontractor, the Subcontractor's Sub-subcontractors, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Subparagraph 4.3.3 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.



© 1997    A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292



WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

4.4    CLEANING UP

4.4.1    The Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract. The Subcontractor shall not be held responsible for unclean conditions caused by other contractors or subcontractors.

4.4.2    As provided under Subparagraph 3.3.2, if the Subcontractor fails to clean up as provided in the Subcontract Documents, the Contractor may charge the Subcontractor for the Subcontractor's appropriate share of cleanup costs.

4.5    WARRANTY

4.5.1    The Subcontractor warrants to the Owner, Architect and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, that the Work of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Subcontract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Subcontractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Subcontractor, improper or insufficient maintenance, improper operation, or normal wear and tear under normal usage. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents.

4.6    INDEMNIFICATION

4.6.1    To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6.

4.6.2    In claims against any person or entity indemnified under this Paragraph 4.6 by an employee of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Subparagraph 4.6.1 shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's Sub-subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

4.7    REMEDIES FOR NONPAYMENT

4.7.1    If the Contractor does not pay the Subcontractor through no fault of the Subcontractor, within seven days from the time payment should be made as provided in this Agreement, the Subcontractor may, without prejudice to any other available remedies, upon seven additional days' written notice to the Contractor, stop the Work of this Subcontract until payment of the amount owing has been received. The Subcontract Sum shall, by appropriate adjustment, be increased by the amount of the Subcontractor's reasonable costs of demobilization, delay and remobilization.



© 1997   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 5   CHANGES IN THE WORK

**5.1**     The Owner may make changes in the Work by issuing Modifications to the Prime Contract. Upon receipt of such a Modification issued subsequent to the execution of the Subcontract Agreement, the Contractor shall promptly notify the Subcontractor of the Modification. Unless otherwise directed by the Contractor, the Subcontractor shall not thereafter order materials or perform Work which would be inconsistent with the changes made by the Modifications to the Prime Contract.

**5.2**     The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

**5.3**     The Subcontractor shall make all claims promptly to the Contractor for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which the Contractor is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Prime Contract. Such claims shall be received by the Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound.

## ARTICLE 6   MEDIATION AND ARBITRATION

~~6.1         MEDIATION~~

~~6.1.1     Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.~~

~~6.1.2     The parties shall endeavor to resolve their claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Subcontract and the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.~~

~~6.1.3     The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.~~



© 1997   A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**6.2**     **ARBITRATION**

**6.2.1**     Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. ~~Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1.~~



**WARNING:** Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

6.2.2   Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. Demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association, and a copy shall be filed with the Architect.

6.2.3   A demand for arbitration shall be made within the time limits specified in the conditions of the Prime Contract as applicable, and in other cases within a reasonable time after the claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

6.2.4   Limitation on Consolidation or Joinder. Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Subcontract shall include, by consolidation or joinder or in any other manner, any person or entity not a party to the Subcontract under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect, the Architect's employee, the Architect's consultant, or an employee or agent of any of them. This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

6.2.5   Claims and Timely Assertion of Claims. The party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded.

6.2.6   Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 7   TERMINATION, SUSPENSION OR ASSIGNMENT OF THE SUBCONTRACT

### 7.1   TERMINATION BY THE SUBCONTRACTOR

7.1.1   The Subcontractor may terminate the Subcontract for the same reasons and under the same circumstances and procedures with respect to the Contractor as the Contractor may terminate with respect to the Owner under the Prime Contract, or for nonpayment of amounts due under this Subcontract for 60 days or longer. In the event of such termination by the Subcontractor for any reason which is not the fault of the Subcontractor, Sub-subcontractors or their agents or employees or other persons performing portions of the Work under contract with the Subcontractor, the Subcontractor shall be entitled to recover from the Contractor payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

### 7.2   TERMINATION BY THE CONTRACTOR

7.2.1   If the Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise to perform in accordance with this Subcontract and fails within seven days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after seven days following receipt by the Subcontractor of an additional written notice and without prejudice to any other remedy the Contractor may have, terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient. If the



© 1997  A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

unpaid balance of the Subcontract Sum exceeds the expense of finishing the Subcontractor's Work and other damages incurred by the Contractor and not expressly waived, such excess shall be paid to the Subcontractor. If such expense and damages exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor.

7.2.2   If the Owner terminates the Contract for the Owner's convenience, the Contractor shall deliver written notice to the Subcontractor.

7.2.3   Upon receipt of written notice of termination, the Subcontractor shall:
.1  cease operations as directed by the Contractor in the notice;
.2  take actions necessary, or that the Contractor may direct, for the protection and preservation of the Work; and
.3  except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing Sub-subcontracts and purchase orders and enter into no further Sub-subcontracts and purchase orders.

7.2.4   In case of such termination for the Owner's convenience, the Subcontractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

7.3   SUSPENSION BY THE CONTRACTOR FOR CONVENIENCE
7.3.1   The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work of this Subcontract in whole or in part for such period of time as the Contractor may determine. In the event of suspension ordered by the Contractor, the Subcontractor shall be entitled to an equitable adjustment of the Subcontract Time and Subcontract Sum.

7.3.2   An adjustment shall be made for increases in the Subcontract Time and Subcontract Sum, including profit on the increased cost of performance, caused by suspension, delay or interruption. No adjustment shall be made to the extent:
.1  that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible;
.2  that an equitable adjustment is made or denied under another provision of this Subcontract.

7.4   ASSIGNMENT OF THE SUBCONTRACT
7.4.1   In the event of termination of the Prime Contract by the Owner, the Contractor may assign this Subcontract to the Owner, with the Owner's agreement, subject to the provisions of the Prime Contract and to the prior rights of the surety, if any, obligated under bonds relating to the Prime Contract. In such event, the Owner shall assume the Contractor's rights and obligations under the Subcontract Documents. If the Work of the Prime Contract has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted.

7.4.2   The Subcontractor shall not assign the Work of this Subcontract without the written consent of the Contractor, nor subcontract the whole of this Subcontract without the written consent of the Contractor, nor further subcontract portions of this Subcontract without written notification to the Contractor when such notification is requested by the Contractor.



© 1997  A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292



WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 8  THE WORK OF THIS SUBCONTRACT

8.1    The Subcontractor shall execute the following portion of the Work described in the Subcontract Documents, including all labor, materials, equipment, services and other items required to complete such portion of the Work, except to the extent specifically indicated in the Subcontract Documents to be the responsibility of others.
*(Insert a precise description of the Work of this Subcontract, referring where appropriate to numbers of Drawings, sections of Specifications and pages of Addenda, Modifications and accepted Alternates.)*

See Scope of Work under "Addendum to Contract"

## ARTICLE 9  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

9.1    The Subcontractor's date of commencement is the date from which the Contract Time of Paragraph 9.3 is measured; it shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Contractor.
*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

The date will be fixed when final progress schedule is approved by Owner.

9.2    Unless the date of commencement is established by a notice to proceed issued by the Contractor, or the Contractor has commenced visible Work at the site under the Prime Contract, the Subcontractor shall notify the Contractor in writing not less than five days before commencing the Subcontractor's Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

9.3    The Work of this Subcontract shall be substantially completed not later than To Be Determined
*(Insert the calendar date or number of calendar days after the Subcontractor's date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Subcontractor's Work, if not stated elsewhere in the Subcontract Documents.)*

, subject to adjustments of this Subcontract Time as provided in the Subcontract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*



9.4    With respect to the obligations of both the Contractor and the Subcontractor, time *is* of the essence of this Subcontract.

9.5    No extension of time will be valid without the Contractor's written consent after claim made by the Subcontractor in accordance with Paragraph 5.3.

© 1997  A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292



WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 10 SUBCONTRACT SUM

10.1    The Contractor shall pay the Subcontractor in current funds for performance of the Subcontract the Subcontract Sum of  **Nine Hundred & Fifty Thousand and 00/100** Dollars ($ **950,000.00** ), subject to additions and deductions as provided in the Subcontract Documents.

10.2    The Subcontract Sum is based upon the following alternates, if any, which are described in the Subcontract Documents and have been accepted by the Owner and the Contractor:
*(Insert the numbers or other identification of accepted alternates.)*

N/A

10.3    Unit prices, if any, are as follows:

N/A

## ARTICLE 11 PROGRESS PAYMENTS

11.4    If an application for payment is received by the Contractor after the application date fixed above, the Subcontractor's Work covered by it shall be included by the Contractor in the next application for payment submitted to the Architect.

11.5    Each application for payment shall be based upon the most recent schedule of values submitted by the Subcontractor in accordance with the Subcontract Documents. The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and be prepared in such form and supported by such data to substantiate its accuracy as the Contractor may require. This schedule, unless objected to by the Contractor, shall be used as a basis for reviewing the Subcontractor's applications for payment.

11.6    Applications for payment submitted by the Subcontractor shall indicate the percentage of completion of each portion of the Subcontractor's Work as of the end of the period covered by the application for payment.

11.7    Subject to the provisions of the Subcontract Documents, the amount of each progress payment shall be computed as follows:

11.7.1    Take that portion of the Subcontract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Subcontractor's Work by the share of the total Subcontract Sum allocated to that portion of the Subcontractor's Work in the schedule of values, less that percentage actually retained, if any, from payments to the Contractor on account of the Work of the Subcontractor. Pending final determination of cost to the Contractor of changes in the Work which have been properly authorized by the Contractor, amounts not in dispute shall be included to the same extent provided in the Prime Contract, even though the Subcontract Sum has not yet been adjusted;

11.7.2    Add that portion of the Subcontract Sum properly allocable to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work or, if approved by the Contractor, suitably stored off the site at a location agreed upon in writing, less the same percentage retainage required by the Prime Contract to be applied to such materials and equipment in the Contractor's application for payment;

11.7.3    Subtract the aggregate of previous payments made by the Contractor; and

11.7.4    Subtract amounts, if any, calculated under Subparagraph 11.7.1 or 11.7.2 which are related to Work of the Subcontractor for which the Architect has withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of the Subcontractor.

11.8    Upon the partial or entire disapproval by the Contractor of the Subcontractor's application for payment, the Contractor shall provide written notice to the Subcontractor. When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld.

11.9    **SUBSTANTIAL COMPLETION**
11.9.1    When the Subcontractor's Work or a designated portion thereof is substantially complete and in accordance with the requirements of the Prime Contract, the Contractor shall, upon application by the Subcontractor, make prompt application for payment for such Work. Within 30 days following issuance by the Architect of the certificate for payment covering such substantially completed Work, the Contractor shall, to the full extent allowed in the Prime Contract, make payment to the Subcontractor, deducting any portion of the funds for the Subcontractor's Work withheld in accordance with the certificate to cover costs of items to be completed or corrected by the Subcontractor. Such payment to the Subcontractor shall be the entire unpaid balance of the Subcontract Sum if a full release of retainage is allowed under the



© 1997  AIA®
**AIA DOCUMENT A401-1997**
**CONTRACTOR-**
**SUBCONTRACTOR**
**AGREEMENT**

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**WARNING:** Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Prime Contract for the Subcontractor's Work prior to the completion of the entire Project. If the Prime Contract does not allow for a full release of retainage, then such payment shall be an amount which, when added to previous payments to the Subcontractor, will reduce the retainage on the Subcontractor's substantially completed Work to the same percentage of retainage as that on the Contractor's Work covered by the certificate.

## ARTICLE 12 FINAL PAYMENT

12.1    Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner. If, for any cause which is not the fault of the Subcontractor, a certificate for payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within three working days after receipt of payment from the Owner, final payment to the Subcontractor shall be made upon demand.
*(Insert provisions for earlier final payment to the Subcontractor, if applicable.)*

> See Addendum to Contract.

12.2    Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.

## ARTICLE 13 INSURANCE AND BONDS

13.1    The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

> Per specifications, see also Addendum to Contract.

13.2    Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Subcontractor's Work until date of final payment and termination of any coverage required to be maintained after final payment to the Subcontractor.

13.3    Certificates of insurance acceptable to the Contractor shall be filed with the Contractor prior to commencement of the Subcontractor's Work. These certificates and the insurance policies required by this Article 13 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment as required in Article 12. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Subcontractor with reasonable promptness according to the Subcontractor's information and belief.



© 1997   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

13.4    The Contractor shall furnish to the Subcontractor satisfactory evidence of insurance required of the Contractor under the Prime Contract.

13.5    The Contractor shall promptly, upon request of the Subcontractor, furnish a copy or permit a copy to be made of any bond covering payment of obligations arising under the Subcontract.

13.6    Performance Bond and Payment Bond:     N/A
*(If the Subcontractor is to furnish bonds, insert the specific requirements here.)*

### 13.7    PROPERTY INSURANCE

13.7.1    When requested in writing, the Contractor shall provide the Subcontractor with copies of the property and equipment policies in effect for the Project. The Contractor shall notify the Subcontractor if the required property insurance policies are not in effect.  General Contractor has carried Builder's Risk insurance for 100% of contract value.

13.7.2    If the required property insurance is not in effect for the full value of the Subcontractor's Work, then the Subcontractor shall purchase insurance for the value of the Subcontractor's Work, and the Subcontractor shall be reimbursed for the cost of the insurance by an adjustment in the Subcontract Sum.

13.7.3    Property insurance for the Subcontractor's materials and equipment required for the Subcontractor's Work, stored off site or in transit and not covered by the Project property insurance, shall be paid for through the application for payment process.     N/A
    It is the responsibility of the Sub-contractor.

### 13.8    WAIVERS OF SUBROGATION

13.8.1    The Contractor and Subcontractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property insurance provided under the Prime Contract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by the Owner as a fiduciary. The Subcontractor shall require of the Subcontractor's Sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

### ARTICLE 14  TEMPORARY FACILITIES AND WORKING CONDITIONS

14.1    The Contractor shall furnish and make available to the Subcontractor the following temporary facilities, equipment and services; these shall be furnished at no cost to the Subcontractor unless otherwise indicated below:     N/A



© 1997  A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**14.2**   Specific working conditions:
*(Insert any applicable arrangements concerning working conditions and labor matters for the Project.)*

　　　　See Addendum to Contract

## ARTICLE 15 MISCELLANEOUS PROVISIONS

**15.1**   Where reference is made in this Subcontract to a provision of another Subcontract Document, the reference refers to that provision as amended or supplemented by other provisions of the Subcontract Documents.

**15.2**   Payments due and unpaid under this Subcontract shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

　　　　None

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's, Contractor's and Subcontractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**15.3**   Retainage and any reduction thereto is as follows:

　　　　See Addendum to Contract

**15.4**   The Contractor and Subcontractor waive claims against each other for consequential damages arising out of or relating to this Subcontract, including without limitation, any consequential damages due to either party's termination in accordance with Article 7.

## ARTICLE 16 ENUMERATION OF SUBCONTRACT DOCUMENTS

**16.1**   The Subcontract Documents, except for Modifications issued after execution of this Subcontract, are enumerated as follows:

**16.1.1**   This executed 1997 edition of the Standard Form of Agreement Between Contractor and Subcontractor, AIA Document A401-1997;

**16.1.2**   The Prime Contract, consisting of the Agreement between the Owner and Contractor dated as first entered above and the other Contract Documents enumerated in the Owner-Contractor Agreement;



© 1997   A I A ®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

16.1.3   The following Modifications to the Prime Contract, if any, issued subsequent to the execution of the Owner-Contractor Agreement but prior to the execution of this Agreement:

Modification                                                Date

     None

16.1.4   Other Documents, if any, forming part of the Subcontract Documents are as follows: *(List any additional documents that are intended to form part of the Subcontract Documents. Requests for proposal and the Subcontractor's bid or proposal should be listed here only if intended to be part of the Subcontract Documents.)*

    None

This Agreement entered into as of the day and year first written above.

CONTRACTOR *(Signature)*          SUBCONTRACTOR *(Signature)*

Wu & Associates, Inc.             Brendan Ward Masonry, Inc.

KIRBY WU, VICE PRESIDENT
*(Printed name and title)*              *(Printed name and title)*
4/26/02



© 1997  AIA®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

CAUTION: *You should sign an original AIA document or a licensed reproduction. Originals contain the AIA logo printed in red; licensed reproductions are those produced in accordance with the Instructions to this document.*

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

# EXHIBIT B

1

**PETER NEELY MILLIGAN, ESQ.**
1960 Route 70 East
Cherry Hill, NJ 08003
(856) 983-0003
Attorney for Wu & Associates, Inc.

**TOLLING AGREEMENT**

This tolling agreement is made and entered into between WU &
ASSOCIATES, INC. and BRENDAN WARD MASONRY INC. by their
respective undersigned counsel;

WHEREAS, Wu & Associates, Inc. has or will shortly submit
all claims made and their supporting documentation of Brendan
Ward Masonry, Inc. in the current pending case under Case No.
2003-BCA-1;

WHEREAS, Brendan Ward Masonry, Inc. has expressed
dissatisfaction with the arbitrator appointed by AAA;

WHEREAS, Wu & Associates, Inc. has expressed its position
that it does not believe that this matter is ripe for
arbitration, that is, until the pending Department of Labor
litigation is closed; and

WHEREAS, both parties agree that duplicative expenses in the
Department of Labor litigation and an arbitration are
unnecessary;

NOW THEREFORE, in consideration of the mutual agreements
hereinafter set forth, each party intending to be legally bound
hereby, the parties covenant and agree as follows:

1.   As used herein, the following terms shall have the following
     meanings:

     a.   "CLAIMS" shall mean any and all claims and causes of

**PETER N. MILLIGAN, ESQ.**
ATTORNEY AT LAW

2

action, known or unknown, which the parties have
against each other in any capacity regarding the
construction project with the Department of Labor in
Wilmington, DE.

b.    "EXPIRATION PERIOD" shall mean thirty (30) days after
written notice to the undersigned from Sean T. O'Meara,
Esq. of the final resolution, without possibility of
appeal, of the matter pending under Case No. 2003-BCA-
1, or 366 days (whichever comes first).

c.    "TOLLING PERIOD" shall mean the period from and
including the date this agreement is executed to and
including the expiration date.

d.    The tolling agreement embodied herein shall be for the
mutual benefit of the parties.

2.    The parties agree to dismiss and withdraw the pending AAA
arbitration pending under 14Y1100101004;

3.    The parties stipulate, covenant, and agree to the suspension
during the tolling period of the running of all statutes of
limitation, laches periods, or similar defenses based upon a
lapse of a period of time that may otherwise be asserted by
it as a full or partial defenses against any claims;

4.    The parties hereby agree to arbitrate any claims that exist
after the expiration period, and agree to initiate such
claims by the conclusion of the Expiration Period.

5.    Prior to the Expiration Period, the parties shall negotiate
in good faith to select a mutually acceptable arbitrator.

PETER N. MILLIGAN, ESQ.
ATTORNEY AT LAW

3

If unable, the parties will appoint their own arbitrators, and be responsible for their own arbitrator's costs. The two (2) appointed arbitrators will then select a neutral arbitrator. The expenses of the neutral arbitrator will be equally shared by the parties.

6. Except to the extent set forth above with the respect to the time related defenses, this tolling agreement shall not affect any other defenses or claims that the parties may have.

7. This tolling agreement constitutes the full and complete agreement between the parties. This tolling agreement may not be modified except in writing.

8. This tolling agreement may be executed in any number of originals or telecopied counterparts.

9. The parties agree that this tolling agreement nor any acts or statements related to it shall constitute any admission of liability, and that this tolling agreement may not be introduced or received into evidence.

Peter Neely Milligan, Esq.
Attorney for WU & ASSOCIATES, INC.

By: _____
    Peter Neely Milligan, Esq.

Dated: December 16, 2004

Paul A. Bucco, Esq.,
Attorney for BRENDAN WARD MASONRY INC.

By: _____
    Paul A. Bucco, Esq.

Dated:

PETER N. MILLIGAN, ESQ.
————ATTORNEY AT LAW————