ARCHER & GREINER
A Professional Corporation
300 Delaware Avenue
Suite 1370
Wilmington, DE  19801
(302) 777-4350
Fax:  (302) 777-4352
Attorneys for Defendant, Wu & Associates, Inc.

---

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF DELAWARE

---

THE UNITED STATES OF
AMERICA

for the use of

BRENDAN WARD MASONRY, INC.

     Plaintiff,

v.                                                              Civil No. 07-cv-00751

WU & ASSOCIATES, INC.                      ANSWER TO AMENDED
                                                              COMPLAINT, COUNTERCLAIM,
     Defendant.                                 And DEMAND FOR JURY TRIAL

---

**ANSWER**

     Defendant WU & ASSOCIATES, INC., by way of Answer to the Complaint, avers as follows:

**PARTIES**

     1.     As to Paragraph 1, neither admitted nor denied.  Plaintiff is left to strict proofs at the time of trial.

     2.     As to Paragraph 2, admitted.

## JURISDICTION

3.      As to Paragraph 3, denied.

## VENUE

4.      As to Paragraph 4, denied.  The contract was executed by all parties in Cherry Hill, New Jersey.  The parties expressly agreed to arbitrate this matter, which is required not only by the contract (See Paragraph 6.2 of Exhibit 1), but by the attached tolling agreement (Exhibit 2).

## FACTS

5.      As to Paragraph 5, admitted.

6.      As to Paragraph 6, denied.  The unsigned contract attached as Exhibit A is not a true and correct copy of the agreement reached between the parties hereunder.

7.      As to Paragraph 7, denied.  A "guaranteed maximum contract" does not exist in the construction industry, and particularly, did not exist between the parties to this litigation.  For instance, if the Owner determined that certain tasks or portions of the Primary Contract were no longer desired, the Brendan Ward subcontract would be logically and fairly adjusted.  Further, if Brendan Ward refused to complete portions of the subcontract, Wu could arrange for completion of said portions of Brendan Ward's obligation, and reduce the contract price accordingly.

8.      As to Paragraph 8, denied.  Brendan Ward failed to complete performance of the contract, and abandoned the job.  Further, Brendan Ward refused to comply in good faith with Wu's efforts to advocate the change orders of Brendan Ward to the Owner and in litigation with the Owner.

9.      As to Paragraph 9, denied.

10.    As to Paragraph 10, denied.  No payment is due Ward.

11.    As to Paragraph 11, denied.  No payment is due Ward.

12.    As to Paragraph 12, admitted in part and denied in part.  A tolling agreement was executed, which required submission of dispute to arbitration.  However, a true and correct copy of the tolling agreement is not attached to the Complaint as Exhibit B.  Instead, Wu attaches a true and correct copy of the tolling agreement hereto as Exhibit 2.  Ward is in express violation of the tolling agreement, which it has announced its abandonment of.

13.    As to Paragraph 13, denied.  As of December 11, 2007, counsel for Ward advised of its continuing refusal to arbitrate pursuant to the contract or tolling agreement.

14.    As to Paragraph 14, denied.  As of December 11, 2007, counsel for Ward advised of its continuing refusal to arbitrate pursuant to the contract or tolling agreement.

WHEREFORE, the Defendant WU & ASSOCIATES, INC. demands that the Complaint be dismissed with prejudice, together with attorney's fees, costs of suit, and all other relief this Court deems just, equitable, and proper.

### COUNT 1 – Breach of Contractual Obligation

15.    As to Paragraph 15, no averment is made.

16.    As to Paragraph 16, denied.

17.    As to Paragraph 17, denied.

18.    As to Paragraph 18, denied.

19.    As to Paragraph 19, denied.

20.    As to Paragraph 20, denied.

WHEREFORE, the Defendant WU & ASSOCIATES, INC. demands that the Complaint be dismissed with prejudice, together with attorney's fees, costs of suit, and all other relief this Court deems just, equitable, and proper.

## COUNT 2 – Breach of Contractual Obligation –
### Cardinal Change Doctrine

21.    As to Paragraph 21, no averment is made.

22.    As to Paragraph 22, denied.

23.    As to Paragraph 23, admitted.

24.    As to Paragraph 24, denied.

25.    As to Paragraph 25, denied.

26.    As to Paragraph 26, denied.

WHEREFORE, the Defendant WU & ASSOCIATES, INC. demands that the Complaint be dismissed with prejudice, together with attorney's fees, costs of suit, and all other relief this Court deems just, equitable, and proper.

## COUNT 3 – Breach of Contractual Obligation –
### Tolling Subcontract Agreement

27.    As to Paragraph 27, no averment is made.

28.    As to Paragraph 28, denied.  Ward withdrew its claim against the Surety because the contract required the parties to proceed by way of arbitration, and Ward disclosed some conflict with the American Arbitration Association in its then pending arbitration action against Wu.

29.     As to Paragraph 29, admitted in part and denied in part.  A tolling agreement was executed, which required submission of dispute to arbitration.  However, a true and correct copy of the tolling agreement is not attached to the Complaint as Exhibit B.  Instead, Wu attaches a true and correct copy of the tolling agreement hereto as Exhibit 2.  Ward is in express violation of the tolling agreement, which it announced its abandonment of.

30.     As to Paragraph 30, denied.

31.     As to Paragraph 31, denied.

WHEREFORE, the Defendant WU & ASSOCIATES, INC. demands that the Complaint be dismissed with prejudice, together with attorney's fees, costs of suit, and all other relief this Court deems just, equitable, and proper.

## COUNT 4 – Bad Faith

32.     As to Paragraph 32, no averment is made.

33.     As to Paragraph 33, denied.

34.     As to Paragraph 34, denied.

35.     As to Paragraph 35, denied.

36.     As to Paragraph 36, denied.

37.     As to Paragraph 37, admitted.

38.     As to Paragraph 38, denied.

39.     As to Paragraph 39, denied.

40.     As to Paragraph 40, denied.

41.     As to Paragraph 41, denied.

42.     As to Paragraph 42, denied.

43.     As to Paragraph 43, denied.

44.     As to Paragraph 44, denied.

45.     As to Paragraph 45, denied.

46.     As to Paragraph 46, denied.

WHEREFORE, the Defendant WU & ASSOCIATES, INC. demands that the Complaint be dismissed with prejudice, together with attorney's fees, costs of suit, and all other relief this Court deems just, equitable, and proper.

## COUNT 5 – Unjust Enrichment

47.     As to Paragraph 47, no averment is made.

48.     As to Paragraph 48, denied.

49.     As to Paragraph 49, denied.

50.     As to Paragraph 50, denied.  Ward could have assisted in the since closed matter, but chose to interfere and obfuscate.

51.     As to Paragraph 51, denied.  All of Ward's claims were denied by the Owner, and rejected by written decision of the judge in the administrative proceeding described.

WHEREFORE, the Defendant WU & ASSOCIATES, INC. demands that the Complaint be dismissed with prejudice, together with attorney's fees, costs of suit, and all other relief this Court deems just, equitable, and proper.

## COUNT 6 – Quantum Meruit

52.      As to Paragraph 52, no averment is made.

53.      As to Paragraph 53, admitted.

54.      As to Paragraph 54, admitted.

55.      As to Paragraph 55, denied.  All Ward change orders were  denied by the Owner, and rejected by written decision of the judge in the administrative proceeding described.

56.      As to Paragraph 56, denied.

57.      As to Paragraph 57, denied.

WHEREFORE, the Defendant WU & ASSOCIATES, INC. demands that the Complaint be dismissed with prejudice, together with attorney's fees, costs of suit, and all other relief this Court deems just, equitable, and proper.

## COUNTERCLAIM

Defendant WU & ASSOCIATES, INC., by way of Counterclaim to the Complaint, avers as follows:

## COUNT 1 - BREACH OF CONTRACT (Subcontract)

1.      On or about April 26, 2002, Counter-claimant WU & ASSOCIATES, INC. (hereinafter "Wu") and Defendant on the Counterclaim BRENDAN WARD MASONRY, INC. (hereinafter "Ward") mutually executed a subcontract.  See true and correct copy of the agreement attached hereto as Exhibit 1.

2.    On or about April 26, 2002, corporate representatives of Ward visited the office of Wu in Cherry Hill, NJ, and executed a Standard Form of Agreement between Contractor and Subcontractor.  See true and correct copy of the agreement attached hereto as Exhibit 1.

3.    The aforementioned subcontract related to a commercial construction project commonly referred to as the "Wilmington Job Corps Center" (hereinafter "the project").

4.    Pursuant to the Agreement, Ward agreed to perform certain tasks associated with masonry work, as listed in a detailed "Scope of Work" regarding the project, which was owned by the US Department of Labor.

5.    Ward failed to timely perform the required tasks of the written Agreement.

6.    Ward breached its contract with Wu.

7.    Such action has caused Wu damage and injury.

WHEREFORE, judgment is demanded against Ward for compensatory damages, punitive damages, interest, costs of suit, and attorney's fees.

## COUNT 2 – BREACH OF CONTRACT (Estoppel – Arbitration Clause)

8.    Wu incorporates Paragraphs 1 through 8 as through they were repeated herein.

9.    Previously, Ward has already asserted claims identical to those advocated by its complaint under Civil No. 07-cv-00751 against Wu's surety.  See Complaint attached hereto as Exhibit 3.

10.    Ward's suit against Civil No. 07-cv-00751 was voluntarily dismissed after the parties reached an agreement under the Tolling Agreement attached hereto as Exhibit 2.  See Stipulation of Dismissal attached hereto as Exhibit 4.

11.     Similarly, Ward asserted claims identical to those advocated by its complaint against Wu, through the American Arbitration Association under 14 110 Y 01010 04.  See Arbitration Demand attached hereto as Exhibit 5.

12.     Similarly, Wu asserted claims identical to those advocated herein against Ward, in the Superior Court of New Jersey under Docket No. L-2425-04.  See Summons and Complaint attached hereto as Exhibit 6.

13.     To induce Wu to dismiss with prejudice an action against Ward in the Superior Court of New Jersey, under Docket No. L-2425-04, Ward agreed to timely arbitrate in a single forum all claims between Ward, Wu, and their respective sureties.  See true and correct copy of the Tolling Agreement attached hereto as Exhibit 2, and the Stipulation of Dismissal attached hereto as Exhibit 7.

14.     Thereafter, Ward failed to timely arbitrate under the Tolling Agreement, and announced its intentions to seek judicial redress for its damages in the United States District Court for the District of Delaware.

15.     To enforce its rights under the subcontract, Wu filed pleadings, on October 12, 2007, under Docket No. L 5245-07 in the Superior Court of New Jersey.  See Complaint attached hereto as Exhibit 8.

16.     While simultaneously announcing its refusal to arbitrate under the aforementioned Subcontract (Exhibit 1) or Tolling Agreement (Exhibit 2), Ward claimed reliance upon the Tolling Agreement and dismissal of the Complaint under Docket No. L-2425-04 in demanding dismissal, on November 15, 2007, of pleadings filed by Wu against Ward on October 12, 2007 under Docket No. L5245-07 in the Superior Court of New Jersey.  Particularly, Ward deemed the

dismissal of the action under Docket No. L-2425-04 in favor of the tolling agreement as a adjudication on the merits.

17.     Without disclosing same to the Superior Court of New Jersey, on or about November 21, 2007, Ward filed its pleadings in the United States District Court for the District of Delaware, and made no mention of the litigation pending in the Superior Court of New Jersey addressing issues identical to that now raised by Ward.

18.     On December 11, 2007, Ward reaffirmed its refusal to arbitrate under the aforementioned Subcontract (Exhibit 1) or Tolling Agreement (Exhibit 2).

19.     Ward's actions herein described have caused Wu to suffer damages, in addition to increased legal fees and costs.

20.     Ward should be judicially estopped from later demanding arbitration, which it has openly and clearly abandoned.

21.     Ward should be judicially estopped from pursuing relief in the United States District Court for the District of Delaware.

WHEREFORE, judgment is demanded against Ward for compensatory damages, punitive damages, interest, costs of suit, and attorney's fees.

### COUNT 3 – BREACH OF CONTRACT (Change Orders)

22.     Wu incorporates Paragraphs 1 through 19 as through they were repeated herein.

23.     Article 5 of the Subcontract (Exhibit 1) addresses "Changes in the Work."

24.     As the project commenced, various site conditions (left undisclosed by the Owner) became known.  These site conditions interfered with the ability of the project to timely progress.

25.    Pursuant to Article 5 of the Subcontract (Exhibit 1), Ward asserted various change order requests which were largely related to the site conditions which had been undisclosed by the Owner.

26.    These change order requests were almost all rejected by the Owner.

27.    To assert Ward's change order requests, among other things, Wu filed a claim against the Owner.

28.    This action sought redress not only for Wu's damages, but for the various "pass through" claims asserted by other subcontractors, such as and including Ward.

29.    On various dates from September 2004 through August 2005, Wu requested – in writing – the cooperation of Ward in clearly documenting the change order requests for assertion against the Owner in the aforementioned action.

30.    Irrationally, Ward declined to timely act or act in good faith or assist Wu in asserting Ward's claims against the Owner.

31.    Irrationally, Ward declined to document its claim in good faith for submission in the aforementioned action.

32.    Irrationally, Ward declined to appear to discuss in good faith its claims for submission in the aforementioned action.

33.    The aforementioned actions constitute a breach of the provisions of Article 5, among other provisions, of the Subcontract (Exhibit 1).

34.    The aforementioned actions resulted in the wholesale denial of Ward's pass through claims in the aforementioned action.

35. The aforementioned actions should cause Ward to be estopped from asserting claims against Wu that should have been timely raised and documented in the aforementioned action.

36. Otherwise, Ward's actions herein described have caused Wu to suffer damages, in addition to increased legal fees and costs.

WHEREFORE, judgment is demanded against Ward for compensatory damages, punitive damages, interest, costs of suit, and attorney's fees.

## DEMAND FOR JURY TRIAL

The Defendant WU & ASSOCIATES, INC. hereby demands trial by jury as to all issues in the above matter.

ARCHER & GREINER
A Professional Corporation
Attorneys for Defendant


By:  /s/ Peter L. Frattarelli (ID No. 2871)
     PETER L. FRATTARELLI, ESQUIRE

Dated: January 28, 2008


Of Counsel:    Peter Neely Milligan, Esq.
               1960 Route 70 East
               Cherry Hill, NJ  08003
               Attorneys for Defendant
3081776v1

12

# Exhibit 1

PETER N. MILLIGAN, ESQ.
————ATTORNEY AT LAW————

1 7 EDITION

# AIA DOCUMENT | A401-1997

## *Standard Form of Agreement Between Contractor and Subcontractor*

Subcontract 0102-25

This document has impor-
tant legal consequences.
Consultation with an
attorney is encouraged with
respect to its
completion or modification.

**A G R E E M E N T** made as of the   5th (fifth)                    day of  April
in the year  2002 (Two Thousand Two).
*(In words, indicate day, month and year)*

This document has been
approved and endorsed
by the American
Subcontractors Association
and the Associated Specialty
Contractors, Inc.

**B E T W E E N** the Contractor:     Wu & Associates, Inc.
*(Name, address and other information)*  597 Deer Road
                                          Cherry Hill, NJ 08034

and the Subcontractor:            Brendan Ward Masonry, Inc.
*(Name, address and other information)*  345 Oak Terrace
                                          Radnor, PA 19087
                                          P.O.C. Brendan Ward
                                          Tel: 610-293-7661   Fax: 610-971-2181

The Contractor has made a contract for construction dated

September 28, 2001

With the Owner:
*(Name, address and other information)*  U.S. Department of Labor
                                          Division of Contract Services
                                          200 Constitution Avenue, N.W.
                                          Room S - 4203
For the following Project:                Washington, DC 20210
*(Include detailed description of Project, location and address)*

                                          Wilmington Job Corps Center
                                          9 Vandever Avenue
                                          Wilmington, DE 19802

which Contract is hereinafter referred to as the Prime Contract and which provides for the
furnishing of labor, materials, equipment and services in connection with the construction of
the Project. A copy of the Prime Contract, consisting of the Agreement Between Owner and
Contractor (from which compensation amounts may be deleted) and the other Contract
Documents enumerated therein has been made available to the Subcontractor.

The Architect for the Project is:    Tevebaugh Associates
*(Name, address and other information)*  2 Mill Road, Suite 210
                                          Wilmington, DE 19806



© 1997 · A I A®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The Contractor and the Subcontractor agree as follows

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

Copyright 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of
Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission
of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.
**WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.**

1

## ARTICLE 1  THE SUBCONTRACT DOCUMENTS

1.1     The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein; (3) Modifications issued subsequent to the execution of the Agreement between the Owner and Contractor, whether before or after the execution of this Agreement; (4) other documents listed in Article 16 of this Agreement; and (5) Modifications to this Subcontract issued after execution of this Agreement. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and super-sedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Subcontract Documents, other than Modifications issued subsequent to the execution of this Agreement, appears in Article 16.

1.2     Except to the extent of a conflict with a specific term or condition contained in the Subcontract Documents, the General Conditions governing this Subcontract shall be the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

1.3     The Subcontract may be amended or modified only by a Modification. The Subcontract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and the Subcontractor, (2) between the Owner and the Subcontractor, or (3) between any persons or entities other than the Contractor and Subcontractor.

1.4     The Subcontractor shall be furnished copies of the Subcontract Documents upon request, but the Contractor may charge the Subcontractor for the reasonable cost of reproduction.

## ARTICLE 2  MUTUAL RIGHTS AND RESPONSIBILITIES

2.1     The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that the provisions of the edition of AIA Document A201 current as of the date of this Agreement apply to this Agreement pursuant to Paragraph 1.2 and provisions of the Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and responsibilities that the Owner, under such documents, assumes toward the Contractor, and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under such documents, assumes toward the Owner and the Architect. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applic-able to this Subcontract. Where a provision of such documents is inconsistent with a provision of this Agreement, this Agreement shall govern.

2.2     The Contractor may require the Subcontractor to enter into agreements with Sub-subcontractors performing portions of the Work of this Subcontract by which the Subcontractor and the Sub-subcontractor are mutually bound, to the extent of the Work to be performed by the Sub-subcontractor, assuming toward each other all obligations and responsibil-ities which the Contractor and Subcontractor assume toward each other and having the benefit of all rights, remedies and redress each against the other which the Contractor and Subcontractor have by virtue of the provisions of this Agreement.



© 1997  A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

2

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 3   CONTRACTOR

### 3.1   SERVICES PROVIDED BY THE CONTRACTOR

**3.1.1**   The Contractor shall cooperate with the Subcontractor in scheduling and performing the Contractor's Work to avoid conflicts or interference in the Subcontractor's Work and shall expedite written responses to submittals made by the Subcontractor in accordance with Paragraph 4.1 and Article 5. As soon as practicable after execution of this Agreement, the Contractor shall provide the Subcontractor copies of the Contractor's construction schedule and schedule of submittals, together with such additional scheduling details as will enable the Subcontractor to plan and perform the Subcontractor's Work properly. The Subcontractor shall be notified promptly of subsequent changes in the construction and submittal schedules and additional scheduling details.

**3.1.2**   The Contractor shall provide suitable areas for storage of the Subcontractor's materials and equipment during the course of the Work. Additional costs to the Subcontractor resulting from relocation of such facilities at the direction of the Contractor, except as previously agreed upon, shall be reimbursed by the Contractor.

**3.1.3**   Except as provided in Article 14, the Contractor's equipment will be available to the Subcontractor only at the Contractor's discretion and on mutually satisfactory terms.

### 3.2   COMMUNICATIONS

**3.2.1**   The Contractor shall promptly make available to the Subcontractor information, including information received from the Owner, which affects this Subcontract and which becomes available to the Contractor subsequent to execution of this Subcontract.

**3.2.2**   The Contractor shall not give instructions or orders directly to the Subcontractor's employees or to the Subcontractor's Sub-subcontractors or material suppliers unless such persons are designated as authorized representatives of the Subcontractor.

**3.2.3**   The Contractor shall permit the Subcontractor to request directly from the Architect information regarding the percentages of completion and the amount certified on account of Work done by the Subcontractor.

**3.2.4**   If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Contractor, a subcontractor or anyone directly or indirectly employed by them (other than the Subcontractor), the Contractor shall, prior to harmful exposure of the Subcontractor's employees to such substance, give written notice of the chemical composition thereof to the Subcontractor in sufficient detail and time to permit the Subcontractor's compliance with such laws.

**3.2.5**   The Contractor shall furnish to the Subcontractor within 30 days after receipt of a written request, or earlier if so required by law, information necessary and relevant for the Subcontractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property, usually referred to as the site, on which the Project is located and the Owner's interest therein.

**3.2.6**   If the Contractor asserts or defends a claim against the Owner which relates to the Work of the Subcontractor, the Contractor shall make available to the Subcontractor information relating to that portion of the claim which relates to the Work of the Subcontractor.

### 3.3   CLAIMS BY THE CONTRACTOR

**3.3.1**   Liquidated damages for delay, if provided for in Paragraph 9.3 of this Agreement, shall be assessed against the Subcontractor only to the extent caused by the Subcontractor or any person or entity for whose acts the Subcontractor may be liable, and in no case for delays or causes arising outside the scope of this Subcontract.



© 1 9 9 7   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

3

**WARNING:** Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

3.3.2    The Contractor's claims for services or materials provided the Subcontractor shall require:

    .1  seven days' prior written notice except in an emergency;

    .2  written compilations to the Subcontractor of services and materials provided and charges for such services and materials no later than the fifteenth day of the following month.

### 3.4    CONTRACTOR'S REMEDIES

**3.4.1**    If the Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within three working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after three days following receipt by the Subcontractor of an additional written notice, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor.

## ARTICLE 4  SUBCONTRACTOR

### 4.1    EXECUTION AND PROGRESS OF THE WORK

**4.1.1**    The Subcontractor shall supervise and direct the Subcontractor's Work, and shall cooperate with the Contractor in scheduling and performing the Subcontractor's Work to avoid conflict, delay in or interference with the Work of the Contractor, other subcontractors or Owner's own forces.

**4.1.2**    The Subcontractor shall promptly submit Shop Drawings, Product Data, Samples and similar submittals required by the Subcontract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Contractor or other subcontractors.

**4.1.3**    The Subcontractor shall submit to the Contractor a schedule of values allocated to the various parts of the Work of this Subcontract, aggregating the Subcontract Sum, made out in such detail as the Contractor and Subcontractor may agree upon or as required by the Owner, and supported by such evidence as the Contractor may require. In applying for payment, the Subcontractor shall submit statements based upon this schedule.

**4.1.4**    The Subcontractor shall furnish to the Contractor periodic progress reports on the Work of this Subcontract as mutually agreed, including information on the status of materials and equipment which may be in the course of preparation, manufacture or transit.

**4.1.5**    The Subcontractor agrees that the Contractor and the Architect will each have the authority to reject Work of the Subcontractor which does not conform to the Prime Contract. The Architect's decisions on matters relating to aesthetic effect shall be final and binding on the Subcontractor if consistent with the intent expressed in the Prime Contract.

**4.1.6**    The Subcontractor shall pay for all materials, equipment and labor used in connection with the performance of this Subcontract through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.

**4.1.7**    The Subcontractor shall take necessary precautions to protect properly the Work of other subcontractors from damage caused by operations under this Subcontract.

**4.1.8**    The Subcontractor shall cooperate with the Contractor, other subcontractors and the Owner's own forces whose Work might interfere with the Subcontractor's Work. The



© 1997  A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

4

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Subcontractor shall participate in the preparation of coordinated drawings in areas of congestion, if required by the Prime Contract, specifically noting and advising the Contractor of potential conflicts between the Work of the Subcontractor and that of the Contractor, other subcontractors or the Owner's own forces.

**4.2    LAWS, PERMITS, FEES AND NOTICES**

**4.2.1**    The Subcontractor shall give notices and comply with laws, ordinances, rules, regulations and orders of public authorities bearing on performance of the Work of this Subcontract. The Subcontractor shall secure and pay for permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Subcontractor's Work, the furnishing of which is required of the Contractor by the Prime Contract.

**4.2.2**    The Subcontractor shall comply with Federal, state and local tax laws, social security acts, unemployment compensation acts and workers' compensation acts insofar as applicable to the performance of this Subcontract.

**4.3    SAFETY PRECAUTIONS AND PROCEDURES**

**4.3.1**    The Subcontractor shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by the Contractor and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract. The Subcontractor shall report to the Contractor within three days an injury to an employee or agent of the Subcontractor which occurred at the site.

**4.3.2**    If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Subcontractor, the Subcontractor's Sub-subcontractors or anyone directly or indirectly employed by them, the Subcontractor shall, prior to harmful exposure of any employees on the site to such substance, give written notice of the chemical composition thereof to the Contractor in sufficient detail and time to permit compliance with such laws by the Contractor, other subcontractors and other employers on the site.

**4.3.3**    If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Subcontractor, the Subcontractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Contractor in writing. When the material or substance has been rendered harmless, the Subcontractor's Work in the affected area shall resume upon written agreement of the Contractor and Subcontractor. The Subcontract Time shall be extended appropriately and the Subcontract Sum shall be increased in the amount of the Subcontractor's reasonable additional costs of demobilization, delay and remobilization, which adjustments shall be accomplished as provided in Article 5 of this Agreement.

**4.3.4**    To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Subcontractor, the Subcontractor's Sub-subcontractors, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Subparagraph 4.3.3 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.



© 1 9 9 7    A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**5**

**WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.**

**4.4    CLEANING UP**

**4.4.1**    The Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract. The Subcontractor shall not be held responsible for unclean conditions caused by other contractors or subcontractors.

**4.4.2**    As provided under Subparagraph 3.3.2, if the Subcontractor fails to clean up as provided in the Subcontract Documents, the Contractor may charge the Subcontractor for the Subcontractor's appropriate share of cleanup costs.

**4.5    WARRANTY**

**4.5.1**    The Subcontractor warrants to the Owner, Architect and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, that the Work of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Subcontract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Subcontractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Subcontractor, improper or insufficient maintenance, improper operation, or normal wear and tear under normal usage. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents.

**4.6    INDEMNIFICATION**

**4.6.1**    To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6.

**4.6.2**    In claims against any person or entity indemnified under this Paragraph 4.6 by an employee of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Subparagraph 4.6.1 shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's Sub-subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

**4.7    REMEDIES FOR NONPAYMENT**

**4.7.1**    If the Contractor does not pay the Subcontractor through no fault of the Subcontractor, within seven days from the time payment should be made as provided in this Agreement, the Subcontractor may, without prejudice to any other available remedies, upon seven additional days' written notice to the Contractor, stop the Work of this Subcontract until payment of the amount owing has been received. The Subcontract Sum shall, by appropriate adjustment, be increased by the amount of the Subcontractor's reasonable costs of demobilization, delay and remobilization.



© 1997 AIA®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**6**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 5  CHANGES IN THE WORK

**5.1**    The Owner may make changes in the Work by issuing Modifications to the Prime Contract. Upon receipt of such a Modification issued subsequent to the execution of the Subcontract Agreement, the Contractor shall promptly notify the Subcontractor of the Modification. Unless otherwise directed by the Contractor, the Subcontractor shall not thereafter order materials or perform Work which would be inconsistent with the changes made by the Modifications to the Prime Contract.

**5.2**    The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

**5.3**    The Subcontractor shall make all claims promptly to the Contractor for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which the Contractor is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Prime Contract. Such claims shall be received by the Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound.

## ARTICLE 6  MEDIATION AND ARBITRATION

~~6.1    MEDIATION~~

~~6.1.1    Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.~~

~~6.1.2    The parties shall endeavor to resolve their claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Subcontract and the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.~~

~~6.1.3    The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.~~

**6.2    ARBITRATION**

**6.2.1**    Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. ~~Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1.~~

© 1997   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**7**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**6.2.2** Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. Demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association, and a copy shall be filed with the Architect.

**6.2.3** A demand for arbitration shall be made within the time limits specified in the conditions of the Prime Contract as applicable, and in other cases within a reasonable time after the claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

**6.2.4** Limitation on Consolidation or Joinder. Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Subcontract shall include, by consolidation or joinder or in any other manner, any person or entity not a party to the Subcontract under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect, the Architect's employee, the Architect's consultant, or an employee or agent of any of them. This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**6.2.5** Claims and Timely Assertion of Claims. The party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded.

**6.2.6** Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 7 TERMINATION, SUSPENSION OR ASSIGNMENT OF THE SUBCONTRACT

### 7.1 TERMINATION BY THE SUBCONTRACTOR

**7.1.1** The Subcontractor may terminate the Subcontract for the same reasons and under the same circumstances and procedures with respect to the Contractor as the Contractor may terminate with respect to the Owner under the Prime Contract, or for nonpayment of amounts due under this Subcontract for 60 days or longer. In the event of such termination by the Subcontractor for any reason which is not the fault of the Subcontractor, Sub-subcontractors or their agents or employees or other persons performing portions of the Work under contract with the Subcontractor, the Subcontractor shall be entitled to recover from the Contractor payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

### 7.2 TERMINATION BY THE CONTRACTOR

**7.2.1** If the Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise to perform in accordance with this Subcontract and fails within seven days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after seven days following receipt by the Subcontractor of an additional written notice and without prejudice to any other remedy the Contractor may have, terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient. If the



© 1 9 9 7   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

8

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

unpaid balance of the Subcontract Sum exceeds the expense of finishing the Subcontractor's Work and other damages incurred by the Contractor and not expressly waived, such excess shall be paid to the Subcontractor. If such expense and damages exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor.

**7.2.2**   If the Owner terminates the Contract for the Owner's convenience, the Contractor shall deliver written notice to the Subcontractor.

**7.2.3**   Upon receipt of written notice of termination, the Subcontractor shall:

   .1   cease operations as directed by the Contractor in the notice;

   .2   take actions necessary, or that the Contractor may direct, for the protection and preservation of the Work; and

   .3   except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing Sub-subcontracts and purchase orders and enter into no further Sub-subcontracts and purchase orders.

**7.2.4**   In case of such termination for the Owner's convenience, the Subcontractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

**7.3**   **SUSPENSION BY THE CONTRACTOR FOR CONVENIENCE**

**7.3.1**   The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work of this Subcontract in whole or in part for such period of time as the Contractor may determine. In the event of suspension ordered by the Contractor, the Subcontractor shall be entitled to an equitable adjustment of the Subcontract Time and Subcontract Sum.

**7.3.2**   An adjustment shall be made for increases in the Subcontract Time and Subcontract Sum, including profit on the increased cost of performance, caused by suspension, delay or interruption. No adjustment shall be made to the extent:

   .1   that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible;

   .2   that an equitable adjustment is made or denied under another provision of this Subcontract.

**7.4**   **ASSIGNMENT OF THE SUBCONTRACT**

**7.4.1**   In the event of termination of the Prime Contract by the Owner, the Contractor may assign this Subcontract to the Owner, with the Owner's agreement, subject to the provisions of the Prime Contract and to the prior rights of the surety, if any, obligated under bonds relating to the Prime Contract. In such event, the Owner shall assume the Contractor's rights and obligations under the Subcontract Documents. If the Work of the Prime Contract has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted.

**7.4.2**   The Subcontractor shall not assign the Work of this Subcontract without the written consent of the Contractor, nor subcontract the whole of this Subcontract without the written consent of the Contractor, nor further subcontract portions of this Subcontract without written notification to the Contractor when such notification is requested by the Contractor.



© 1 9 9 7   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**9**

**WARNING:** Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 8  THE WORK OF THIS SUBCONTRACT

**8.1**    The Subcontractor shall execute the following portion of the Work described in the Subcontract Documents, including all labor, materials, equipment, services and other items required to complete such portion of the Work, except to the extent specifically indicated in the Subcontract Documents to be the responsibility of others.

*(Insert a precise description of the Work of this Subcontract, referring where appropriate to numbers of Drawings, sections of Specifications and pages of Addenda, Modifications and accepted Alternates.)*

```
See Scope of Work under "Addendum to Contract".
```

## ARTICLE 9  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**9.1**    The Subcontractor's date of commencement is the date from which the Contract Time of Paragraph 9.3 is measured; it shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Contractor.

*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

```
The date will be fixed when final progress schedule is
approved by Owner.
```

**9.2**    Unless the date of commencement is established by a notice to proceed issued by the Contractor, or the Contractor has commenced visible Work at the site under the Prime Contract, the Subcontractor shall notify the Contractor in writing not less than five days before commencing the Subcontractor's Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

**9.3**    The Work of this Subcontract shall be substantially completed not later than **To Be Determined**
*(Insert the calendar date or number of calendar days after the Subcontractor's date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Subcontractor's Work, if not stated elsewhere in the Subcontract Documents.)*

, subject to adjustments of this Subcontract Time as provided in the Subcontract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*

**9.4**    With respect to the obligations of both the Contractor and the Subcontractor, time is of the essence of this Subcontract.

**9.5**    No extension of time will be valid without the Contractor's written consent after claim made by the Subcontractor in accordance with Paragraph 5.3.



© 1 9 9 7   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**10**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 10 SUBCONTRACT SUM

**10.1**    The Contractor shall pay the Subcontractor in current funds for performance of the Subcontract the Subcontract Sum of **Nine Hundred & Fifty Thousand and 00/100** Dollars ($ **950,000.00**    ), subject to additions and deductions as provided in the Subcontract Documents.

**10.2**    The Subcontract Sum is based upon the following alternates, if any, which are described in the Subcontract Documents and have been accepted by the Owner and the Contractor:
*(Insert the numbers or other identification of accepted alternates.)*

N/A

**10.3**    Unit prices, if any, are as follows:

N/A

## ARTICLE 11 PROGRESS PAYMENTS

**11.1**    Based upon applications for payment submitted to the Contractor by the Subcontractor, corresponding to applications for payment submitted by the Contractor to the Architect, and certificates for payment issued by the Architect, the Contractor shall make progress payments on account of the Subcontract Sum to the Subcontractor as provided below and elsewhere in the Subcontract Documents. Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor and Subcontractor for Work properly performed by their contractors and suppliers shall be held by the Contractor and Subcontractor for those contractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor or Subcontractor for which payment was made to the Contractor by the Owner or to the Subcontractor by the Contractor, as applicable. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor or Subcontractor, shall create any fiduciary liability or tort liability on the part of the Contractor or Subcontractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor or Subcontractor for breach of the requirements of this provision.

**11.2**    The period covered by each application for payment shall be one calendar month ending on the last day of the month, or as follows:

See Addendum to Contract

**11.3**    Provided an application for payment is received by the Contractor not later than the day of a month, the Contractor shall include the Subcontractor's Work covered by that application in the next application for payment which the Contractor is entitled to submit to the Architect. The Contractor shall pay the Subcontractor each progress payment within three working days after the Contractor receives payment from the Owner. If the Architect does not issue a certificate for payment or the Contractor does not receive payment for any cause which is not the fault of the Subcontractor or the Contractor shall pay the Subcontractor, on demand, a progress payment computed as provided in Paragraphs 11.7 and 11.8.



© 1997  A I A®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

11

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**11.4**    If an application for payment is received by the Contractor after the application date fixed above, the Subcontractor's Work covered by it shall be included by the Contractor in the next application for payment submitted to the Architect.

**11.5**    Each application for payment shall be based upon the most recent schedule of values submitted by the Subcontractor in accordance with the Subcontract Documents. The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and be prepared in such form and supported by such data to substantiate its accuracy as the Contractor may require. This schedule, unless objected to by the Contractor, shall be used as a basis for reviewing the Subcontractor's applications for payment.

**11.6**    Applications for payment submitted by the Subcontractor shall indicate the percentage of completion of each portion of the Subcontractor's Work as of the end of the period covered by the application for payment.

**11.7**    Subject to the provisions of the Subcontract Documents, the amount of each progress payment shall be computed as follows:

**11.7.1**    Take that portion of the Subcontract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Subcontractor's Work by the share of the total Subcontract Sum allocated to that portion of the Subcontractor's Work in the schedule of values, less that percentage actually retained, if any, from payments to the Contractor on account of the Work of the Subcontractor. Pending final determination of cost to the Contractor of changes in the Work which have been properly authorized by the Contractor, amounts not in dispute shall be included to the same extent provided in the Prime Contract, even though the Subcontract Sum has not yet been adjusted;

**11.7.2**    Add that portion of the Subcontract Sum properly allocable to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work or, if approved by the Contractor, suitably stored off the site at a location agreed upon in writing, less the same percentage retainage required by the Prime Contract to be applied to such materials and equipment in the Contractor's application for payment;

**11.7.3**    Subtract the aggregate of previous payments made by the Contractor; and

**11.7.4**    Subtract amounts, if any, calculated under Subparagraph 11.7.1 or 11.7.2 which are related to Work of the Subcontractor for which the Architect has withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of the Subcontractor.

**11.8**    Upon the partial or entire disapproval by the Contractor of the Subcontractor's application for payment, the Contractor shall provide written notice to the Subcontractor. When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld.

**11.9    SUBSTANTIAL COMPLETION**

**11.9.1**    When the Subcontractor's Work or a designated portion thereof is substantially complete and in accordance with the requirements of the Prime Contract, the Contractor shall, upon application by the Subcontractor, make prompt application for payment for such Work. Within 30 days following issuance by the Architect of the certificate for payment covering such substantially completed Work, the Contractor shall, to the full extent allowed in the Prime Contract, make payment to the Subcontractor, deducting any portion of the funds for the Subcontractor's Work withheld in accordance with the certificate to cover costs of items to be completed or corrected by the Subcontractor. Such payment to the Subcontractor shall be the entire unpaid balance of the Subcontract Sum if a full release of retainage is allowed under the



© 1997  A I A ®

**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**WARNING:** Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Prime Contract for the Subcontractor's Work prior to the completion of the entire Project. If the Prime Contract does not allow for a full release of retainage, then such payment shall be an amount which, when added to previous payments to the Subcontractor, will reduce the retainage on the Subcontractor's substantially completed Work to the same percentage of retainage as that on the Contractor's Work covered by the certificate.

## ARTICLE 12 FINAL PAYMENT

**12.1** Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner. If, for any cause which is not the fault of the Subcontractor, a certificate for payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within three working days after receipt of payment from the Owner, final payment to the Subcontractor shall be made upon demand.
*(Insert provisions for earlier final payment to the Subcontractor, if applicable.)*

> **See Addendum to Contract.**

**12.2** Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.

## ARTICLE 13 INSURANCE AND BONDS

**13.1** The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

> **Per specifications, see also Addendum to Contract.**

**13.2** Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Subcontractor's Work until date of final payment and termination of any coverage required to be maintained after final payment to the Subcontractor.

**13.3** Certificates of insurance acceptable to the Contractor shall be filed with the Contractor prior to commencement of the Subcontractor's Work. These certificates and the insurance policies required by this Article 13 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment as required in Article 12. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Subcontractor with reasonable promptness according to the Subcontractor's information and belief.



© 1997 AIA®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**13**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**13.4**    The Contractor shall furnish to the Subcontractor satisfactory evidence of insurance required of the Contractor under the Prime Contract.

**13.5**    The Contractor shall promptly, upon request of the Subcontractor, furnish a copy or permit a copy to be made of any bond covering payment of obligations arising under the Subcontract.

**13.6**    Performance Bond and Payment Bond:    N/A
*(If the Subcontractor is to furnish bonds, insert the specific requirements here.)*

**13.7    PROPERTY INSURANCE**
**13.7.1**    When requested in writing, the Contractor shall provide the Subcontractor with copies of the property and equipment policies in effect for the Project. The Contractor shall notify the Subcontractor if the required property insurance policies are not in effect.    **General Contractor has carried Builder's Risk insurance for 100% of contract value.**
**13.7.2**    If the required property insurance is not in effect for the full value of the Subcontractor's Work, then the Subcontractor shall purchase insurance for the value of the Subcontractor's Work, and the Subcontractor shall be reimbursed for the cost of the insurance by an adjustment in the Subcontract Sum.

**13.7.3**    Property insurance for the Subcontractor's materials and equipment required for the Subcontractor's Work, stored off site or in transit and not covered by the Project property insurance, shall be paid for through the application for payment process.    **N/A**
        **It is the responsibility of the Sub-contractor.**
**13.8    WAIVERS OF SUBROGATION**
**13.8.1**    The Contractor and Subcontractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property insurance provided under the Prime Contract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by the Owner as a fiduciary. The Subcontractor shall require of the Subcontractor's Sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

## ARTICLE 14 TEMPORARY FACILITIES AND WORKING CONDITIONS
**14.1**    The Contractor shall furnish and make available to the Subcontractor the following temporary facilities, equipment and services; these shall be furnished at no cost to the Subcontractor unless otherwise indicated below:    N/A



© 1997  AIA ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**14**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**14.2** Specific working conditions:
*(Insert any applicable arrangements concerning working conditions and labor matters for the Project.)*

> See Addendum to Contract

## ARTICLE 15 MISCELLANEOUS PROVISIONS

**15.1** Where reference is made in this Subcontract to a provision of another Subcontract Document, the reference refers to that provision as amended or supplemented by other provisions of the Subcontract Documents.

**15.2** Payments due and unpaid under this Subcontract shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

> None

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's, Contractor's and Subcontractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**15.3** Retainage and any reduction thereto is as follows:

> See Addendum to Contract

**15.4** The Contractor and Subcontractor waive claims against each other for consequential damages arising out of or relating to this Subcontract, including without limitation, any consequential damages due to either party's termination in accordance with Article 7.

## ARTICLE 16 ENUMERATION OF SUBCONTRACT DOCUMENTS

**16.1** The Subcontract Documents, except for Modifications issued after execution of this Subcontract, are enumerated as follows:

**16.1.1** This executed 1997 edition of the Standard Form of Agreement Between Contractor and Subcontractor, AIA Document A401-1997;

**16.1.2** The Prime Contract, consisting of the Agreement between the Owner and Contractor dated as first entered above and the other Contract Documents enumerated in the Owner-Contractor Agreement;



© 1 9 9 7   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**15**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**16.1.3**   The following Modifications to the Prime Contract, if any, issued subsequent to the execution of the Owner-Contractor Agreement but prior to the execution of this Agreement:

Modification                                                           Date

   None

**16.1.4**   Other Documents, if any, forming part of the Subcontract Documents are as follows:
*(List any additional documents that are intended to form part of the Subcontract Documents. Requests for proposal and the Subcontractor's bid or proposal should be listed here only if intended to be part of the Subcontract Documents.)*

   None

This Agreement entered into as of the day and year first written above.

_____              _____
**CONTRACTOR** *(Signature)*                          **SUBCONTRACTOR** *(Signature)*
Wu & Associates, Inc.                          Brendan Ward Masonry, Inc.

*Kirby Wu, Vice President*                      _____
*(Printed name and title)*       4/26/02        *(Printed name and title)*



© 1 9 9 7   A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

CAUTION: *You should sign an original AIA document or a licensed reproduction. Originals contain the AIA logo printed in red; licensed reproductions are those produced in accordance with the Instructions to this document.*

16

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.





Wu & Associates, Inc.
597 Deer Road
Cherry Hill, NJ 08034
Tel:  856-857-1639
Fax:  856-857-1729

PROJECT NO:___0102__
SUBCONTRACT NO:_0102-17_

## Addendum to Contract

1.    CONFLICTS: The terms, conditions, amendments and additions of this Addendum shall control in the event these terms, conditions, amendments and additions conflict with the language of the **Standard Form of Agreement Between Contractor and Subcontract**. (AIA Document A401-1997) Numbered paragraphs and labels or headings are included in this Addendum merely for ease of reading. No application or interpretation shall be assigned to these numbers, labels or headings.

2.    Subcontractor agrees to perform the work in accordance with the contract between CONTRACTOR and OWNER, including all contract documents and specifications as provided to the subcontractor and as directed by site Superintendent and Project Manager.  Subcontractor agrees to perform the work in accordance with the contract plans and specifications, including but not limited to the description of the subcontract work and specifications attached hereto and/or the following specification section of the contract as attached hereto as Exhibit A.

3.    Subcontractor expressly acknowledges receipt of the following: "sample insurance certificate;" "Form 1413 Statement & Acknowledgment;" and "Wage Affidavit Form."  Subcontractor expressly acknowledges that this sample and forms MUST BE FOLLOWED EXACTLY and must be provided by SUBCONTRACTOR to the CONTRACTOR within ten (10) calendar days of the contract date listed above.  Each must provided before Subcontractor is permitted access to the job site. ·   SUBCONTRACTOR also acknowledges receipt of CONTRACTOR'S affirmative action policy.

4.    Subcontractor expressly acknowledges receipt of the enclosed Certified Payroll Form and agrees to provide certified payroll statements that comply with this sample.  Such must be submitted weekly, as application of payment under this subcontract, to CONTRACTOR for each week subcontractor provides work or services.  If subcontractor fails to use the Certified Payroll Form, contractor is not obligated to make any payment under this subcontract.

5.    Subcontractor expressly acknowledges receipt of the enclosed "Subcontractor's Pay Estimate Form" which must be used when submitting invoices for payment processing.  If subcontractor fails to use the Subcontractor's Pay Estimate Form, contractor is not obligated to make any payment under this subcontract.

6.    SUBCONTRACTOR agrees to provide a written description of the process (submittals) it will follow to perform the work and comply with the specification sections referenced above within 10 calendar days of the contract date listed above, if requested by Owner and in conformance with the format required by the Owner.

7.    Subcontractor expressly acknowledges receipt of the enclosed Progress Schedule.  On occasion, CONTRACTOR may revise such Progress Schedule to reflect and/or accommodate delays caused by the Property Conditions, Owner of the Premises, Contractor, Subcontractor, or other parties.  Such revision shall not constitute an extension of time for completion of the project by SUBCONTRACTOR.  Any and all extensions of time must be made in writing by the CONTRACTOR in its sole discretion.

8.    Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor, and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make partial payments to the Subcontractor upon submission to Contractor of the Subcontractor's Pay Estimate form as follows: ninety percent (97 1/2%) of all labor, materials, equipment and/or services shall be paid as completed and/or placed in position by said Subcontractor.  Such sum shall be paid in or about the first week of the following second month after placement, except the final payment (two and one half (2 1/2%) percent) shall be paid to the said Subcontractor within 30 days after the Subcontractor  has completed all of his work to the full satisfaction of the Subcontractor and/or the Owner of the premises, and final payment is released by the owner, and subject to the limitations stated herein.  All such progress payments are subject to provisions herein permitting CONTRACTOR to retain monies.  All such progress payments shall be paid by CONTRACTOR to SUBCONTRACTOR only if CONTRACTOR has received payment from Owner for the same period in which SUBCONTRACTOR provided services or performed work.  CONTRACTOR'S RECEIPT OF

PAYMENT FROM OWNER IS A CONDITION PRECEDENT TO ITS OBLIGATION TO PAY SUBCONTRACTOR.

Each month, SUBCONTRACTOR must submit a partial release of liens with its invoices on a form provided by CONTRACTOR certifying that it has used its prior payments to pay all suppliers, subcontractors and tax obligations for the Project. CONTRACTOR shall pay SUBCONTRACTOR within three (3) days of receipt of payment from Owner subject to the conditions described above.

Final payment will be made within thirty (30) days after the work called for hereunder has been completed by the Subcontractor to the satisfaction of the Owner and the Contractor, and the Contractor has received from the Owner written acceptance thereof together with payment in full for this portion of the work. Final payment is further subject to Contractor's determination that all of the terms, conditions, requirements and covenants of the Subcontract Documents have been well and truly met and discharged by Subcontractor. CONTRACTOR'S RECEIPT OF FINAL PAYMENT FROM OWNER FOR THE SAME WORK PERIOD IS A CONDITION PRECEDENT TO ITS OBLIGATION TO ISSUE FINAL PAYMENT TO SUBCONTRACTOR.

No partial payment shall constitute acceptance or approval by the Contractor of the work or material for which the partial payment is made.

9.    The SUBCONTRACTOR must make any change order claims to the Contractor for damages or additional compensation based on alleged extra work, changed conditions or any other grounds in the same manner as provided in the Contract Documents for like claims of the Contractor upon the Owner. SUBCONTRACTOR is required to submit a list of pending change orders with its monthly invoice. Failure to comply with this requirement will relieve CONTRACTOR of its obligation to adjust the contract sum or time for performance. No circumstance giving rise to issuance of a change order request by SUBCONTRACTOR shall excuse by interruption, cessation, postponement or delay in the commencement of the work or in the progress thereof.

ANY PAYMENT OF ADDITIONAL MONIES FROM CONTRACTOR TO SUBCONTRACTOR ARE CONTINGENT UPON PAYMENT FROM OWNER TO CONTRACTOR. SUBCONTRACTOR hereby expressly waives any other right to damages or additional compensation should the claim be denied by the Owner, or should Owner delay approval or disapproval of Subcontractor's claim.

When the Contractor orders in writing, the Subcontractor, without nullifying this agreement, shall make any and all changes in the Subcontract Work which are within the general scope of this Agreement. Any adjustment in the Subcontract Amount or Subcontract Time shall be authorized as per the Change Order provisions stated above. No adjustments shall be made for any changes performed by the Subcontractor that have not been approved by the Contractor.

10.    This Subcontract constitutes the entire agreement between the parties. This Subcontract supersedes and takes precedence over all bid documents, proposals, correspondence, and oral agreements between the Subcontractor and Contractor if any.

11.    Subcontractor acknowledges receipt of the attached Insurance Requirements and shall procure and maintain at its own expense the insurance required thereby.

12.    The subcontractor will obtain all permits and approvals as required by law at its own expense.

13.    All notices under this contract must be in writing and delivered by certified mail or personal delivery to the addresses stated above.

14.    CONTRACTOR may required SUBCONTRACTOR to furnish all necessary lien waivers and other documents required to keep Owner's premises free from liens of material suppliers, subcontractors or laborers. If at any time, there shall be evidence of a lien, stop notice or claim related to the Subcontractor, CONTRACTOR may satisfy the indebtedness and hold the SUBCONTRACTOR responsible for reimbursement. Prior to receipt of final payment, SUBCONTRACTOR shall execute and deliver to CONTRACTOR a general release of liens in a format as provided by CONTRACTOR.

**Wu & Associates, Inc.**
597 Deer Road
Cherry Hill, NJ 08034
Tel:  856-857-1639
Fax:  856-857-1729
Email: Info@wuassociates.com

PROJECT NO:___0102

SUBCONTRACT NO:__0102-17

# SCOPE OF WORK – EXHIBIT A

1.    Except as specifically noted, Subcontractor shall provide and pay for:

    (A)    All labor, materials, and equipment;
    (B)    Tools, construction equipment and machinery;
    (C)    Supervision, other facilities, and services;
    (D)    Insurance; and
    (E)    100% Payment Bond and 100% Performance Bond. (General Contractor will pay for actual cost of Bond Premium.)

2.    The Subcontractor shall have full responsibility for the following specifications:  Section 04200 - Unit Masonry, Section 04200  Cast Stone (setting and supply anchors only) and all sections applicable for completion of this contract.

3.    This subcontract includes, but is not limited to the following, which shall be considered as part of this Subcontract:
(i) Addendum No. 1, dated 7/25/01;
(ii) Addendum No. 2, dated 8/6/01 w/ drawings E2.03, E2.04;
(iii) Contract Specifications Volume 1 and 2 dated 6/28/01 by Tevebaugh Associates;
(iv) All contract drawings sheet CS01 to sheet E4.03 dated 6/28/01;
Subcontractor expressly acknowledges receipt of each document referred to above, and agrees to be bound to the terms thereof, as if made a party thereto.

4.    In addition to the performance of the work listed in the specifications attached hereto or the specification section identified above, Subcontractor agrees to perform the following: all interior and exterior masonry work including but not limited to platform, piers, CMU wall @ transformer, wall @ vehicular entrance with stone, the garden wall, supply and install rigid foam insulation, bond beam, S&I reinforcing steel, S&I thru-wall flashing, washing down, scaffold, 4" glazed blocks @ floor level, smooth face blocks, split face blocks, daily cleaning, removal of debris to dumpster, cold weather protection, all CMU foundations must be completed ~~by May 15, 2002.~~ *Per schedule* K.W.

5.    Exclusions.  The following items(s) is (are) excluded from this subcontract:  bond, dumpsters, setting door frames, pre-cast stone material, testing, permit, brick pavers, excavation and grading.

6.    Subcontractor acknowledges the receipt of the following attachments:

    a)    Affirmative Action Policy.
    b)    Insurance Requirements for Subcontractors.
    c)    Drawings, and specifications as noted above.
    d)    Prevailing Wage Affidavit Form - all employees who will work on this project must sign and return this form.
    e)    Sample insurance certificate (THIS SAMPLE MUST BE FOLLOWED EXACTLY WITH REGARD TO THE CANCELLATION CLAUSE AND DESCRIPTION OF OPERATIONS SECTIONS BEFORE YOU CAN OBTAIN ACCESS).  Insurance certificate must be submitted prior to start of work.
    f)    Certified Payroll form.
    g)    Subcontractor's Pay Estimate form, Wu PM-009, must be used when submitting invoices for payment processing.

THE WU PM-009 MUST BE FILLED OUT AND RETURNED WITH THIS CONTRACT BEFORE WE CAN EXECUTE SAME.

h)  Prevailing Wage Rates.
i)  W-9.
j)  Progress Schedule.
k)  Wu Bond Forms.

## END OF SCOPE OF WORK – EXIBIT "A"

IN WITNESS WHEREOF, the parties hereto intending to be legally bound hereby set their hands and seals as of the dates stated below.

(ORIGINAL SIGNATURES)

_____     4/26/02
WU AND ASSOCIATES, INC.             DATE

    BY: ___Raymond Wu, P.E.___ (print name)  TITLE: __Vice President__

_____     4-26-02
BRENDAN WARD MASONRY                 DATE

    BY: _President_ (print name)  TITLE: _President_
      Brendan Ward

# Exhibit 2

PETER N. MILLIGAN, ESQ.
————ATTORNEY AT LAW————

1

**PETER NEELY MILLIGAN, ESQ.**
1960 Route 70 East
Cherry Hill, NJ 08003
(856) 983-0003
Attorney for Wu & Associates, Inc.

### TOLLING AGREEMENT

This tolling agreement is made and entered into between WU & ASSOCIATES, INC. and BRENDAN WARD MASONRY INC. by their respective undersigned counsel;

WHEREAS, Wu & Associates, Inc. has or will shortly submit all claims made and their supporting documentation of Brendan Ward Masonry, Inc. in the current pending case under Case No. 2003-BCA-1;

WHEREAS, Brendan Ward Masonry, Inc. has expressed dissatisfaction with the arbitrator appointed by AAA;

WHEREAS, Wu & Associates, Inc. has expressed its position that it does not believe that this matter is ripe for arbitration, that is, until the pending Department of Labor litigation is closed; and

WHEREAS, both parties agree that duplicative expenses in the Department of Labor litigation and an arbitration are unnecessary;

NOW THEREFORE, in consideration of the mutual agreements hereinafter set forth, each party intending to be legally bound hereby, the parties covenant and agree as follows:

1.   As used herein, the following terms shall have the following meanings:

   a.   "CLAIMS" shall mean any and all claims and causes of

2

action, known or unknown, which the parties have against each other in any capacity regarding the construction project with the Department of Labor in Wilmington, DE.

b.  "EXPIRATION PERIOD" shall mean thirty (30) days after written notice to the undersigned from Sean T. O'Meara, Esq. of the final resolution, without possibility of appeal, of the matter pending under Case No. 2003-BCA-1, or 366 days (whichever comes first).

c.  "TOLLING PERIOD" shall mean the period from and including the date this agreement is executed to and including the expiration date.

d.  The tolling agreement embodied herein shall be for the mutual benefit of the parties.

2.  The parties agree to dismiss and withdraw the pending AAA arbitration pending under 14Y1100101004;

3.  The parties stipulate, covenant, and agree to the suspension during the tolling period of the running of all statutes of limitation, laches periods, or similar defenses based upon a lapse of a period of time that may otherwise be asserted by it as a full or partial defenses against any claims;

4.  The parties hereby agree to arbitrate any claims that exist after the expiration period, and agree to initiate such claims by the conclusion of the Expiration Period.

5.  Prior to the Expiration Period, the parties shall negotiate in good faith to select a mutually acceptable arbitrator.

3

If unable, the parties will appoint their own arbitrators, and be responsible for their own arbitrator's costs. The two (2) appointed arbitrators will then select a neutral arbitrator. The expenses of the neutral arbitrator will be equally shared by the parties.

6. Except to the extent set forth above with the respect to the time related defenses, this tolling agreement shall not affect any other defenses or claims that the parties may have.

7. This tolling agreement constitutes the full and complete agreement between the parties. This tolling agreement may not be modified except in writing.

8. This tolling agreement may be executed in any number of originals or telecopied counterparts.

9. The parties agree that this tolling agreement nor any acts or statements related to it shall constitute any admission of liability, and that this tolling agreement may not be introduced or received into evidence.

Peter Neely Milligan, Esq.
Attorney for WU & ASSOCIATES, INC.

By: _____
        Peter Neely Milligan, Esq.

Dated: December 16, 2004

Paul A. Bucco, Esq.,
Attorney for BRENDAN WARD MASONRY
INC.

By: _____
        Paul A. Bucco, Esq.

Dated:

PETER N. MILLIGAN, ESQ.
————ATTORNEY AT LAW————

# Exhibit 3

PETER N. MILLIGAN, ESQ.
————ATTORNEY AT LAW————

# IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

THE UNITED STATES OF AMERICA     :

For the use of     :

BRENDAN WARD MASONRY, INC.     :

    :

       Plaintiff     :     CIVIL ACTION NO.: 04-0117 _KAJ_

v.     :

    :     JURY TRIAL DEMANDED

    :

FIDELITY AND DEPOSIT COMPANY     :
OF MARYLAND     :

       Defendant     :

## AMENDED COMPLAINT

PLAINTIFF, The United States of America For the use of Brendan Ward Masonry, Inc., says by way of Amended Complaint against Fidelity and Deposit Company of Maryland as follows:

### PARTIES

1.     Plaintiff is The United States of America, for the use of Brendan Ward Masonry, Inc., ("Ward"), a Pennsylvania corporation with a business address located at 345 Oak Terrace, Radnor, PA 19087.

2.     Defendant is Fidelity and Deposit Company ("Fidelity") a corporation of the State of Maryland which is authorized to conduct business in the State of Delaware with a business address of 200 Berwyn Park, Suite 105, 920 Cassatt Road, Berwyn, PA 19312.

## JURISDICTION

3. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question jurisdiction) because the claims set forth herein arise out of a surety bond issued pursuant to 40 U.S.C. § 270a-d ("the Miller Act").

## VENUE

4. Venue is proper in this District pursuant to 40 U.S.C. § 270b, because the contract upon which this action is based was executed within the territorial limit of this District.

## FACTS

5. The United States of America, acting by and through the Department of Labor entered into a written contract with the general contractor, Wu & Associates, Inc. (the "Contractor") whereby, the Contractor agreed to furnish all labor, equipment and material and perform all the work required for a federal construction project (number 0102), at the Wilmington Job Corps Center, 9 Vandever Avenue, Wilmington, DE 19802.

6. Ward believes and therefore avers that Contractor was required, as a condition of being awarded the contract for the aforementioned project, to provide a labor and material payment bond in accordance with 40 U.S.C. §270a.

7. Upon information and belief, the Contractor, as principal, and Fidelity, as surety, duly executed a Standard Government Form of Payment Bond for the subject project wherein and whereby the Contractor, as principal, and Fidelity, as surety, bound themselves, jointly and severally, to pay the claims of any person or entity providing labor and/or materials on behalf of Contractor at the subject project. A true and correct copy of the Payment Bond is made a part hereof and attached as Exhibit "A".

8.    Ward is a proper claimant under the bond issued by Fidelity because it furnished labor and materials to the project as a subcontractor to Contractor.

9.    To date, there is an unpaid principal balance of $84,546.13 owed to Ward for the work performed as a subcontractor to Contractor at the subject project.

10.    Despite demand, Contractor has failed and refused to pay the balance owed to Ward.

11.    Based on the foregoing, Defendant Fidelity and Deposit Company of Maryland is liable to Ward in the amount of $ 84,546.13 pursuant to the terms of the bond issued on behalf of Contractor for the project.

WHEREFORE, the Plaintiff, United States of America for the use of Brendan Ward Masonry, Inc. demands judgment in its favor and against Defendant, Fidelity and Deposit Company of Maryland in the amount of $84,546.13 plus interest and costs.

DAVIS, BUCCO & ARDIZZI

BY: _____
     Robert D. Ardizzi, Esquire
     2 North Colonial Avenue
     Elsmere, DE 19805
     (302) 345-9808



**PERFORMANCE BOND**
*(Instructions on reverse)*

| DATE BOND EXECUTED *(must be same or later than date of contract)* | OMB No.: 9000-0045 |
|---|---|
| 10/2/2001 | Expires: 03/200? |

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405.

| PRINCIPAL *(Legal name and business address)* | TYPE OF ORGANIZATION *("X" one)* | |
|---|---|---|
| Wu & Associates Inc.<br>597 Deer Road<br>Cherry Hill, NJ 08034 | ☐ INDIVIDUAL | ☐ PARTNERSHIP |
| | ☐ JOINT VENTURE | ☒ CORPORATION |
| | STATE OF INCORPORATION | |
| | Pennsylvania | |

| SURETY(IES) *(Name(s) and business address(es))* | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| Fidelity and Deposit Company of Maryland | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| 200 Bervyn Park, Suite 105 | $5 | 875 | 000 | 00 |
| 920 Cassatt Road | CONTRACT DATE | CONTRACT NO. | | |
| Berwyn, Pa. 19312 | 9/28/2001 | AE-11793-01-2D | | |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Surety(ies) are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The Principal has entered into the contract identified above.

**THEREFORE:**

The above obligation is void if the Principal —

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

**WITNESS:**

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

| | | PRINCIPAL | | | |
|---|---|---|---|---|---|
| **Wu & Associates Inc.** | | | | | |
| SIGNATURE(S) | 1. *(signature)* | 2. *(Seal)* | 3. *(Seal)* | | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. RAYMOND WU PRES | 2. | 3. | | |

| | | INDIVIDUAL SURETY(IES) | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) *(Typed)* | 1. | 2. *(Seal)* | | |

| | | | CORPORATE SURETY(IES) | | |
|---|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | Fidelity & Deposit Co. of Maryland<br>Berwyn, Penna. | STATE OF INC.<br>Maryland | LIABILITY LIMIT<br>$ 27,426,000.00 | |
| | SIGNATURE(S) | 1. *(signature)* | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. Fernanda L. DePaolantonio<br>attorney-in-fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition not usable

STANDARD FORM 25 (REV. 5-96)
Prescribed by GSA-FAR (48 CFR 53.228(c))

# Exhibit 4

PETER N. MILLIGAN, ESQ.

ATTORNEY AT LAW

# DAVIS, BUCCO & ARDIZZI

**ATTORNEYS AT LAW**
10 EAST SIXTH AVENUE
SUITE 100
CONSHOHOCKEN, PENNSYLVANIA 19428
TEL: (610) 238-0880
FAX: (610) 238-0244

ROBERT D. ARDIZZI◆

BRENDA'S

NEW JERSEY OFFICE
DAVIS & BUCCO
103 WHITE HORSE PIKE
HADDONHEIGHTS, NJ 08035
TEL: (856) 910-8200
FAX: (856) 310-9921

◆ALSO MEMBER NEW JERSEY AND DELAWARE BARS

# FAX TRANSMISSION COVER SHEET

DATE: May 25, 2004

NUMBER OF PAGES (Including this page):  __3__

TO:        Peter Frattarelli / Peter Milligan

FAX:       856-795-0574/  856-983-0030

RE:        Brendan Ward Masonry and Wu Associates

FROM:      Robert D. Ardizzi, Esquire

MESSAGE:

**Attached is a draft of the stipulation we discussed with Judge Jordan today. Please review this and provide me with your comments ASAP.**

ORIGINAL DOCUMENT WILL BE FORWARDED THROUGH MAIL: Yes___  No__X__
The information contained in this fax message is intended only for the personal and confidential use of the designated recipients named above. The Message may be an attorney-client communication, and as such is privileged and confidential. If the Reader of this Message is not the Intended Recipient or an Agent responsible for delivering it to the intended Recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited.   If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail. THANK YOU!

PLEASE CALL (610) 238-0880 IF YOU EXPERIENCE ANY PROBLEMS WITH TRANSMISSION.

05/25/2004  11:44   6102380?14          DAVIS BUCCO ARDIZZI                    PAGE  02/03

# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF DELAWARE

THE UNITED STATES OF AMERICA    :

For the use of    :

  :

BRENDAN WARD MASONRY, INC.    :

  :   CIVIL ACTION NO.:  04-117 (KAJ)

Plaintiff   :

v.   :

  :

FIDELITY AND DEPOSIT COMPANY   :

OF MARYLAND   :   **STIPULATION OF DISMISSAL**

Defendant   :

The parties hereto, by and through their undersigned attorneys, hereby stipulate and agree as follows:

     1.     All claims and defenses asserted in this action shall be transferred to and included in the arbitration proceeding pending before the American Arbitration Association captioned <u>Brendan Ward Masonry, Inc. and Wu Associates,</u> No. 14 Y 110 01010 04 (the "Arbitration");

     2.     Defendant, Fidelity and Deposit Company of Maryland, will be joined as a Respondent in the Arbitration and shall be bound by all decisions rendered in the Arbitration and by any court in which the Arbitration decision is confirmed;

     3.     This case shall be dismissed with prejudice; and

05/25/2004  11:44   610238??*4              DAVIS BUCCO ARDIZZI                    PAGE  03/03

4.    In executing this stipulation, neither party is waiving or releasing any claims, defenses or rights it may have with regard to the project or the matters at issue in this action.


DAVIS, BUCCO & ARDIZZI                    ARCHER & GRIENER


By: _____           By: _____
    Robert D. Ardizzi, Esquire                 Peter L. Frattarelli, Esquire
    Attorney for Plaintiff                      Attorney for Defendant


        **STIPULATION approved by the Court this** _____ **day of** _____, **2004.**



                        _____
                        Honorable Kent A. Jordan

# Exhibit 5

PETER N. MILLIGAN, ESQ.
ATTORNEY AT LAW

4    10:45          WU ASSOCIATES                                    856 857 1639    P.03

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents
950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

May 24, 2004

<u>Via Facsimile</u>

Paul A. Bucco, Esq.
Davis, Bucco & Ardizzi
10 East 6th Avenue
Suite 100
Conshohocken, PA 19428

Wu Associates
597 Deer Road
Cherry Hill, NJ 08034

Re: 14 Y 110 01010 04
    Brendan Ward Masonry, Inc.
    and
    Wu Associates

*Brenday*
*$4,250 filing —*
*to $2,750    "*

Dear Parties:

This will acknowledge receipt on May 19, 2004, of a Demand for Arbitration dated May 17, 2004, of a controversy arising out of a contract between the above-captioned parties, containing a clause providing for administration by this Association. We understand that a copy was sent to Respondent. As the claim exceeds $500,000.00, the LCC Procedures will apply unless the parties agree otherwise. Please refer to our website for a copy of our Construction Arbitration and Mediation Rules, as amended and in effect <u>July 1, 2003</u> as well as a copy of our Guide to the Management of Large Complex Cases.

If you would like a printed copy of the applicable rules, please contact the undersigned.

In accordance with the Rules, if Respondent does not answer on or before <u>June 8, 2004</u>, we will assume that the claim is denied. If Respondent wishes to counterclaim, file the appropriate number of copies, together with the administrative fee, to the attention of the undersigned. A copy should be directly sent to Claimant.

An Answering Statement Form may be obtained from our website at www.adr.org. If you would like a printed form, please contact the undersigned.

Claimant has requested that the hearing be held in <u>Philadelphia, PA</u>. Please review the Rules regarding the locale of hearings.

The attention of Respondent is also directed to the Rules which provide that in the event any party requests that the hearing be held in a specific locale and the other party files no objection thereto after notice of the request, the locale shall be that requested by the first party. Therefore, unless Respondent files its objections with this office within fifteen days from the date of this letter or on or before <u>June 8, 2004</u>, the arbitration will be held in <u>Philadelphia, PA</u>.

We note the claim is <u>$500,000.00</u>. If this amount is incorrect, please advise us on or before <u>June 8, 2004</u> of the correct amount

MAY-19-2004  08:54   WU ASSOCIATES                    856 857 1639   P.03/07

# American Arbitration Association
## CONSTRUCTION INDUSTRY ARBITRATION RULES
### DEMAND FOR ARBITRATION

*MEDIATION  If you want the AAA to contact the other party and attempt to arrange a mediation, please check this box.* ☐

| TO: Name of Respondent | Name of Representative (if known) | | |
| --- | --- | --- | --- |
| Wu & Associates | | | |
| **Address:** 597 Deer Road | **Address:** | | |
| City: Cherry Hill | State: NJ  Zip Code 08034 | City: | State   Zip Code |
| Phone No. (856) 857-1639 | Fax No. (856) 857-1729 | Phone No. | Fax No. |

THE NAMED CLAIMANT, A PARTY TO A WRITTEN AGREEMENT DATED _____ 04/05/02 _____ PROVIDING FOR ARBITRATION UNDER THE CONSTRUCTION INDUSTRY ARBITRATION RULES, HEREBY DEMANDS ARBITRATION THEREUNDER. (ATTACH THE ARBITRATION CLAUSE.)

NATURE OF DISPUTE (Please give enough details to enable the AAA to select arbitrators with appropriate experience.): SEE ATTACHED

| DOLLAR AMOUNT OF CLAIM: $ 500,000.00 (est.) | OTHER RELIEF SOUGHT:  SEE ATTACHED |
| --- | --- |

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:

Familiarity with AIA contracts, public contracting and liquidated damage claims.

CLAIMANT IS:
☐ Owner    ☐ Design Professional (specify _____)    ☐  Contractor
X  Subcontractor (specify Masonry Work _____)    ☐  Other (specify _____)

RESPONDENT IS:
☐ Owner    ☐ Design Professional (specify _____)    X  Contractor
☐ Subcontractor (specify _____)    ☐  Other (specify _____)

ESTIMATED TIME NEEDED FOR HEARINGS OVERALL: _____ hours   2 1/2 _____ days

Copies of this demand are being filed with the American Arbitration at its Rhode Island office. Claimant requests that the AAA commence the administration of the arbitration. Under the rules, you may file an answering statement within ten days after notice from the AAA.

CLAIMANT REQUESTS THAT ARBITRATION HEARINGS BE HELD AT THE FOLLOWING LOCALE: Philadelphia, PA

| Signature (may be signed by a representative) | Title Esquire | Date |
| --- | --- | --- |
| Name of Claimant Brendan Ward Masonry, Inc. | Name of Representative: Paul A. Bucco, Esquire | |
| Address: 345 Oak Terrace | Address: 10 E. 6th Avenue, Suite 100 | |
| City: Radnor   State PA   Zip Code 19087 | Conshohocken   State PA   Zip Code 19428 |
| Phone No. 610-293-7661   Fax No. 610-971-2181 | Phone No. 610-238-0880   Fax No. 610-238-0244 |

TO INSTITUTE PROCEEDINGS, PLEASE SEND THREE COPIES OF THIS DEMAND AND THE ARBITRATION AGREEMENT, WITH THE FILING FEE AS PROVIDED FOR IN THE RULES, TO THE AAA. SEND THE ORIGINAL DEMAND TO THE RESPONDENT.

800  778  7879

## Brendan Ward Masonry, Inc. v. Wu & Associates, Inc.

### ADDENDUM TO ARBITRATION DEMAND

### NATURE OF DISPUTE

Claimant, Brendan Ward Masonry, Inc. ("BWM") is currently owed $87,546.13 for work that it performed for Respondent at the Wilmington Job Corps in Wilmington, Delaware (the "Project"). In addition to the contract damages, BWM also contends that it was delayed in the progress of its work, that Respondent is responsible for the delays, and that it is entitled to compensation for the delay. BWM also contends that it was wrongfully terminated by Respondent. BWM has and will sustain damages as a result of the wrongful termination because it is now required to notify other public owners that it was terminated on a public project.

### OTHER RELIEF SOUGHT

BWM's categories of damages are as follows:

1. Contract balance owed
2. Delay damages
3. Wrongful termination
4. Lost profits due to delay

BWM also seeks interest, penalties and attorney's fees to the extent recovery is permitted by law.

MAY-19-2004  08:55         ASSOCIATES                              856 857 1639     P.05/07

American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

or entity for   ose acts the Subcontractor may be liable, and   Subcontractor or any person
ing outside   cope of this Subcontract.   case for delays or causes aris-

# AIA DOCUMENT | A401-1997

## Standard Form of Agreement Between Contractor and Subcontractor

Subcontract 0102-25

This document has impor-
tant legal consequences.
Consultation with an
attorney is encouraged with
respect to its
completion or modification.

**AGREEMENT** made as of the   5th (fifth)   day of April
in the year 2002 (Two Thousand Two).
(In words, indicate day, month and year)

**BETWEEN** the Contractor:   Wu & Associates, Inc.
(Name, address and other information)   597 Deer Road
Cherry Hill, NJ 08034

This document has been
approved and endorsed
by the American
Subcontractors Association
and the Associated Specialty
Contractors, Inc.

and the Subcontractor:   Brendan Ward Masonry, Inc.
(Name, address and other information)   345 Oak Terrace
Radnor, PA 19087
P.O.C. Brendan Ward
Tel: 610-293-7661   Fax: 610-971-2181

The Contractor has made a contract for construction dated
September 28, 2001

With the Owner:   U.S. Department of Labor
(Name, address and other information)   Division of Contract Services
200 Constitution Avenue, N.W.
Room S - 4203
Washington, DC 20210

For the following Project:
(Include detailed description of Project, location and address)
Wilmington Job Corps Center
9 Vandever Avenue
Wilmington, DE 19802

which Contract is hereinafter referred to as the Prime Contract and which provides for the
furnishing of labor, materials, equipment and services in connection with the construction of
the Project. A copy of the Prime Contract, consisting of the Agreement Between Owner and
Contractor (from which compensation amounts may be deleted) and the other Contract
Documents enumerated therein has been made available to the Subcontractor.

The Architect for the Project is:   Tevebaugh Associates
(Name, address and other information)   2 Mill Road, Suite 210
Wilmington, DE 19806



© 1997  A I A ©
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

The Contractor and the Subcontractor agree as follows

Copyright 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of
Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission
of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.
Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

MAY-19-2004  08:56    ['' ASSOCIATES                                        856 857 1639    P.06/07

## ARTICLE 5  CHANGES IN THE WORK

**5.1**     The Owner may make changes in the Work by issuing Modifications to the Prime Contract. Upon receipt of such a Modification issued subsequent to the execution of the Subcontract Agreement, the Contractor shall promptly notify the Subcontractor of the Modification. Unless otherwise directed by the Contractor, the Subcontractor shall not thereafter order materials or perform Work which would be inconsistent with the changes made by the Modifications to the Prime Contract.

**5.2**     The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

**5.3**     The Subcontractor shall make all claims promptly to the Contractor for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which the Contractor is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Prime Contract. Such claims shall be received by the Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound.

## ARTICLE 6  MEDIATION AND ARBITRATION

~~6.1    MEDIATION~~ *[initialed]*

~~6.1.1    Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.~~

~~6.1.2    The parties shall endeavor to resolve their claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Subcontract and the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.~~ *[initialed]*

~~6.1.3    The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.~~ *[initialed]*

### 6.2    ARBITRATION

**6.2.1**     Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. ~~Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1.~~ *[initialed]*



©1997   AIA®
AIA DOCUMENT A401-1997
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

MAY-19-2004  08:56      F" ASSOCIATES                          856 857 1639      P.07/07

**6.2.2**  Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. Demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association, and a copy shall be filed with the Architect.

**6.2.3**  A demand for arbitration shall be made within the time limits specified in the conditions of the Prime Contract as applicable, and in other cases within a reasonable time after the claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

**6.2.4**  Limitation on Consolidation or Joinder. Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Subcontract shall include, by consolidation or joinder or in any other manner, any person or entity not a party to the Subcontract under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect, the Architect's employee, the Architect's consultant, or an employee or agent of any of them. This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**6.2.5**  Claims and Timely Assertion of Claims. The party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded.

**6.2.6**  Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 7  TERMINATION, SUSPENSION OR ASSIGNMENT OF THE SUBCONTRACT
**7.1**  **TERMINATION BY THE SUBCONTRACTOR**
**7.1.1**  The Subcontractor may terminate the Subcontract for the same reasons and under the same circumstances and procedures with respect to the Contractor as the Contractor may terminate with respect to the Owner under the Prime Contract, or for nonpayment of amounts due under this Subcontract for 60 days or longer. In the event of such termination by the Subcontractor for any reason which is not the fault of the Subcontractor, Sub-subcontractors or their agents or employees or other persons performing portions of the Work under contract with the Subcontractor, the Subcontractor shall be entitled to recover from the Contractor payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

**7.2**  **TERMINATION BY THE CONTRACTOR**
**7.2.1**  If the Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise to perform in accordance with this Subcontract and fails within seven days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after seven days following receipt by the Subcontractor of an additional written notice and without prejudice to any other remedy the Contractor may have, terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient. If the



© 1997  A I A ®
**AIA DOCUMENT A401-1997**
CONTRACTOR-
SUBCONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-8292

... U.S. copyright laws and will subject the violator to legal prosecution.

TOTAL  P.07

# Exhibit 6

PETER N. MILLIGAN, ESQ.
————ATTORNEY AT LAW————



**PETER NEELY MILLIGAN, ESQ.**
1960 Route 70 East
Cherry Hill, NJ 08003
(856) 983-0003
Attorney for Plaintiff

WU & ASSOCIATES, INC.                    SUPERIOR COURT OF NEW JERSEY
                                         CAMDEN COUNTY
                                         LAW DIVISION
            Plaintiffs,

v.                                       DOCKET NO.: L-

BRENDAN WARD MASONRY INC.
and INTERNATIONAL FIDELITY               **L002425  04**
INSURANCE COMPANY

            Defendants                   COMPLAINT

Plaintiff WU & ASSOCIATES, INC., of Cherry Hill, NJ, say:

### COUNT I: BREACH OF CONTRACT

1.   In April 2002, corporate representatives of Defendant
     BRENDAN WARD MASONRY INC. visited the office of Plaintiff WU
     & ASSOCIATES, INC., in Cherry Hill, NJ, and executed a
     Standard Form of Agreement between Contractor and
     Subcontractor.

2.   Pursuant to the Agreement, Defendant BRENDAN WARD MASONRY
     INC. agreed to perform certain tasks associated with masonry
     work, as listed in a detailed "Scope of Work" regarding a
     project commonly known as the "Wilmington Job Corps Center,"
     which is owned by the US Department of Labor.

3.   Defendant BRENDAN WARD MASONRY INC. failed to timely perform
     the required tasks of the written Agreement.

4.   Defendant BRENDAN WARD MASONRY INC. has breached its
     contract with Plaintiff WU & ASSOCIATES, INC.

PETER N. MILLIGAN, ESQ.
ATTORNEY AT LAW

3

5.    Such action has caused Plaintiff WU & ASSOCIATES, INC.
      damage and injury.

      WHEREFORE, judgement is demanded against defendant(s) for
compensatory damages, punitive damages, interest, costs of suit,
and attorney's fees.

<u>COUNT II: PERFORMANCE BOND</u>

1.    Plaintiff WU & ASSOCIATES, INC. repeats each averment of
      Count I as if restated herein.

2.    In September 2002, Defendant INTERNATIONAL FIDELITY
      INSURANCE COMPANY executed two (2) agreements commonly known
      as a Subcontractor Performance Bond and a Subcontractor
      Payment Bond.

3.    Under the aforementioned agreements, Defendant INTERNATIONAL
      FIDELITY INSURANCE COMPANY agreed to insure Plaintiff WU &
      ASSOCIATES, INC. for all loss, damage, and expenses
      (including interest, costs, and legal fees) incurred by
      reason of the failure of Defendant BRENDAN WARD MASONRY INC.
      to complete its obligations under the Standard Form of
      Agreement between Contractor and Subcontractor.

4.    Duly served written notice has been provided to Defendant
      INTERNATIONAL FIDELITY INSURANCE COMPANY that Defendant
      BRENDAN WARD MASONRY INC. has failed to complete its
      obligations.

5.    Despite such notice, Defendant INTERNATIONAL FIDELITY
      INSURANCE COMPANY refuses to insure such loss incurred by
      Plaintiff WU & ASSOCIATES, INC.

PETER N. MILLIGAN, ESQ.
ATTORNEY AT LAW

4

WHEREFORE, judgement is demanded against defendant(s) for compensatory damages, punitive damages, interest, costs of suit, and attorney's fees.

### TRIAL DESIGNATION

Pursuant to R. 4:25-4, PETER N. MILLIGAN, Esq. is hereby designated as trial attorney.

### CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no other parties should be joined in this action pursuant to R. 4:5-1, other than an action by BRENDAN WARD against FIDELITY & DEPOSIT COMPANY OF MARYLAND in Delaware District Court under Docket No. 04-117 KAJ.

### DEMAND FOR JURY TRIAL

The Plaintiff WU & ASSOCIATES, INC. hereby demands trial by jury as to all issues in the above matter.

Peter Neely Milligan, Esq.
Attorney for Plaintiff WU &
ASSOCIATES, INC.

By: _____
        Peter Neely Milligan, Esq.

Dated: April 28, 2004

PETER N. MILLIGAN, ESQ.
———ATTORNEY AT LAW———

# Exhibit 7

PETER N. MILLIGAN, ESQ.
—————————ATTORNEY AT LAW—————————

# DAVIS, BUCCO & ARDIZZI
**ATTORNEYS AT LAW**

TEL: 610-238-0880
FAX: 610-238-0244
E-MAIL: Robert. Ardizzi@davisbucco.com

**ROBERT D. ARDIZZI**
Admitted in Pennsylvania,
Delaware and New Jersey



June 18, 2004

PENNSYLVANIA

Peter Neely Milligan, Esquire
1960 Route 70 East
Cherry Hill, NJ 08003

NEW JERSEY

DELAWARE

RE: **Wu & Associates, Inc. v. Brendan Ward Masonry, Inc. and International Fidelity Insurance Company,**
Docket No. CAM-L-2425-04

Dear Mr. Milligan:

This will confirm that International Fidelity Insurance Company has agreed to join the arbitration pending before the American Arbitration Association. Therefore, I have prepared the enclosed Stipulation of Dismissal to be filed in this action. Please sign the stipulation and file it with the Court.

If you have any questions, please contact me.

Sincerely,

ROBERT D. ARDIZZI

\rda
Enclosure
cc: Brendan Ward Masonry, Inc. (via first class mail)

end
6|25

DAVIS, BUCCO & ARDIZZI
By:  Paul A. Bucco, Esquire/ Robert D. Ardizzi, Esquire
10 East 6th Avenue, Suite 100
Conshohocken, PA 19428                    Attorneys for Defendants
(610) 238-0880

---

| WU & ASSOCIATES, INC. | : SUPERIOR COURT OF NEW JERSEY |
| | : CAMDEN COUNTY |
| Plaintiff, | : LAW DIVISION |
| | : |
| v. | : |
| | : |
| BRENDAN WARD MASONRY, | : No. CAM-L-02425-04 |
| INC. and INTERNATIONAL | : |
| FIDELITY INSURANCE | : |
| COMPANY | : |
| | : **STIPULATION OF DISMISSAL** |
| Defendants. | : |

The parties hereto, by and through their undersigned attorneys, hereby stipulate and agree
as follows:

1.      All claims and defenses asserted in this action shall be transferred to and included
in the arbitration proceeding pending before the American Arbitration Association captioned
Brendan Ward Masonry, Inc. and Wu Associates, No. 14 Y 110 01010 04 (the "Arbitration");

2.      Defendant, International Fidelity Insurance Company, will be joined as a
Respondent in the Arbitration and shall be bound by all decisions rendered in the Arbitration and
by any court in which the Arbitration decision is confirmed;

3.      This case shall be dismissed with prejudice; and

4.    In executing this stipulation, neither party is waiving or releasing any claims, defenses or rights it may have with regard to the project or the matters at issue in this action.

Peter Neely Milligan, Esquire
1960 Route 70 East
Cherry Hill, NJ 08003
(856) 983-0003
Attorney for Plaintiff

Robert D. Ardizzi, Esquire
10 East 6th Avenue, Suite 100
Conshohocken, PA 91428
(610) 238-0880
Attorney for Defendants

# Exhibit 8

2

**PETER NEELY MILLIGAN, ESQ.**
1960 Route 70 East
Cherry Hill, NJ 08003
(856) 983-0003
Attorney for Plaintiff

WU & ASSOCIATES, INC.                   SUPERIOR COURT OF NEW JERSEY
                                        CAMDEN COUNTY
                                        LAW DIVISION
            Plaintiffs,

v.                                      DOCKET NO.: L- 5245-07

BRENDAN WARD MASONRY INC.
and INTERNATIONAL FIDELITY
INSURANCE COMPANY

            Defendants                  COMPLAINT

        Plaintiff WU & ASSOCIATES, INC., of Cherry Hill, NJ, say:

                    COUNT I: BREACH OF CONTRACT

1.   In April 2002, corporate representatives of Defendant

     BRENDAN WARD MASONRY INC. visited the office of Plaintiff WU

     & ASSOCIATES, INC., in Cherry Hill, NJ, and executed a

     Standard Form of Agreement between Contractor and

     Subcontractor.

2.   Pursuant to the Agreement, Defendant BRENDAN WARD MASONRY

     INC. agreed to perform certain tasks associated with masonry

     work, as listed in a detailed "Scope of Work" regarding a

     project commonly known as the "Wilmington Job Corps Center,"

     which is owned by the US Department of Labor.

3.   Defendant BRENDAN WARD MASONRY INC. failed to timely perform

     the required tasks of the written Agreement.

4.   Defendant BRENDAN WARD MASONRY INC. has breached its

     contract with Plaintiff WU & ASSOCIATES, INC.

3

5.    Such action has caused Plaintiff WU & ASSOCIATES, INC.
      damage and injury.

      WHEREFORE, judgement is demanded against defendant(s) for
compensatory damages, punitive damages, interest, costs of suit,
and attorney's fees.

<u>COUNT II: PERFORMANCE BOND</u>

1.    Plaintiff WU & ASSOCIATES, INC. repeats each averment of
      Count I as if restated herein.

2.    In September 2002, Defendant INTERNATIONAL FIDELITY
      INSURANCE COMPANY executed two (2) agreements commonly known
      as a Subcontractor Performance Bond and a Subcontractor
      Payment Bond.

3.    Under the aforementioned agreements, Defendant INTERNATIONAL
      FIDELITY INSURANCE COMPANY agreed to insure Plaintiff WU &
      ASSOCIATES, INC. for all loss, damage, and expenses
      (including interest, costs, and legal fees) incurred by
      reason of the failure of Defendant BRENDAN WARD MASONRY INC.
      to complete its obligations under the Standard Form of
      Agreement between Contractor and Subcontractor.

4.    Duly served written notice has been provided to Defendant
      INTERNATIONAL FIDELITY INSURANCE COMPANY that Defendant
      BRENDAN WARD MASONRY INC. has failed to complete its
      obligations.

5.    Despite such notice, Defendant INTERNATIONAL FIDELITY
      INSURANCE COMPANY refuses to insure such loss incurred by
      Plaintiff WU & ASSOCIATES, INC.

PETER N. MILLIGAN, ESQ.
ATTORNEY AT LAW

4

WHEREFORE, judgement is demanded against defendant(s) for compensatory damages, punitive damages, interest, costs of suit, and attorney's fees.

### TRIAL DESIGNATION

Pursuant to R. 4:25-4, PETER N. MILLIGAN, Esq. is hereby designated as trial attorney.

### CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no other parties should be joined in this action pursuant to R. 4:5-1.

### DEMAND FOR JURY TRIAL

The Plaintiff WU & ASSOCIATES, INC. hereby demands trial by jury as to all issues in the above matter.

Peter Neely Milligan, Esq.
Attorney for Plaintiff WU &
ASSOCIATES, INC.

By: _____
Peter Neely Milligan, Esq.

Dated: October 10, 2007

PETER N. MILLIGAN, ESQ.
————ATTORNEY AT LAW————